**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**May 12, 2020**

_____

**Christopher M. Wolpert**
**Clerk of Court**

ALBERT DEWAYNE BANKS,

     Plaintiff - Appellant,

v.

STEVEN L. OPAT; GLEN F. VIRDEN;
SPRINT/NEXTEL WIRELESS
TELEPHONE COMPANY; VIRGIN
MOBILE USA/SPRINT PCS; TIMOTHY
BROWN; BRAD SCHOEN; RON
MILLER; KANSAS BUREAU OF
INVESTIGATION,

     Defendants - Appellees,

and

GEARY COUNTY, KANSAS;
JUNCTION CITY POLICE
DEPARTMENT; RILEY COUNTY
POLICE DEPARTMENT; TOPEKA
POLICE DEPARTMENT,

     Defendants.

No. 19-3073
(D.C. No. 5:15-CV-03093-HLT-KGS)
(D. Kan.)

_____

### ORDER AND JUDGMENT*

_____

_____

     * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

Pro se prisoner Albert Dewayne Banks appeals from a district court order dismissing his civil rights complaint, which alleged violations of federal and state wiretap statutes, violations of the Fourth Amendment, and civil conspiracy. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.[1]

## I.  BACKGROUND[2]

This case arises from a law enforcement investigation of drug trafficking in Geary County, Kansas. In March and April 2013, upon application of Geary County District Attorney Steven Opat, Judge David R. Platt of the Eighth Judicial District of Kansas issued wiretap orders for cell phones used by Anthony Thompson and Mr. Banks. Ensuing wiretaps produced information that law enforcement officers used to obtain search warrants for various locations, including Mr. Thompson's residence, where "officers seized cell phones, cash, miscellaneous documents, drug paraphernalia, and credit cards." *United States v. Thompson*, 866 F.3d 1149, 1152-53 (10th Cir. 2017), *vacated and remanded by Thompson v. United States*, 138 S. Ct. 2706 (2018).

_____

[1] Although we liberally construe pro se pleadings, we do not assume the role of Mr. Banks's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] In reviewing a district court's dismissal order, "we may exercise our discretion to take judicial notice of publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). We thus consider the district court's decisions in Mr. Banks's criminal case.

A. *Mr. Banks's Criminal Case*

A federal grand jury indicted Mr. Banks on multiple counts of distributing and conspiring to distribute crack cocaine.  He joined co-defendants' motions to suppress the intercepted communications.  The motions argued (1) the wiretap orders did not permit the interception of electronic (text message) communications, and (2) investigators impermissibly intercepted his wire communications outside the Eighth Judicial District's jurisdiction.  The district court rejected both arguments.

First, the court ruled that investigators reasonably believed the wiretap orders, despite specifying only wire communications, permitted the interception of both text messages and oral communications.[3]  In particular, the court found an understanding

---

[3] The term "'wire communication' means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . ."  18 U.S.C. § 2510(1); *see also* Kan. Stat. Ann. § 22-2514(1).  An "'aural transfer' means a transfer containing the human voice at any point between and including the point of origin and the point of reception[.]"  18 U.S.C. § 2510(18).  In contrast, an "'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]"  *Id.* § 2510(2).  A telephone conversation qualifies as a "wire communication."  *See United States v. Axselle*, 604 F.2d 1330, 1334 (10th Cir. 1979).

An "'electronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include—(A) any wire or oral communication . . . ."  *Id.* § 2510(12); *see also* Kan. Stat. Ann. § 22-2514(11).  "[T]ext messages constitute 'electronic communications' within the meaning of the Wiretap Act."  *United States v. Jones*, 451 F. Supp. 2d 71, 75 (D.D.C. 2006), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010).

between Judge Platt and investigators "that the orders were supposed to authorize interception of electronic [i.e., text] communications." *United States v. Banks and Thompson*, 5:13-CR-40060-DDC, 2014 WL 4261344, at *4 (D. Kan. Aug. 29, 2014). The court thus applied the good faith exception to the Fourth Amendment's exclusionary rule and refused to suppress the text messages. *Id.* at *5 (citing *United States v. Leon*, 468 U.S. 897, 920-22 (1984)).

