**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Albert DeWayne Banks, | |
| Plaintiff, | |
| v. | Case No. 5:15-CV-3093 |
| Steven L. Opat, *et al.,* | |
| Defendants. | |
| Anthony Thompson, | |
| Plaintiff, | |
| v. | Case No. 5:15-CV-03117 |
| David L. Platt, *et al.,* | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
GLEN VIRDEN'S MOTION FOR SUMMARY JUDGMENT**

## *Nature of Case and Motion*

Plaintiffs Albert Banks ("Banks" or "Plaintiff Banks") and Anthony Thomas ("Thomas" or "Plaintiff Thomas") assert claims under (1) K.S.A. § 22-2518, for alleged violation of the Kansas wiretap statutes, and (2) 18 U.S.C. § 2520, for alleged violation of the federal Electronic Communications Privacy Act of 1986 ("ECPA"). In particular, the plaintiffs allege that the Eighth Judicial District, Kansas, District Court Judge David Platt acted beyond his jurisdiction in issuing

wiretap orders pertaining, in part, to the plaintiffs' communications not in or captured in Geary County ("extra-territorial communications"). They claim that all the defendants, including KBI Special Agent Glen Virden, intercepted these extra-territorial communications knowing, or with reason to know, that the orders were invalid on its face.

Defendant Virden is entitled to summary judgment against the plaintiffs' claims. *First*, the claims are time barred under the applicable statutes of limitation. *Second*, there was no violation of the federal wiretap statutes as a matter of law. *Third*, Defendant Virden's good faith reliance on court orders is a complete defense to both the state and federal wiretap claims.

### Statement of Uncontroverted Facts

1. Plaintiff Banks filed this lawsuit on April 28, 2015. D.Kan. Case No. 5:15-CV-3093, ECF Doc. 1.

2. Plaintiff Thompson filed this lawsuit on May 14, 2015. D.Kan. Case No. 5:15-CV-03117, ECF Doc. 1.

3. Banks and Thompson both filed Amended Complaints: Banks on December 29, 2017, and Thompson on December 4, 2017. D.Kan. Case No. 5:15-CV-3093, ECF Doc. 47; D.Kan. Case No. 5:15-CV-03117, ECF Doc. 54.

4.      Service of the Amended Complaint[1] and summons in the Banks case was made on Defendant Glen Virden ("Virden" or "Defendant Virden") on March 9, 2018. D.Kan. Case No. 5:15-CV-3093, ECF Doc. 85 (copy of return of service). *See also* Exhibit A (Virden Declaration/Banks case), ¶ 4.

5.      Service of the Amended Complaint[2] in and summons in the Thompson case was made on Virden on March 13, 2018. D.Kan. Case No. 5:15-CV-03117, ECF Doc. 85 (copy of return of service). *See also* Exhibit B (Virden Declaration/Thompson case), ¶ 4.

6.      Virden is and was an employee of the State of Kansas with the Kansas Bureau of Investigation ("KBI"). He is and was an "investigative" law enforcement officer duly deputized with the statutory authority for the State of Kansas, and as further recognized and defined by K.S.A. § 22-2514(5). He is currently the Special Agent in Charge for the KBI's West Region Special Operations Division, which encompasses 46 counties on the west side of Kansas. He has been a Special Agent in the Special Operations Division of the KBI since October of 2001. He has a Bachelor of Science in Criminal Justice from Southwestern College, Winfield, Kansas. He is a graduate of the Kansas Law Enforcement Training Center. He has attended numerous seminars and law enforcement education courses while with the KBI. For example, He is

---

[1] Plaintiff Banks did not serve Virden with his original Complaint.

[2] Plaintiff Thompson did not serve Virden with his original Complaint.

a 2017 graduate of Federal Bureau of Investigation National Academy. Exhibit A, ¶ 1; Exhibit B, ¶ 1.

7.     Virden is an "investigative or law enforcement officer" as that phrase is defined in K.S.A. § 22-2514(5) and 18 U.S.C. § 2510(7). Exhibit A, ¶ 5; Exhibit B, ¶ 5.

8.     For approximately thirteen months, starting in or about February 2012, an investigation was jointly conducted by the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department, into a narcotics-trafficking conspiracy ("Narcotics-Trafficking investigation"). Exhibit A, ¶ 6; Exhibit B, ¶ 6.

9.     Virden was the case agent for the KBI, *i.e.*, the lead law enforcement officer for the KBI, related to the Narcotics-Trafficking investigation. Exhibit A, ¶ 7; Exhibit B, ¶ 7.

10.     During the course of the Narcotics-Trafficking investigation, communications from and to seven cellular phones were intercepted for different lengths of time pursuant to orders authorizing the interceptions issued by the Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt"). A list of the affidavits provided in support of applications for these orders and the corresponding orders is attached as Exhibit 1 to Exhibits A and Exhibit 1 to Exhibit B. *See* Exhibit A, ¶ 8; Exhibit B, ¶ 8. Redacted copies of the affidavits and of the orders [with added names and signatures on some of the orders as

explained below] are also attached as Exhibits 2-17 to Exhibit A and Exhibit B. *See id.*

11. In or around March and April 2013, Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt") entered orders authorizing the interception of Banks' (and his suspected co-conspirators') oral, wire and/or electronic communications regarding 785-375-6704, with service provided by Sprint/Nextel Wireless. *See* Exhibit A, ¶ 9; Exhibit B, ¶ 9. A copy of the initial order, dated March 5, 2013, is attached as Exhibit 3 to Exhibits A and B. *See* Exhibit A, ¶ 9.