Second, the court "rule[d] that a Kansas state court judge acting under Kansas law has no authority to authorize interception outside the judge's own judicial district." ROA, Vol. I at 43. It granted the motion to suppress the extra-territorial communications, but it stated that officers "almost certainly" acted in good faith, "because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect." *United States v. Banks and Thompson*, No. 13-CR-40060-DDC, 2015 WL 2401048, at *3 (D. Kan. May 15, 2015).

A jury convicted Mr. Thompson and Mr. Banks on all counts.[4]

---

[4] We affirmed the convictions. *See Thompson*, 866 F.3d at 1152; *United States v. Banks*, 706 F. App'x 455, 460 (10th Cir. 2017). The Supreme Court vacated those decisions and remanded for further consideration in light of *Carpenter v. United States*, 138 S. Ct. 2206, 2217, 2222 (2018). In *Carpenter*, the Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell service location information]." Because law enforcement relied on such information to prove some of Mr. Thompson's and Mr. Banks's communications, we remanded to the district court to determine whether the government presented sufficient evidence absent the information. *United States v. Thompson*, 740 F. App'x 166, 168 (10th Cir. 2018).

### B.  *Mr. Banks's Civil Case*

While his criminal proceeding was pending, Mr. Banks filed a pro se suit in the District of Kansas against Judge Platt; Geary County District Attorney Steven L. Opat; Kansas Bureau of Investigation Special Agent Glen Virden; Junction City Police Chief Timothy Brown; Riley County Police Department Director Brad Schoen; Topeka Police Chief Ron Miller; and Sprint/Nextel Wireless Telephone Company and Virgin Mobil USA/Sprint PCS (collectively, "Sprint").  The district court dismissed Judge Platt, District Attorney Opat (in his official capacity), and Special Agent Virden (in his official capacity) on immunity grounds.[5]

In an amended pro se complaint, Mr. Banks named as defendants Judge Platt, District Attorney Opat, Special Agent Virden, Police Chief Brown, and Sprint.  Mr. Banks alleged:

- Judge Platt (1) knew or should have known he lacked jurisdiction to issue wiretap orders beyond his territorial jurisdiction; and (2) set an excessive bond and twice failed to appoint counsel in May 2013.

- District Attorney Opat, Special Agent Virden, and Police Chief Brown ("law enforcement defendants") knew or should have known that the wiretap orders sought communications that were outside of Judge Platt's territorial jurisdiction and did not encompass text messages.

- The law enforcement defendants impermissibly disclosed his text messages to third parties, such as the U.S. Attorney's Office, despite the absence of reference to texts in the wiretap orders.

---

[5] To the extent Mr. Banks had listed various police departments in the caption as defendants, the district court noted they are not suable entities and dismissed them as well.  Similarly, the district court dismissed Geary County, as there were no allegations of misconduct against it.

- The law enforcement defendants "all had final decision making authority within their respect[ive] departments."  ROA, Vol. II at 9.

- Sprint improperly intercepted and disclosed his text messages, resulting in the improper execution of a search warrant.

- "the defendants act[ed] under the color of state law."  *Id.*

He sued under 18 U.S.C. § 2520 (providing a civil action for the unlawful interception, disclosure, or use of wire, oral, or electronic communications), Kan. Stat. Ann. § 22-2518 (same), 42 U.S.C. § 1983, and civil conspiracy law.  The following chart summarizes the specific claims alleged in the amended complaint against each of the defendants:

| DEFENDANTS | CLAIMS FOR RELIEF |
|---|---|
| **Judge Platt**, sued in his individual and official capacities | NONE SPECIFIED |
| **District Attorney Opat, Chief Brown, and Agent Virden**, each sued in his individual and official capacity | 1.  Violation of Kan. Stat. Ann. § 22-2518<br>2.  Violation of 18 U.S.C. § 2520<br>3.  Violation of 42 U.S.C. § 1983 (Fourth Amendment)<br>4.  "Conspiracy to Commit the Substantive Counts" (pled only against Opat & Virden) |
| **Sprint** | 1.  Violation of Kan. Stat. Ann. § 22-2518<br>2.  Violation of 18 U.S.C. § 2520<br>3.  Violation of 42 U.S.C. § 1983 (Fourth Amendment) |