12. In or around March and April 2013, Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt") entered orders authorizing the interception of Thompson's (and his suspected co-conspirators') oral, wire and/or electronic communications regarding 785-226-1783, with service provided by T-Mobile USA Wireless. A copy of the initial order, dated March 5, 2013, is attached as Exhibit 5 to Exhibit A and B. *See* Exhibit B, ¶ 9.

13. Virden had informed the Geary County Attorney Steven L. Opat ("Prosecutor Opat") about the Narcotics-Trafficking investigation. Prior to March 5, 2013, Virden, his fellow investigators in Narcotics-Trafficking investigation, and Prosecutor Opat collectively agreed that interception of Banks, Thompson and others' cellular communications was needed and appropriate as part of the investigation. Exhibit A, ¶ 10; Exhibit B, ¶ 10.

14.     Before March 5, 2013, the Narcotics-Trafficking investigation focused on trafficking of crack cocaine in Geary County, Kansas. Its investigators had discovered evidence of crack cocaine sales by Banks and Thompson in Junction City, Geary County, Kansas, which were arranged through communications on phones owned or used by Banks and Thompson. Exhibit A, ¶ 11; Exhibit B, ¶ 11.

15.     At that time, Virden anticipated that any criminal charges against the suspects, including Banks and Thompson, in the Narcotics-Trafficking investigation would be filed and prosecuted in the Eighth Judicial District, District Court in Geary County. Exhibit A, ¶ 12; Exhibit B, ¶ 12.

16.     Virden prepared and signed affidavits in order for Prosecutor Opat to request Judge Platt enter the orders referenced in paragraphs 10, 11 & 12. Exhibit A, ¶¶ 13 & 14; Exhibit B, ¶¶ 13 & 14.

17.     Virden was present when application for the initial orders was made to Judge Platt on March 5, 2013. He was prepared to provide testimony required by K.S.A. § 22-2516. As part of the applications for the orders, Judge Platt was told whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communications would be received and monitored, *i.e.*, the listening post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their

delivery to the Eighth Judicial District, District Court. Exhibit A, ¶ 15; Exhibit B, ¶ 15.

18.     The draft orders submitted to Judge Platt contemplated interception of communications outside of the Eighth Judicial District. The orders Judge Platt entered on March 5, 2013 provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States." Exhibit A, ¶ 16; Exhibit B, ¶ 16.

19.     Beginning March 7, 2013, law enforcement officers from the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department took turns monitoring and collecting data about calls and texts generally in real time. Virden personally monitored and collected some intercepted communications. He also reviewed copies of some intercepted communications attached to investigative reports prepared by other law enforcement officers. Exhibit A, ¶ 17; Exhibit B, ¶ 17.

20.     Pursuant to Judge Platt's March 5, 2013 orders, progress reports were made to the judge by an attorney with Geary County Attorney's Office and KBI Special Agent Amanda Young on or about the tenth, twentieth and thirtieth day after March 5, 2013 showing the progress made toward achievement of the objectives authorized by the order and the need for continued interception. Exhibit A, ¶ 18; Exhibit B, ¶ 18.

21.     Upon Prosecutor Opat's additional application, on April 12, 2013, Judge Platt issued an order authorizing the interception of Banks' (and his suspected co-conspirators') oral, wire and/or electronic communications from an additional phone number, 785-717-9771, with service provided by Virgin Mobile/Sprint PCS. A copy of the April 12 order is attached as Exhibit 15 to Exhibits A and B. *See* Exhibit A, ¶ 19.

22.     Upon Prosecutor Opat's additional applications on April 4, 2013, to extend the March 5, 2013 order, and on April 16, 2013 concerning another telephone number, 785-226-2893, with service provided by T-Mobile USA, Judge Platt issued orders authorizing the interception of Thompson's (and his suspected co-conspirators') oral, wire and/or electronic communications. A copy of the April 4 extension order is attached as Exhibit 11 to Exhibits A and B. A copy of the April 16 order is attached as Exhibit 17 to Exhibits A and B. *See* Exhibit B, ¶ 19.

23.     To his best memory, Virden was present when applications for the April orders were made to Judge Platt. He was prepared to provide testimony required by K.S.A. § 22-2516. As with the initial order, as part of the application for the order, Judge Platt was told or was aware from the prior application or progress reports concerning his March order, regarding whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communication would be received and monitored, *i.e.*, the listening

post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their delivery to the Eighth Judicial District, District Court. Exhibit A, ¶ 20; Exhibit B, ¶ 20.

24.    Like with the March 2013 orders, the April 2013 order provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States." Exhibit A, ¶ 21; Exhibit B, ¶ 21.

25.    The last intercepted communication under the orders related to Thompson or Banks was on or about May 10, 2013. Exhibit A, ¶ 22; Exhibit B, ¶ 22.

26.    As directed by Judge Platt's orders, monitoring of communications was to be conducted to minimize the interception and disclosure of communication intercepted to those relevant to the Narcotics-Trafficking investigation. For example, monitoring of a communication had to be terminated immediately at the time it was determined that the communication was unrelated to the subject to the interception under the applicable federal and state statutes. Exhibit A, ¶ 23; Exhibit B, ¶ 23.