The district court screened the amended complaint under 28 U.S.C. §§ 1915(e) and 1915A, and dismissed (1) Judge Platt, (2) the law enforcement defendants—District Attorney Opat, Police Chief Brown, and Special Agent Virden—to the extent they were sued in their official capacities, and (3) any defendants named in the original complaint but not named in the amended complaint—Director Schoen, Police Chief Miller, Geary

County, the Kansas Bureau of Investigation, and the various police departments. The remaining defendants moved to dismiss under Rule 12(b)(6). The district court granted the motions. Mr. Banks unsuccessfully sought reconsideration under Rule 59(e). His appeal challenges the Rule 12(b)(6) dismissals and the denial of reconsideration.[6]

## II. **DISCUSSION**

### A. *Standard of Review*

We review de novo a district court's dismissal of an action under Rule 12(b)(6). *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Plausibility requires "more than the mere possibility of misconduct." *Id.* at 679. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[W]here 'there is no disputed issue of fact raised by an affirmative defense, or the facts are completely disclosed on the face of the pleadings, . . . it is appropriate and expedient to dispose of a claim by a motion to dismiss [based on an affirmative defense] under Rule 12(b)." *Frost v. ADT, LLC*, 947 F.3d 1261, 1267 (10th Cir. 2020) (quoting

---

[6] On appeal, Mr. Banks does not contest and thus has waived any challenge to the district court's dismissal of his claims against Judge Platt, or to the official capacity claims against Chief Brown and Agent Virden, or to any claims against defendants named in the original complaint but not named in the amended complaint. *See Burke v. Regalado*, 935 F.3d 960, 995 (10th Cir. 2019) ("The failure to raise an issue in an opening brief waives that issue." (quotations omitted)).

5 Arthur R. Miller et al., Federal Practice and Procedure § 1277 (3d ed. 2002) (August 2019 update)).

## B. *Wiretap Claims*

The district court concluded that Mr. Banks failed to plead a plausible federal or state wiretap claim because the defendants relied in good faith on Judge Platt's orders regarding both electronic (text messages) and extra-territorial  communications.  We resolve these claims as follows:

As to the law enforcement defendants:

> (1) We affirm dismissal of the text messages claim because the district court's determination in the criminal case that investigators acted in good faith precludes Mr. Banks from contesting a good faith affirmative defense in this case;[7] and

> (2) We reverse dismissal of the extra-territorial communications claim because the district court erred in holding that the disposition in the criminal case precluded Mr. Banks from contesting a good faith defense here.  Collateral estoppel does not apply because the district court in the criminal case excluded the extra-territorial evidence rather than rely on investigators' good faith to admit it.

As to Sprint:

> We reverse dismissal of the text messages claim because the collateral estoppel applicable to the law enforcement defendants does not extend to Sprint.

---

[7] To the extent the district court in this case suggested that Mr. Banks's statutory wiretap claims failed without his alleging lack of good faith, we note that a plaintiff is not required to anticipatorily plead against an affirmative defense.  *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

1.  **Legal Background**

Title I of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18

U.S.C. §§ 2510–2522, provides that "any person whose wire, oral, or electronic

communication is intercepted, disclosed, or intentionally used in violation of this chapter

may in a civil action recover from the person or entity, other than the United States,

which engaged in that violation such relief as may be appropriate."  18 U.S.C. § 2520(a).

Kansas law provides a nearly identical remedy.  *See* Kan. Stat. Ann. § 22-2518(1).

Both the federal and state statutes provide "a complete defense" for "good faith

reliance" on "a court warrant or order."  18 U.S.C. § 2520(d); Kan. Stat. Ann.

§ 22-2518(2).  The statutory good faith defense is akin to the good faith exception to the

exclusionary rule for Fourth Amendment violations.  *See United States v. Moore*, 41 F.3d

370, 376 (8th Cir. 1994) (observing that the federal wiretap statute's "legislative history

expresses a clear intent to adopt suppression principles developed in Fourth Amendment

cases"); *see, e.g.*, *Reed v. Labbe*, No. CV 10–8315–SVW (OP), 2012 WL 5267726, at *9

(C.D. Cal. Oct. 22, 2012) (relying on findings in the plaintiff's underlying criminal case

to conclude that § 2520(d) provided a complete defense to plaintiff's claims under the

ECPA and required dismissal under Rule 12(b)(6)); *Marino v. Hegarty*, No. 86 C 6759,

1987 WL 9582, at *1 (N.D. Ill. Apr. 10, 1987) ("Good faith reliance on a court order is a

defense both to fourth amendment claims and to the claims under [the ECPA].").