27.    To document that officers monitoring communications knew the terms of the March 2013 Banks order, including its minimization requirements, the officers were required to sign and date a copy of the order. On March 6, 2013,

Virden added his signature to a copy of the order that Judge Platt had issued the day before on March 5, 2013. Exhibit A, ¶ 24. The document filed by Banks on August 13, 2015 in this lawsuit, [5:15-CV-03093] ECF 6-3, is a copy of Judge Platt's order that Virden signed on March 6, 2013, on page 14 of the document, for the reasons stated. *Id.*

28.     To document that officers monitoring communications knew the terms of the March 2013 order, including its minimization requirements, the officers were also required to sign and date a copy of the Thompson order. On March 6, 2013, Virden added his name and signature to a copy of the order that Judge Platt had issued the day before on March 5, 2013. Exhibit B, ¶ 24. The document filed by Thompson on August 13, 2015 in this lawsuit, [5:15-CV-03117] ECF 4-3, at 8-16 is a copy of the Judge Platt's order that Virden signed on March 6, 2013, on page 15 of the document, for the reasons stated. *Id.*

29.     Virden did not question the authority of Judge Platt to enter "wiretap" orders referenced above. He did not question the judge's authority to order interception of communications outside of the Eighth Judicial District. Exhibit A, ¶ 25; Exhibit B, ¶ 25.

30.     To his knowledge none of the 60 plus officers from the KBI, Junction City Police Department, Geary County Sheriff's Office, or Riley County Police Department, who were involved in the Narcotics-Trafficking investigation and the interception and monitoring of communications of the involved seven cellular

phones, ever raised an issue about Judge Platt's authority to issue the intercept orders. Exhibit A, ¶ 26; Exhibit B, ¶ 26.

31.     Virden did not understand or believe that either the "wiretap" orders referenced above or parts of those orders were invalid from the face of the orders. Nothing in the language of the orders confined the authorized interception of oral, wire and/or electronic communications to those initiated or intercepted within the Eighth Judicial District. Exhibit A, ¶ 27; Exhibit B, ¶ 27.

32.     Although not making a conscious evaluation at the time, Virden believed that Judge Platt was the proper judge, who had the authority to issue the March and April orders, because:

a.     Prosecutor Opat made applications to Judge Platt and Judge Platt entered the orders, both knowing how the subject communications would be intercepted;

b.     The underlying criminal activity at issue in the Narcotics-Trafficking investigation was in Geary County;

c.     The cellular phones, which were the subject of the interception orders, were used in Geary County.

d.     Banks and Thompson came into Geary County and engaged in the underlying criminal activity, and he expected this would continue.

Exhibit A, ¶ 28; Exhibit B, ¶ 28.

33.     Virden's best memory is that he was not aware of the Kansas Court

of Appeals decision in *State v. Adams*, 2 Kan.App.2d 135, 576 P.2d 242 (Kan.

App. 1978), until after any role he had with the interception and disclosure of

Banks and Thompson wire or electronic communications was complete.

However, even if the *Adams* decision had been brought to his attention before the

applications for Judge Platt's orders, Virden still would not have disputed the

judge's authority. He would have assumed that *Adams* did not apply, that *Adams*

was no longer good law or that the statutes interpreted in *Adams* had been

amended. Exhibit A, ¶ 29; Exhibit B, ¶ 29.

34.     Virden was unaware that Judge Platt lacked jurisdiction to order

wiretaps of cellular communications made and monitored outside of the Eighth

Judicial District, where under the circumstances (a) the criminal activity, which

supported the need for the wiretaps, and (b) some of the communications

expected to be intercepted, had been and would take place, within the geographic

confines of Judge Platt's Judicial District. Exhibit A, ¶ 30; Exhibit B, ¶ 30.

35.     Virden executed Judge Platt's orders believing that they were fully

and properly issued and enforceable. Exhibit A, ¶ 31; Exhibit B, ¶ 31.

36.     During the course of the Narcotics-Trafficking investigation, the

decision was made to refer the "main players" to the Office of the United States

Attorney for the District of Kansas to prosecute for violations of federal laws. This

was mostly because of the complexity of the prosecution. Exhibit A, ¶ 32; Exhibit

B, ¶ 32.

37.     Federal criminal drug trafficking charges were ultimately filed against Banks and Thompson in United States District, District of Kansas on or about May 29, 2013. Exhibit 18 [excerpts from Criminal Docket for D. Kan. #: 5:13-cr-40060-DDC, ECF Doc. 1] to Exhibit C (Chalmers' Declaration).

38.     On June 4, 2013, the KBI took custody of Plaintiff from Geary County, where Banks and Thompson were held after their arrests, and transported them to the Federal Court in Topeka on federal indictments where they were remanded into the custody of the United States of America. D.Kan. Case No. 5:15-CV-3093, ECF Doc. 6 (Banks' verified "Statement of Facts"), ¶¶ 17 & 18; D.Kan. Case No. 5:15-CV-03117, ECF Doc. 4 (Thompson's verified "Statement of Facts"), ¶¶ 17 & 18.

39.     Legal counsel represented Banks at his June 3, 2013 first appearance in the Federal prosecution. Exhibit 19 [ECF Doc. 9] to Exhibit C.

40.     Legal counsel represented Thompson at his June 4, 2013 first appearance in the Federal prosecution. Exhibit 18 [ECF Doc. 34] to Exhibit C.

41.     Plaintiff Banks claims that he first learned his phone(s) had been "unconstitutionally" wiretapped on June 3, 2013. D.Kan. Case No. 5:15-CV-3093, ECF Doc. 32, at 5-6.

42.     Plaintiff Thompson claims that he first learned his phone(s) had been "unconstitutionally" wiretapped on June 4, 2013. D.Kan. Case No. 5:15-CV-03117, ECF Doc. 21, at 6.

43.     Motions to suppress the communications which had been intercepted under Judge Platt's orders were filed on behalf Banks, Thompson and others on or shortly after June 30, 2014. Exhibit 18 [ECF Doc(s) 342, 343, 356] to Exhibit C.