To invoke the good faith defense, an "officer's reliance on [a] defective warrant

still must be objectively reasonable."  *United States v. Russian*, 848 F.3d 1239, 1246

(10th Cir. 2017); *see also Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997) (stating

that the good-faith defense to an 18 U.S.C. § 2707 civil claim under Title II of the ECPA for unauthorized access to stored electronic communications requires, like the Fourth Amendment, objectively reasonable reliance on a warrant).  "The test is an objective one that asks 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"  *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009) (quoting *Leon*, 468 U.S. at 922 n.23).  "In addition, application of the 'good faith' exception assumes 'that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant.'"  *United States v. Leary*, 846 F.2d 592, 607 n.27 (10th Cir. 1988) (quoting *Leon*, 468 U.S. at 918 n.19)).

2. **District Attorney Opat, Chief Brown, and Agent Virden**

a.  *Text messages*

The district court in Mr. Banks's criminal case said that, although Judge Platt's orders authorized interception of "wire communications" without specifying "electronic [text] communications," Judge Platt "and [the] executing officers both understood . . . that the authorization included interception of text messages."  *Banks*, 2014 WL 4261344, at *5.  It found that the law enforcement defendants reasonably believed the orders permitted them to intercept text messages.  *See id*.  The court therefore held that their "interception of the text messages falls within the good-faith exception to the Fourth Amendment's exclusionary rule."  *Id.* at *4-5.

The district court's determination in Mr. Banks's criminal case that investigators acted in good faith regarding the interception and disclosure of text messages precludes

him from contesting the law enforcement defendants' affirmative defense of good faith.[8]

"[T]he doctrine of issue preclusion prevents a party that has lost the battle over an issue

in one lawsuit from relitigating the same issue in another lawsuit." *In re Corey*, 583 F.3d

1249, 1251 (10th Cir. 2009). "Under federal law, issue preclusion attaches . . . when an

issue of fact or law is actually litigated and determined by a valid and final judgment, and

the determination is essential to the judgment." *Id.* (quotations omitted and alterations

incorporated)).[9]  The doctrine is applicable in a civil case to preclude relitigation of an

issue decided in favor of the prosecuting authority in a prior criminal case.  Restatement

(Second) of Judgments § 85(2)(a) (1982).[10]

Issue preclusion has four elements:

> (1) the issue previously decided is identical with the one
> presented in the action in question, (2) the prior action has
> been finally adjudicated on the merits, (3) the party against
> whom the doctrine is invoked was a party, or in privity with a
> party, to the prior adjudication, and (4) the party against
> whom the doctrine is raised had a full and fair opportunity to
> litigate the issue in the prior action.

---

[8] Although none of the defendants argues for the application of issue
preclusion, a court may sua sponte raise a preclusion bar where, as here, the court is
on notice that the issue has been previously decided.  *See Arizona v. California*, 530
U.S. 392, 412 (2000).

[9] "Because we are here concerned with the preclusive effect of a federal-court
judgment, federal law applies."  *Id.*

[10] *See also id.* cmt. e, illus. 7 ("D is convicted of arson of a building.  D then
brings an action against I, an insurer which wrote a fire insurance policy on the
building, seeking to recover on the policy.  The policy has an exclusion of liability
for losses caused by intentional act of the insured.  The determination in the criminal
prosecution that D deliberately set the fire is conclusive in favor of I in the
subsequent civil action.").

*Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (quotations omitted).  Here, those elements are met.

First, good faith under the wiretap statutes derives from the good faith exception to the Fourth Amendment's exclusionary rule, *see Moore*, 41 F.3d at 376; *Davis*, 111 F.3d at 1484, and turns on the objective reasonableness of investigators' reliance on Judge Platt's wiretap orders to intercept text messages.  *See Davis*, 111 F.3d at 1484.