44.     The Hon. Judge Daniel Crabtree conducted hearings on August 21-22, 2014 regarding the motions on August 21 and August 22, 2014. He orally ruled that a Kansas judge acting under Kansas law has no authority to authorize interception outside the judge's own judicial district in the August 22, 2014 hearing. Exhibit 19 [ECF Doc. 517, at 1] to Exhibit C.[3]

45.     On November 19, 2014, Judge Crabtree filed written opinion expressing his August 22, 2014 ruling. Exhibit 19 at 1, to Exhibit C. Judge Crabtree concluded that "Kansas has chosen to adopt a wiretap law that is more restrictive than the provisions of Title III under federal [wiretap] law." *Id.* at 5. He found, under the Kansas statutes, "a district court judge sitting in Kansas' Tenth Judicial District had no power to authorize interception when the target phone, interception bridge and monitoring station all were physically located in

---

[3] By an order dated August 29, 2014, Judge Crabtree overruled motions to suppress intercepted text messages which were based on other grounds. *See United States v. Banks*, 2014 WL 4261344 (D. Kan. Aug. 29, 2014). And ,thereafter, Judge Crabtree rejected motions advancing additional reasons, why defendants felt that the court should suppress the wiretap evidence that likewise did not concern Judge Platt's jurisdiction. *See United States v. Banks*, 2014 WL 5321075 (D. Kan. Oct. 17, 2014); *United States v. Banks*, 2014 WL 6685483 (D. Kan. Nov. 26, 2014); *United States v. Banks,* 93 F.Supp.3d 1237 (D. Kan. 2015).

the Twenty-Ninth Judicial District." *Id.* at 2-3.

46.     When Judge Crabtree issued his August 22 ruling, the parties had not presented any evidence that would have enabled him to determine which particular calls his ruling excluded, so he continued the case to permit the government to the obtain cell-site location data. *United States v. Banks*, No. 13-CR-40060-DDC, 2015 WL 2401048, at *1 (D. Kan. May 15, 2015), *aff'd sub nom. United States v. Thompson*, 866 F.3d 1149 (10th Cir. 2017), *cert. granted, judgment vacated*, 138 S. Ct. 2706 (2018), and *aff'd sub nom. United States v. Ivory*, 706 F. App'x 449 (10th Cir. 2017), and *aff'd*, 706 F. App'x 455 (10th Cir. 2017), *cert. granted, judgment vacated*, 138 S. Ct. 2707 (2018), and *opinion reinstated in part*, 748 F. App'x 855 (10th Cir. 2019).

47.     Following the presentation of evidence, Judge Crabtree suppressed all but 7,000 of the 67,000 total communications intercepted during the course of the investigation. As to the 7,000 surviving communications, Judge Crabtree ruled that the government had offered sufficient evidence that the communications were made by phones located inside Judge Platt's territorial jurisdiction. But, Judge Crabtree ordered the suppression of the extra-territorial intercepted communications. Yet, in connection with this decision, although declining to apply the exclusionary rule's good faith exception to evidence collected from wiretaps on the ground, the exception did not apply to suppression required under the Kansas wiretap statutes, Judge Crabtree noted that "one

would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *Thompson v. Virden*, Case No. 5:15-cv-03117-HLT-KGS, 2018 WL 6046469 (D. Kan. Nov. 16, 2018) (this Court setting out the history and quoting *United States v. Banks*, supra, 2015 WL 2401048, at *3).

### ***Argument and Authorities***

**1.  *Statutes of limitations bar the plaintiffs' claims against Defendant Virden.***

**a.  *The Kansas wiretap claim is time barred.***

The applicable statute of limitation for a claim under K.S.A. § 22-2514 of the Kansas wiretap statutes is three years from the date of the interception or disclosure of the complaining plaintiffs' wire, oral, electronic communication. *See* K.S.A. § 60-512(2) ("The following actions shall be brought within three (3) years: (2) An action upon a liability created by a statute other than a penalty or forfeiture."). The statute has no discovery rule for non-fraud based statutory claims. *See e.g., Doll v. Chicago Title Ins. Co.*, 517 F. Supp. 2d 1273, 1282 (D. Kan. 2007) (absent any Kansas authority applying a discovery rule to a claim for unjust enrichment, court would not apply such a rule to the three year statute of limitations); *Perry H. Bacon Tr. v. Transition Partners, Ltd.*, 298 F. Supp. 2d 1182, 1190 (D. Kan. 2004) ("the Kansas Supreme Court, if faced with the issue, would decline to apply the discovery rule to non-fraud-based claims"). *Cf., Law v.*

*Law Co. Bldg. Assocs.*, 295 Kan. 551, 576, 289 P.3d 1066 (2012) ("The Kansas Legislature has not provided a discovery exception in K.S.A. 60-511, and Kansas courts cannot engraft an exception which the legislature, perhaps because of the policy issues raised by the Defendants, has not included in the statute.").

Therefore, as a practical matter, the question presented here concerning the state wiretap claim is whether it was brought or commenced against Virden on or before the three year anniversary of the March through May 2013 wiretaps, *i.e.* May 10, 2016 at the latest. It was not.

Federal courts look to state law for the applicable statute of limitation to a state law claim. *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 109-110 (1945). Importantly, state law determines when an action is commenced for the state's statute of limitations purposes. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980); *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005). Although Rule 3 of the Federal Rules of Civil Procedure provides that an action is commenced upon the filing of a complaint, Rule 3 does not toll the state statute of limitations with respect to state law claims. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-51 (1980).