Second, the district court in Mr. Banks's criminal case finally adjudicated the good faith issue when it "refuse[d] to suppress [text messages] on the basis that the orders authorized interception of wire communications only."  *Banks*, 2014 WL 4261344, at *5. *See* Restatement (Second) of Judgments § 13 (1982) (stating that "for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect").

Third, Mr. Banks was a party-defendant to the motion-to-suppress litigation that led to the determination of good faith.

Fourth, Mr. Banks had a full and fair opportunity to litigate good faith.  He participated in the suppression proceedings, which included testimony from Agent Virden, and the good faith issue was squarely presented to the district court.  *See Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (explaining that "the inquiry into whether a party had a full and fair opportunity to litigate an issue" involves "whether there were significant procedural limitations in the prior proceeding, whether the party

12

had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties" (quotations omitted)).

Mr. Banks thus cannot relitigate in this civil action whether investigators relied on Judge Platt's wiretap orders in good faith when seeking his text messages. *See, e.g.*, *Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir. 1984) ("There can be little doubt that the issue of Holmgreen's veracity and good faith—the linchpin of Guenther's § 1983 Fourth Amendment claim—was both raised and actually litigated in the preliminary hearing."); *Blinder, Robinson & Co. v. SEC*, 565 F. Supp. 74, 77 (D. Colo. 1983) (collecting cases for the proposition that "[t]he collateral estoppel doctrine has been held to bar a subsequent civil action challenging the constitutional sufficiency of a Fourth Amendment search where, in a prior criminal action, the issue of suppression had been raised by the defendant and decided adversely to him"), *aff'd*, 748 F.2d 1415 (10th Cir. 1984).

The district court correctly granted the law enforcement defendants' motions to dismiss the statutory claims pertaining to text messages.[11]

b. *Extra-territorial communications*

In his amended complaint, Mr. Banks alleged that Judge Platt acted beyond his jurisdiction and that "all defendants knew or had reason to know that the [wiretap] order they were endorsing was invalid on its face." ROA, Vol. II at 9. He further alleged that

---

[11] Mr. Banks mistakenly relies on *United States v. Medlin*, 798 F.2d 407 (10th Cir. 1986) and *United States v. McNulty*, 729 F.2d 1243 (10th Cir. 1983), for the proposition that "good faith reliance" is not a defense. ROA, Vol. II at 9-11. Neither concerns defenses asserted here.

the law enforcement defendants unlawfully intercepted calls while he was in the privacy of his home and "then used this private information in order to further there [sic] own personal agenda." *Id.* at 10. A Rule 12(b)(6) motion to dismiss "accept[s] all well-pled factual allegations [in the complaint] as true and view[s] these allegations in the light most favorable to the nonmoving party." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quotation and citation omitted). We conclude that Mr. Banks has "plead[ ] factual content that allows the court to draw the reasonable inference that the [law enforcement] defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Unlike the good faith affirmative defense to the text message claim, collateral estoppel is not available to the law enforcement defendants on this claim. Judge Platt's orders permitted the law enforcement defendants to intercept Mr. Banks's communications without a territorial limit. The district court in Mr. Banks's criminal case stated that officers "almost certainly" acted in good faith given "the subtle[ ] [and] technical" nature of the jurisdictional defect, but it excluded the extra-territorial intercepted evidence, concluding there was no good-faith exception to the statutory requirement for "suppress[ing] unlawfully intercepted wire and oral communications." *Banks*, 2015 WL 2401048, at \*2, \*3. Because the court made only an observation about good faith but not a finding, Mr. Banks is not collaterally estopped from litigating the issue of good faith regarding his wiretap claims alleging the interception of extra-territorial communications.