State service of process rules that are an integral part of a state's statute of limitations control in actions based upon state law even when filed in federal court. *Walker*, at 752-53. This rule was reiterated in *West v. Conrail*, 481 U.S. 35, 39 n. 4 (1987), where the court stated that state law provides the statute of

limitations and also determines whether service must be obtained within that time period. *See also*, *In Seguros Popular C. x A. v. Raytheon Aircraft*, No 05–1002–JTM, 2005 WL 2099705, *1 (D. Kan. Aug. 30, 2005) ("This court has rejected as 'without merit' the argument that Rule 4(m) preempts Kansas limitations law as to claims arising under state law.").

Thus, K.S.A. § 60-203(a) operates to determine when an action is "brought" for the purposes of K.S.A. § 60-512. *E.g., Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 715 (10th Cir. 2005) (finding the claim time barred because service was first made after the 90 days period); *Fisher v. DeCarvalho*, 298 Kan. 482, 493, 314 P.3d 214, 221 (2013) (recognizing the rule). K.S.A. § 60-203(a) provides:

> (a) **Time of commencement**. A civil action is commenced at the time of: (1) Filing a petition with the court, ***if service of process is obtained*** or the first publication is made for service by publication ***within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff***; or (2) ***service of process*** or first publication, ***if service of process*** or first publication ***is not made within the time specified by paragraph (1)***.

*Id.* (emphasis supplied).

Virden was not served by Banks until March 9, 2018, UF[4] ¶ 4, and by Thompson until March 13, 2018, UF ¶ 5. As a result, their state wiretap claims

---

[4] UF is used as an abbreviation for Uncontroverted Fact.

were time barred nearly two years before they were brought or commenced for purpose of the Kansas statute of limitations.

### b. The federal wiretap claim is also time barred.

While the federal wiretap claim and its statute of limitation issue requires a different analysis—and it is a much closer call—the result should be the same.

18 U.S.C. § 2520(e) sets the statute of limitations for the plaintiffs' federal wiretap claims. Under § 2520(e) a civil action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." *See* 18 U.S.C. § 2520(e). "In other words, the statute bars a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *Sparshott v. Feld Entertainment, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2003). The limitations period established in 28 U.S.C. § 2520(e) begins "when the claimant has a reasonable opportunity to discover the violation, not when [he or she] discovers the true identity of the violator or all of the violators." *Messier v. Devine*, 2009 WL 1321685, *3 (S.D.Fla.2009), *citing Andes v. Knox*, 905 F.2d 188, 189 (8th Cir.1990). *Accord, Hill v. Teel*, No. CIV–08–1336, 2010 WL 2867943 *1 (W.D. Okla. July 21, 2010). *See also Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir.1998) ("Like many statutes of limitation, [§ 2520(e) ] does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it."); *Andes*

*v. Knox*, 905 F.2d 188, 189 (8th Cir.1990) ("[T]he cause of action accrues when the claimant has a reasonable opportunity to discover the violation, not when she discovers the true identity of the violator or all of the violators.").

By their admissions, the plaintiffs possessed the required "reasonable opportunity" to discover the violations of the federal law on June 3, 2013, for Plaintiff Banks, and June 4, 2013, for Plaintiff Thompson. UF ¶¶ 41 & 42.[5] Certainly, the discovery trigger had been pulled by June 30, 2013, when counsel in their underlying criminal case filed motions to suppress. UF ¶ 43. *Cf. Porter v. Jefferson Cty. Sheriff's Dep't*, No. CIV. A. 91-2432, 1992 WL 105052, at *1 (D. Kan. Apr. 13, 1992) (plaintiff had a reasonable opportunity to discover the alleged violation on the date the plaintiff's husband filed a Motion to Suppress in the husband's criminal case).

While Fed. R. Civ. P. 3 states: "A civil action is commenced by filing a complaint with the court,"[6] this "only provisionally" "commences a federal question case for the statute of limitations." Wright & Miller, 4 *Fed. Prac. & Proc.*

---

[5] For the purpose of this motion, Defendant Virden accepts that the June 2013 dates set when the limitation in § 2520(e) began to run. Other defendants may present persuasive arguments and evidence that supports earlier discovery dates. *See e.g., Messier v. Devine*, Case No. 09-20279, 2009 WL 1321685, at *3 (S.D. Fla. Apr. 28, 2009) (accrual on date of indictment).

[6] Plaintiffs may argue that their federal claim was commenced with the filing of their original complaints (in April and May of 2015). This argument would have the amended complaints relate back to the date of the initial complaints' filings under Fed. R. Civ. P. 15(c)(1)(B).

*Civ.* § 1056, 3 (4ᵗʰ Ed. April 2020 Update). A federal case is not commenced until service of process is effected if the plaintiff fails to procure service with "due diligence." *Danforth v. Medtronic, Inc.,* No. CIV 08-432, 2008 WL 11322213, at *1 (D.N.M. July 30, 2008). *See also Murphy v. Citizens Bank of Clovis*, 244 F.2d 511, 512 (10th Cir. 1957) (applying the due diligence rule in a diversity case[7]). *Contra, Moore Co. of Sikeston, Mo. v. Sid Richardson Carbon & Gasoline Co.*, 347 F.2d 921, 924 (8th Cir. 1965) (finding reasonable diligence to secure service is not a requirement to commence an action through Rule 3). Allowing the filing of suit to unconditionally commence an action undermines the purpose of § 2520(e), "which is to require the reasonably diligent presentation" of the claim. *See United States v. Kubrick*, 444 U.S. 111, 123 (1979) (discussing the purpose of the statute of limitations pertaining to a federal tort claim).