14

We therefore reverse the dismissal of the extra-territorial wiretapping claims against the law enforcement defendants.[12]

### 3.  **Sprint**

In his amended complaint, Mr. Banks alleged that Sprint disclosed his electronic communications (text messages) to the other defendants without authorization in the wiretap order.  He further alleged the disclosures included "private text and picture[ ] messages to family members" sent from "the privacy of [his] home."  ROA, Vol. II at 9. Viewing these allegations in the light most favorable to Mr. Banks, *see Peterson*, 594

---

[12] District Attorney Opat argues alternatively that claim preclusion bars all of Mr. Banks's claims because he could have asserted them in a prior lawsuit.  Opat Aplee. Br. at 18-19.  Specifically, in October 2014, Mr. Banks sued Judge Platt and District Attorney Opat in federal court for violating his right to counsel in state court when he was arrested on drug charges.  In April 2015, Mr. Banks filed the instant litigation.  In August 2015, he sought to consolidate the two cases.  The district court dismissed Mr. Banks's right-to-counsel case based on judicial and prosecutorial immunity, and it denied as moot the request to consolidate.  *Banks v. Geary Cnty. Dist. Ct.*, No. 14-3199-SAC, 2015 WL 12864252, at *2 (D. Kan. Nov. 24, 2015), *aff'd*, 645 F. App'x 713 (10th Cir. 2016).

The district court here did not address this claim-preclusion argument.  In his brief, District Attorney Opat provides only a cursory analysis limited to general statements about the collateral estoppel doctrine.  He does not show why it should apply to the procedural circumstance here, where Mr. Banks moved to consolidate to include all of his claims in one action before his first case was dismissed.  None of his cited cases addresses this question.  We decline to address it as an alternative ground to affirm because this issue has not been "sufficiently illuminated by counsel on appeal."  *See* Walton v. Powell, 821 F.3d 1204, 1212 (10th Cir. 2016).  "[W]e decline to affirm on an alternative ground neither passed on below nor cultivated on appeal."  *Wilson v. Falk*, 877 F.3d 1204, 1211-12 (10th Cir. 2017); *see* Perry v. Woodward, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) (declining to address an alternative basis for affirming the district court's dismissal where appellees did not adequately develop an argument).

F.3d at 727, we conclude he has pled sufficient facts to plausibly show that Sprint "is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

The district court dismissed these claims against Sprint primarily for the same reason it did so for the law enforcement defendants:  "the record establishes [Mr. Banks's] wiretap claims are barred by the good faith defense."  ROA, Vol. II at 161. Although businesses like Sprint may rely on the good faith defense, *see* 18 U.S.C. §2520(a); Kan. Stat. Ann. § 22-2518(2), Sprint stands in different shoes than the law enforcement defendants.

Sprint asserts that Mr. Banks cannot complain of the unauthorized interception of text messages "in light of the judicially noticed fact that Judge Platt confirmed that his orders did, in fact, authorize interception and disclosure of text messages and other forms of communications."  Sprint Aplee. Br. at 19.  It argues that the district court in Mr. Banks's criminal case "found that Judge Platt and executing officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages, and that officers' reliance on this understanding was objectively reasonable."  *Id.* (quotations omitted).  Sprint further posits that "if it was objectively reasonable for the officers to rely on this understanding, it would . . . also be objectively reasonable for Sprint . . . to rely on the same interpretation."  *Id.*[13]

---

[13] Sprint also argues the wiretap claims against it should be dismissed based on 18 U.S.C. § 2511(2)(a)(ii).  Under this statute, telecommunication companies that "provid[e] information, facilities, or assistance in accordance with the terms of a court order" have an immunity defense.  But Mr. Banks's amended complaint alleges that the wiretap order Sprint received did not authorize the interception of text messages.  ROA, Vol. II at 9-10.  Based on that allegation, § 2511(2)(a)(ii) does not

Sprint's reliance on judicial notice to preclude Mr. Banks from contesting its good faith is a misplaced attempt to invoke collateral estoppel. But collateral estoppel requires that "the issue previously decided [be] *identical* with the one presented in the action in question." *Park Lake Res.*, 378 F.3d at 1136 (emphasis added). Sprint provides no applicable authority that it can preclude Mr. Banks's wiretap claims based on the district court's determination that investigators acted in good faith. We therefore reverse the dismissal of Mr. Banks's statutory wiretap claims against Sprint.

## C. *Fourth Amendment § 1983 Claims*

Mr. Banks argues the Defendants violated his Fourth Amendment rights by intercepting and disclosing his text messages. He contends the district court therefore erred in dismissing his § 1983 claim. We disagree.