The plaintiffs were content to permit their lawsuits to proceed against other defendants. They did not serve Virden for nearly three years, and only after being prompted by the district court to so. This is lack of diligence as a matter of law. *Cf. Murphy,* 244 F.2d at 512 (finding lack of diligence from a delay of 13 months). Accordingly, the Court should find that the plaintiffs' federal wiretap claims are time barred.

---

[7] After *Murphy*, case law established that federal rules concerning commencement do not apply to state law claims. *See Chappell v. Rouch*, 448 F.2d 446 (10th Cir. 1971). But *Murphy* was applying Rule 3, and its reasoning concerning required diligence should continue to have force.

## 2. *There was no violation of the federal wiretap law as a matter of law.*

The Tenth Circuit remanded the plaintiffs' wiretap claims on the basis of the plaintiffs' claim that "extraterritorial" interceptions of the plaintiffs' phone calls were authorized by wiretap orders which allegedly "all defendants knew or had reason to know" were "beyond" "Judge Platt['s]" "jurisdiction," so as to be "invalid on [their] face." *Thompson v. Platt*, 815 F. App'x at 235; *Banks v. Opat*, 814 F. App'x at 333. However, lack the judicial authority **under Kansas statutes** to order wiretap of "extraterritorial" communications by a state judge is not a violation of Title I of the Electronic Communications Privacy Act (the federal wiretap statutes) so long as the judge qualifies as a "judge of competent jurisdiction" as defined in 18 U.S.C.A. § 2510(9)(b). Judge Platt satisfied that qualification.

In *Ivory v. Platt*, No. 15-3051, 2016 WL 5916647 (D. Kan. Oct. 11, 2016), Hon. Judge Sam Crow had the same facts and issue before him. He stated:

> The federal trial judge in plaintiff's criminal case determined that the Kansas wiretap statute was more restrictive than the federal statute, found that the state district court had authorized the wiretap request only under the Kansas statute, then suppressed that evidence obtained in violation of the Kansas law. Judge Platt's order, even if it was issued outside his territorial jurisdiction as defined by state law, is not shown to have amounted to a federal statutory or constitutional violation.

2016 WL 5916647, at *12.

It is true that the K.S.A. § 22-2516(3) provides: "Upon such application the

judge may enter an ex parte order, as requested or as modified, authorizing the interception of wire, oral or electronic communications ***within the territorial jurisdiction of such judge."*** *Id.* (emphasis supplied). However, by contrast, 18 U.S.C. § 2518 states: "(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a ***judge of competent jurisdiction*** and shall state the applicant's authority to make such application. ..." *Id.* (emphasis supplied). A judge of competent jurisdiction is defined in the federal statutes to include "a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications[.]" 18 U.S.C. § 2510(9)(b). The federal statutes, therefore, do not impose the state statute's "territorial jurisdiction" restriction.

For the purposes of the federal statutes, Judge Platt presided as a court of general criminal jurisdiction. *See* K.S.A. § 20-301. *See also Matter of Marriage of Williams*, 307 Kan. 960, 967-68, 417 P.3d 1033 (2018) ("Kansas district courts are generally described as courts of general jurisdiction, which means they have subject-matter jurisdiction over 'all matters, both civil and criminal, unless otherwise provided by law,'" citing § 20-301). His position is and was authorized, by statute "to enter orders authorizing interceptions of wire, oral, or electronic communications." K.S.A. §§ 22-2514(8), 22-2516.

The portions of the federal statutes at issue focus on assuring a certain quality of the public officials who will pass on issuing wiretaps. *See United States v. Pacheco*, 489 F.2d 554, 563 (5th Cir. 1974) ("Congress obviously did not intend to specify the particular state courts that could issue wiretap orders; instead, it described the quality of public officials who should pass upon such matters."); *United States v. Ruiz*, No. 09 CR. 719 DAB, 2010 WL 4840055, at *6 (S.D.N.Y. Nov. 19, 2010) (Congresses' "operative concern on this issue is that a neutral judge pass on the probable cause and exhaustion requirements—not that a particular judge in the same office perform the duty.")

As a result, the federal wiretap statutes are not violated if the qualified public official does not satisfy state wiretap law's territorial limitation. *See United States v. Ruiz*, No. 09 CR. 719, 2010 WL 4840055, at *6 (S.D.N.Y. Nov. 19, 2010) (holding Title III, paralleling Title I, provides that any active United States District Judge or Circuit Judge is capable of signing a wiretap application and empowers any state court judge of general criminal jurisdiction that is authorized by statute to enter orders authorizing interceptions. "As such, even if Defendant could put forth evidence that Judge Morgan was not a proper designee under California state law, Title III would not be offended since there is no comparable judge-designee system required in federal court."); *United States v. Bourassa*, No. 418CR00003, 2019 WL 7559293, at *17 (N.D. Ga. July 25, 2019), report and recommendation adopted, No. 4:18-CR-00003, 2019 WL 5288137 (N.D. Ga. Oct.

18, 2019) ("while the orders authorizing the state wiretaps in the Cobb County prosecution were issued by Cobb County Superior Court Judges, the warrants were executed in other counties, thereby rendering them defective *under state law,* the federal law's statutory requirements were met if the listening post was in the State of Georgia"); *United States v. Kaplan*, No. CRIM.A. 06-719, 2009 WL 3806277, at *12 (E.D. Pa. Nov. 13, 2009), *aff'd*, 526 F. App'x 208 (3d Cir. 2013) ("[I]t does not follow that" the Pennsylvanian Superior Court's lack of original jurisdiction under Pennsylvanian law "is therefore disqualified from being a court of general criminal jurisdiction under [18 U.S.C. § 2510(9)(b)]. ... The Court therefore concludes that the Pennsylvania Superior Court is a court of general criminal jurisdiction as contemplated by Title III.").