---

apply. *See Hepting v. AT & T Corp.*, 439 F. Supp. 2d 974, 1003 (N.D. Cal. 2006) (denying AT&T's motion to dismiss where the plaintiffs adequately alleged that AT&T "did not receive a certification authorizing it[ ]" to conduct electronic surveillance), *remanded on other grounds*, 539 F.3d 1157 (9th Cir. 2008).

Sprint does not explain how Judge Platt's and the law enforcement officials' understanding that the wiretap order was supposed to include text messages, even though its terms did not mention texts, would make any difference. Moreover, consistent with Mr. Banks's allegations, it appears that Sprint intercepted and disclosed his text messages pursuant to the March 5, 2013, wiretap order on his phone *before* Judge Platt clarified that wiretap orders issued for two of Mr. Banks's co-defendants included text messages. *See* Doc. 379, Exs. 9 & 10, *United States v. Banks*, No. 5:13-CR-40060-DDC (D. Kan. July 1, 2014) (Judge Platt's clarification orders, entered on April 5, 2013, and April 25, 2013, stating that wiretap orders entered on April 2 were "clarified to express that the interception of wire communications previously authorized includes all forms of communication"); *see also Banks*, 2014 WL 4261344, at *4 (observing that an affidavit in support of the April 2 wiretap order for the phone of co-defendant Otis Ponds "contained references to [earlier intercepted] text messages").

1. **Legal Background**

    a. *Fourth Amendment*

"The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). The Fourth Amendment applies to wiretapping. *See Katz v. United States*, 389 U.S. 347, 353 (1967); *United States v. Williams*, 827 F.3d 1134, 1145 (D.C. Cir. 2016) (noting that "two different legal theories"—the Fourth Amendment and wiretap statutes—are available to challenge "evidence gathered as a result of wiretap surveillance").

    b. *Qualified immunity defense*

Qualified immunity is available to "[i]ndividual defendants named in a § 1983 action" as a shield "from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quotations omitted). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quotations omitted). The clearly-established-law prong requires both "a sufficiently clear foundation in then-existing precedent" and a "clear[ ] prohibit[ion] [on] the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). "The doctrine of qualified immunity is designed to protect public officials who act in good faith, on the basis of

objectively reasonable understandings of the law at the time of their actions." *Weigel v.*
*Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008) (quotations omitted and alterations
incorporated).

    c.  *State action requirement*

    Only persons acting under color of state law may be sued under § 1983.  *See West*
*v. Atkins*, 487 U.S. 42, 48 (1988).  "[I]n rare circumstances[,] . . . a private party [can] be
viewed as a 'state actor' for section 1983 purposes."  *Harvey v. Harvey*, 949 F.2d 1127,
1130 (11th Cir. 1992).  "Private individuals and entities may be deemed state actors . . . if
they have acted together with or have obtained significant aid from state officials, or if
their conduct is otherwise chargeable to the state."  *Johnson v. Rodrigues*, 293 F.3d 1196,
1202 (10th Cir. 2002) (quotations and alterations omitted).  But a private party's mere
compliance with a court order does not constitute state action.  *See, e.g.*, *Fairley v. PM*
*Mgmt.-San Antonio AL, L.L.C.*, 724 F. App'x 343, 345 (5th Cir. 2018) (concluding that a
nursing home's compliance with probate court's order was not state action), *cert. denied*,
139 S. Ct. 815 (2019); *Green v. Truman*, 459 F. Supp. 342, 345 (D. Mass. 1978) (ruling
that a court order requiring a doctor to supervise a child's chemotherapy did "not clothe
[the doctor] with the authority of state law necessary to satisfy the state actor
requirement").

2.  **Analysis**

    a.  *District Attorney Opat, Chief Brown, and Agent Virden*

    The law enforcement defendants argued in district court that they are entitled to
qualified immunity on Mr. Banks's Fourth Amendment § 1983 claim.  The district court

relied on the clearly-established-law prong of the qualified immunity test and found that immunity applied because Mr. Banks had identified no authority "holding that the Fourth Amendment is violated by the <u>specific</u> facts presented here."  ROA, Vol. II at 164-65.