For these reasons, summary judgment should be entered against the plaintiffs' federal claims.[8]

---

[8] We acknowledge that a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed. But the Tenth Circuit has also said 'that it is appropriate, perhaps even advisable, for a district court to retain supplemented state claims after dismissing all federal questions when the parties have already expended a great deal of time and energy on the state law claims." *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) (*quoting United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).

In this case, Defendant Virden respectfully asks that the Court enter summary judgment against the plaintiffs' state law claims on both on the basis of the statute of limitations bar, a simple legal question, and Virden's good faith reliance upon Judge Platt's orders. The parties have expended a great deal of time and energy on the state law claims. And the Court is not put to any substantial burden by resolving state law issues, particularly given the application of the state good faith defense mirrors the federal defense.

### 3. *Virden's good faith reliance on court orders is a complete defense to both the state and federal wiretap claims.*

In the Tenth Circuit Court's orders, which remanded this case, the panel

explained:

> Both the federal and state statutes provide "a complete defense" for "good faith reliance" on "a court warrant or order." 18 U.S.C. § 2520(d); Kan. Stat. Ann. § 22-2518(2). The statutory good faith defense is akin to the good faith exception to the exclusionary rule for Fourth Amendment violations. *See United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994) (observing that the federal wiretap statute's "legislative history expresses a clear intent to adopt suppression principles developed in Fourth Amendment cases"); *see, e.g., Reed v. Labbe*, No. CV 10-8315-SVW (OP), 2012 WL 5267726, at *9 (C.D. Cal. Oct. 22, 2012) (relying on findings in the plaintiff's underlying criminal case to conclude that § 2520(d) provided a complete defense to plaintiff's claims under the ECPA and required dismissal under Rule 12(b)(6)); *Marino v. Hegarty*, No. 86 C 6759, 1987 WL 9582, at *1 (N.D. Ill. Apr. 10, 1987) ("Good faith reliance on a court order is a defense both to fourth amendment claims and to the claims under [the ECPA].").

*Banks v. Opat*, 814 F. App'x 325, 2020 WL 2394008, *4 (10th Cir. May 12, 2020); *Thompson v. Platt*, No. 19-3072, 2020 WL 2394007, at *4 (10th Cir. May 12, 2020).[9]

---

[9] When the good faith defense was before the Tenth Circuit panel, the cases were a much different procedural posture. The defense is now before the Court on a motion for summary judgment. The determination, in *Banks* and *Thompson*, that collateral estoppel was not conclusive from Judge Crabtree orders in the underlying criminal cases is not controlling here. Although it is still noteworthy that Judge Crabtree acknowledged "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that form[ed] the basis of the Court's threshold suppression rulings." UF ¶ 47.

The Banks and Thompson Tenth Circuit's decisions instruct that an "officer's reliance on [a] defective warrant [ ] must be objectively reasonable" to invoke the good faith defense. *Id.* (quoting and citing *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017); *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997)).[10] And the Tenth Circuit holds that "[t]he test is an objective one that asks 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting and citing *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009), quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)).

The Tenth Circuit's application of the Fourth Amendment suppression principles, particularly the reference to the rules in *United States v. Leon*, is important because it evidences that *United States v. Workman*, 863 F.3d 1313, 1318 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1546 (2018), applies and shows that Defendant Virden's reliance on Judge Platt's orders was in objective good faith.

*Workman* involved a complex child pornography operation in which a magistrate in the Eastern District of Virginia authorized installation of tracking software, known as a network intrusion device, on a child pornography website server in the magistrate's district, and that software in turn installed "malware

---

[10] *Fox v. Coxcom Incorp.*, No. CV–11–594 (D. Ariz. Dec. 3, 2012) (finds the objective reasonableness of reliance on court order is not a question of fact for the jury, but is a legal one for the Court to decide).

onto the user's computer," which enabled law enforcement officials to identify users in other districts. 863 F.3d at 1316. *Workman* held "the *Leon* [good faith] exception applies even if the magistrate judge had exceeded geographic constraints in issuing the warrant." *Id.* at 1318. The court reasoned:

> Under *Herring*[11] and *Evans*[12], the *Leon* exception applies even if the magistrate judge had exceeded geographic constraints in issuing the warrant. In these circumstances, the executing agents could reasonably have relied on the warrant, just as the agents had relied in *Herring* and *Evans* on warrants that had been recalled or quashed.
>
> ... As a result, *Herring* and *Evans* would require us to apply the *Leon* exception even if we were to conclude that the warrant had exceeded geographical constraints.

*Id.* at 1318-19.[13]

---

[11] In *Herring v. United States*, 555 U.S. 135 (2009), the *Leon* exception was applied when officers had mistakenly relied on a warrant even though it had been earlier recalled.

[12] In *Arizona v. Evans*, 514 U.S. 1 (1995), suppression was denied even though the law enforcement officer arrested an individual based on mistaken computerized information showing an outstanding arrest warrant.

[13] *See also United States v. Henderson*, 906 F.3d 1109, 1119-20 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2033 (2019) (Application of the good faith exception is permitted where a warrant is void because of a magistrate judge's jurisdictional violation, so long as the executing officers had an objectively reasonable belief that the warrant was valid; the NIT warrant sufficiently described the "place" to be searched—any "activating computer"—and specified the seven pieces of identifying information—including the computer's IP address—that would be seized, and presented no other facial deficiency that rendered the officers' reliance unreasonable; We are satisfied that the NIT warrant falls squarely within the *Leon* good faith exception: the executing officers exercised objectively reasonable reliance on the NIT warrant.)