We agree that qualified immunity applies under the second prong.  The district court in Mr. Banks's criminal case determined that investigators relied in good faith on Judge Platt's wiretap orders in intercepting his text messages.  "[R]easonable person[s] in [their] position would not know that [their] actions violated the Fourth Amendment for the same reasons [that] establish the good faith defense to liability under [18 U.S.C. § 2520]."  *Frierson v. Goetz*, 99 F. App'x. 649, 654 (6th Cir. 2004).  Where, as here, "the requisites of the statutory good faith defense are met, then the standard for qualified immunity as a defense to Fourth Amendment violations is also satisfied."  *Kilgore v. Mitchell*, 623 F.2d 631, 633 (9th Cir. 1980) (footnote omitted); *see also* 18 U.S.C. 2520(d) (providing that good-faith reliance "is a complete defense against any civil or criminal action brought under this chapter *or any other law*" (emphasis added)).  The district court correctly dismissed Mr. Banks's Fourth Amendment claims against the law enforcement defendants.

3.  **Sprint**

Mr. Banks failed to allege Sprint engaged in state action.  He claimed Sprint (1) received a wiretap order that did not cover text messages, (2) intercepted those messages, and (3) disclosed them to the other defendants.  But the amended complaint did not allege Sprint participated in procuring the wiretap order, obtained aid from state officials, or performed acts attributable to the state.  Thus, Mr. Banks failed to allege Sprint's

20

compliance with Judge Platt's order constitutes state action.  The district court correctly dismissed Mr. Banks's Fourth Amendment claim against Sprint.

### D. *Civil Conspiracy*[14]

"Allegations of conspiracy may . . . form the basis of a § 1983 claim." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  "[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."  *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).  Likewise, "[a] civil conspiracy is not actionable under Kansas law without commission of some wrong giving rise to a tortious cause of action independent of conspiracy."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1268 (10th Cir. 2005).

---

[14] The amended complaint does not say whether this claim is predicated on § 1983 or Kansas law.  The claim fails under both.  To the extent Mr. Banks is attempting to assert a federal common-law conspiracy claim, courts generally construe such claims as § 1983 conspiracy claims, and we do the same.  *See Burdett v. Reynoso*, No. C-06-00720 JCS, 2007 WL 2429426, at *29 (N.D. Cal. Aug. 23, 2007) (finding common law conspiracy claim properly construed as § 1983 claim and collecting authority recognizing a § 1983 conspiracy claim), *aff'd*, 399 F. App'x 276 (9th Cir. 2010).  Mr. Banks does not appear to be advancing a § 1985(3) conspiracy claim, which "generally describes a conspiracy of two or more persons for the purpose of depriving . . . another of equal protection of the laws or equal privileges and immunities under the laws."  *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).

Mr. Banks alleged that District Attorney Opat and Agent Virden "knowingly conspired with one another to commit the substantive count in th[e] complaint," ROA, Vol. II at 12, and that they knew or should have known the wiretap orders were unlawful.  The district court determined that Mr. Banks's conspiracy claim failed because there was neither an underlying unlawful act nor sufficiently pled facts of a conspiracy.  We agree with the latter determination.

An actionable conspiracy "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010); *see also Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984) (stating elements of a civil conspiracy as: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof" (quotations omitted)).

"[A] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants" because "conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Brooks*, 614 F.3d at 1228 (quotations omitted and alterations incorporated).  Mr. Banks's allegation of a conspiracy is conclusory.  It identifies no agreement between District Attorney Opat and Agent Virden to work together to achieve an unlawful objective.  *See, e.g.*, *Vieux v. E. Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990) (observing that "[a] civil conspiracy is a combination of two or more persons who, by some concerted action, intend to

22

accomplish some unlawful objective for the purpose of harming another which results in damage," and concluding that there was no evidence of an illegal objective despite correspondence and discussions between the defendants).

The district court appropriately dismissed Mr. Banks's civil conspiracy claim.

## III.  CONCLUSION

We affirm the district court's judgment in part, but we reverse and remand for further proceedings on Mr. Banks's statutory wiretap claims about the law enforcement defendants' interception and disclosure of extra-territorial communications and Sprint's interception and disclosure of text messages.  Also, we deny Mr. Banks's request for the assistance of appellate counsel, and we remind him to continue making partial payments until the entire filing fee has been paid.[15]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[15] To the extent Mr. Banks appeals the district court's order denying his Rule 59(e) motion, we affirm because the court did not abuse its discretion.