Absent exceptional circumstances, not present here[14], an officer should be allowed to rely upon a judge's representation, by the judge's action entering an wiretap order, that she or he possesses required authority to issue the order. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possess authorizes him to conduct the search requested."). *Compare*, *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994) (cited in *Banks* and *Thomas*) (Court rejected the argument that unsigned order is "insufficient on its face," stating "the police conduct in this case clearly was objectively reasonable and largely error-free.... [I]t was the judge, not the police officers, who made the critical mistake."). *See also, United States v. Russian*, 848 F.3d 1239, 1247 (10th Cir. 2017) ("[S]ince judges and magistrates are "neutral judicial officers" with "no stake in the outcome of particular criminal prosecutions," the exclusionary sanction "cannot be expected significantly to deter them." [ ] Accordingly, given the lack of misconduct by law enforcement and Deputy Wilson's reliance on a warrant he reasonably believed to be valid, we decline to apply the exclusionary rule to the evidence seized from Russian's phones.").

---

[14] Naturally, Defendant Virden did not question Judge Platt's authority or jurisdiction. UF ¶¶ 29, 34, 35. The underlying criminal activity was in Geary County—within Judge Platt's judicial district; The cellular phones subject to the "wiretap" orders were used in Geary County; The plaintiffs' criminal activities were in Geary County. UF 32b-d.

The language of the orders expressly contemplated interceptions of communications outside of the Eight Judicial District. UF ¶¶ 18, 24, 31. Judge Platt was informed whose phones would be "wiretapped," how the wiretaps would take place and where intercepted communication would be received and monitored. UF ¶¶ 17, 23. *See also* UF ¶¶ 20 (progress reports were made to Judge Platt)

Moreover, counsel applied for and secured the involved wiretap orders from Judge Platt, UF ¶¶ 16, 32a, which supports Defendant Virden could reasonably rely that Judge Platt possessed the jurisdiction to enter the orders. *See United States v. Otero*, 563 F.3d 1127, 1135 (10th Cir. 2009) ("By consulting the prosecutor, they showed their good faith in compliance with constitutional requirements.").

That more than sixty law enforcement officers, from different agencies, were involved with the interception and monitoring of communications, after they read the wiretap orders, UF ¶¶ 27, 28, 30; ECF 6-3 (Thomson suit); (ECF 4-3 Banks suit), confirms the objectively reasonable officer would not question the facial validity of Judge Platt's orders.

Again, Hon. Judge Sam Crow had the same facts and issue before him in *Ivory v. Platt*, No. 15-3051-SAC-DJW, 2016 WL 5916647 (D. Kan. Oct. 11, 2016), albeit with a different plaintiff. Judge Crow concluded:

Third, even if plaintiff could somehow show that defendants violated

federal wiretap laws, are subject to the damages remedy thereunder, and are not entitled to absolute immunity, defendants are surely entitled to good faith immunity. K.S.A. § 22-2518(1) provides that "[a]ny person whose wire, oral or electronic communication is intercepted, disclosed or used in violation of this act" shall have a civil cause of action for actual and punitive damages and attorney fees. *Id.* However, subsection (2) of § 2518 provides that:

> [a] good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil...action brought against such person based upon such interception.

*See Reid*, 36 F. Supp. 3d at 1123-24. 18 U.S.C. § 2520(a);(b)(2) in the Federal Wiretap Act likewise authorizes recovery of civil damages for illegal interception of wire, oral or electronic communications. However, § 2520(d)(1),(2) provides that a good faith reliance on a "court warrant or order" or "a request of an investigative or law enforcement officer" is "a complete defense against any civil or criminal action brought under this chapter or any other law." The wiretap at issue in Mr. Ivory's case was requested by law enforcement officers and authorized by court order. Plaintiff identifies no false or deceptive conduct by the prosecutor or any other law enforcement officers in the preparation and presentation of the application. *See Messerschmidt v. Millender*, 2012 WL 555206, 132 S.Ct. 1235 (2012). He thus describes none of the "rare circumstances" that would make it appropriate to impose personal liability on an official or an officer in the face of judicial approval of a warrant. *Id.* at 1250. Furthermore, plaintiff has not established that Judge Platt's order violated any clearly established law at the time it was issued, and Judge Crabtree's orders reflect that the law remained unclear at the time of the federal prosecution.

*Id.* at *13.

Other courts have reached the same conclusion where there was a

challenge to jurisdiction of the court issuing the wiretap order. *See United States*

*v. Bourassa*, *supra*, 2019 WL 7559293, at *17 (N.D. Ga. July 25, 2019) ("Finally,

even if the wiretap warrant failed to comply with any territorial jurisdiction limitation, the evidence remained admissible under *Leon's* good-faith exception to the exclusionary rule."); *United States v. Lasher*, No. 4:18-CR-00003, 2019 WL 2723910, at *5 (N.D. Ga. July 1, 2019) (Applying the *Leon* test, "No evidence shows the wiretap warrants were so facially deficient that an officer could not reasonably presume them valid. Even if there were a jurisdictional defect in issuing the wiretap orders, suppression is inappropriate. The Court denies Defendant Lasher's motion to suppress.").

Therefore, Defendant Virden is entitled to summary judgment on the basis of his good faith reliance on a court order even if the plaintiffs' claims had been timely commenced and some evidence supported a violation of the federal wiretap statutes.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Arthur S. Chalmers
Arthur S. Chalmers, KS S. Ct. #11088
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Ph: (785) 368-8426
Fax: (785) 291-3707
Email:  art.chalmers@ag.ks.gov
Attorneys for Defendant Virden

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

s/ Arthur S. Chalmers