**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Albert D. Banks,

                    Plaintiff,

v.                                                      Case No. 15-cv-03093

Steven L. Opat, *et al.*,

                    Defendants.

## DECLARATION OF GLEN VIRDEN

I, Glen Virden, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am an employee of the State of Kansas with the Kansas Bureau of Investigation ("KBI"). I am an "investigative" law enforcement officer duly deputized with the statutory authority for the State of Kansas, and as further recognized and defined by K.S.A. § 22-2514(5). I am currently the Special Agent in Charge for the KBI's West Region Special Operations Division, which encompasses 46 counties on the west side of Kansas. I have been a Special Agent in the Special Operations Division of the KBI since October of 2001. I have a Bachelor of Science in Criminal Justice from Southwestern College, Winfield, Kansas. I am a graduate of the Kansas Law Enforcement Training Center. I have attended numerous seminars and law enforcement education courses while with the KBI. For example, I am a 2017 graduate of Federal Bureau of Investigation National Academy.

2.     I make this Declaration from my personal knowledge.

3.      I am a United States citizen, over 18 years of age, and a resident of the State of Kansas.

4.      Service of the Amended Complaint and summons was made on me by mail received on March 9, 2018. This is the only service of a complaint or summon that I received pertaining to this litigation.

5.      I am an "investigative or law enforcement officer" as that phrase is defined in K.S.A. § 22-2514(5) and 18 U.S.C. § 2510(7).

6.      For approximately thirteen months, starting in or about February 2012, an investigation was jointly conducted by the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department, into a narcotics-trafficking conspiracy ("Narcotics-Trafficking investigation").

7.      I was the case agent for the KBI, *i.e.*, the lead law enforcement officer for the KBI, related to the Narcotics-Trafficking investigation.

8.      During the course of the Narcotics-Trafficking investigation, communications from and to seven cellular phones were intercepted for different lengths of time pursuant to orders authorizing the interceptions issued by the Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt"). A list of the affidavits provided in support of applications for these orders and the corresponding orders is attached as Exhibit 1. Redacted copies of the affidavits

and of the orders [in some instances added names and signatures on some orders as explained below] are also attached as Exhibits 2-17.

9.      In or around March and April 2013, Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt") entered orders authorizing the interception of Albert D. Banks' (and his suspected co-conspirators') oral, wire and/or electronic communications regarding 785-375-6704, with service provided by Sprint/Nextel Wireless. A copy of the initial order, dated March 5, 2013, is attached as Exhibit 3.

10.     I I had informed the Geary County Attorney Steven L. Opat ("Prosecutor Opat") about the Narcotics-Trafficking investigation. Prior to March 5, 2013, I, my fellow investigators in Narcotics-Trafficking investigation, and Prosecutor Opat collectively agreed that interception of Albert D. Banks and others' cellular communications was needed and appropriate as part of the investigation.

11.     Before March 5, 2013, the Narcotics-Trafficking investigation focused on trafficking of crack cocaine in Geary County, Kansas. Its investigators had discovered evidence of crack cocaine sales by Albert D. Banks in Junction City, Geary County, Kansas, which were arranged through communications on phones owned or used by Albert D. Banks.

12.     At that time, I anticipated that any criminal charges against the suspects, including Albert Banks and Anthony Thompson, in the Narcotics-

Trafficking investigation would be filed and prosecuted in the Eighth Judicial District, District Court in Geary County.

13.     I prepared and signed affidavits in order for Prosecutor Opat to request Judge Platt enter the orders referenced in paragraph 8.

14.     I did not prepare any of the orders referenced in paragraph 8, or any draft of the orders. I believe that Prosecutor Opat prepared the orders for Judge Platt's approvals and signatures.

15.     I was present when application for the initial order was made to Judge Platt on March 5, 2013. I was prepared to provide testimony required by K.S.A. § 22-2516. As part of the application for the order, Judge Platt was told whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communications would be received and monitored, *i.e.*, the listening post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their delivery to the Eighth Judicial District, District Court.

16.     The draft order submitted to Judge Platt contemplated interception of communications outside of the Eighth Judicial District. The order Judge Platt entered on March 5, 2013 provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States."

17.     Beginning March 7, 2013, law enforcement officers from the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department took turns monitoring and collecting data about call and texts generally in real time. I personally monitored and collected some intercepted communications. I also reviewed copies of some intercepted communications attached to investigative reports prepared by other law enforcement officers.

18.     Pursuant to Judge Platt's March 5, 2013 order, progress reports were made to the judge by an attorney with Geary County Attorney's Office and KBI Special Agent Amanda Young on or about the tenth, twentieth and thirtieth day after March 5, 2013 showing the progress made toward achievement of the objectives authorized by the order and the need for continued interception.

19.     Upon Prosecutor Opat's additional application, on April 12, 2013, Judge Platt issued an order authorizing the interception of Albert D. Banks' (and his suspected co-conspirators') oral, wire and/or electronic communications from an additional phone number, 785-717-9771, with service provided by Virgin Mobile/Sprint PCS. A copy of the April 12 order is attached as Exhibit 15.

20.     To my best memory, I was present when applications for the April orders were made to Judge Platt. I was prepared to provide testimony required by K.S.A. § 22-2516. As with the initial order, as part of the application for the order, Judge Platt was told or was aware from the prior application or progress

reports concerning his March order, regarding whose phones would be "wiretapped" and why; how the proposed wiretaps would take place; where intercepted communication would be received and monitored, *i.e.*, the listening post was in Topeka, Kansas; and where the electronic records of the intercepted communications would be kept until their delivery to the Eighth Judicial District, District Court.

21.    Like with the March 2013 order, the April 2013 order provided, in part: "IT IS ORDERED FURTHER that in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States."

22.    The last intercepted communication under the two orders listed above, Exhibits 3 and 15, was on or about May 10, 2013.

23.    As directed by each of the three orders, monitoring of communications was to be conducted to minimize the interception and disclosure of communication intercepted to those relevant to the Narcotics-Trafficking investigation. For example, monitoring of a communication had to be terminated immediately at the time it was determined that the communication was unrelated to the subject to the interception under the applicable federal and state statutes.

24.    To document that officers monitoring communications knew the terms of the March 2013 order, including its minimization requirements, the officers were required to sign and date a copy of the order. On March 6, 2013, I

added my name and signature to a copy of the order that Judge Platt had issued the day before on March 5, 2013. I have seen a document filed by Albert D. Banks on August 13, 2015 in this lawsuit, doc. 6-3. That document is a copy of the Judge Platt's order that I signed on March 6, 2013, on page 14 of doc. 4-3, for the reasons stated.

25.   I did not question the authority of Judge Platt to enter March and April orders. I did not question the judge's authority to order interception of communications outside of the Eighth Judicial District.

26.   To my knowledge none of the 60 plus officers from the KBI, Junction City Police Department, Geary County Sheriff's Office, or Riley County Police Department, who were involved in the Narcotics-Trafficking investigation and the interception and monitoring of communications of the involved seven cellular phones, ever raised an issue about Judge Platt's authority to issue the intercept orders.

27.   I did not understand or believe that either the March or April orders or parts of those orders were invalid from the face of the orders. Nothing in the language of the orders confined the authorized interception of oral, wire and/or electronic communications to those initiated or intercepted within the Eighth Judicial District.

28.   Although not making a conscious evaluation at the time, I believed that Judge Platt was the proper judge, who had the authority to issue the March

and April orders, because:

   a. Prosecutor Opat made applications to Judge Platt and Judge Platt
      entered the orders, both knowing how the subject communications
      would be intercepted;

   b. The underlying criminal activity at issue in the Narcotics-Trafficking
      investigation was in Geary County;

   c. The cellular phones, which were the subject of the interception orders,
      were used in Geary County.

   d. Anthony Thompson came into Geary County and engaged in the
      underlying criminal activity, and I expected this would continue.

29.    My best memory is that I was not aware of the Kansas Court of
Appeals decision in *State v. Adams*, 2 Kan.App.2d 135, 576 P.2d 242 (Kan. App.
1978) until after any role I had with the interception and disclosure of Albert D.
Banks' wire or electronic communications was complete. However, even if the
*Adams* decision had been brought to my attention before the applications for the
March and April 2013 orders, I still would not have disputed Judge Platt's
authority. I would have assumed that *Adams* did not apply, that *Adams* was no
longer good law or that the statutes interpreted in *Adams* had been amended.

30.    In short, I was unaware that Judge Platt lacked jurisdiction to order
wiretaps of cellular communications made and monitored outside of the Eighth
Judicial District, where under the circumstances (a) the criminal activity, which

supported the need for the wiretaps, and (b) some of the communications expected to be intercepted had been and would take place within the geographic confines of Judge Platt's Judicial District.

31.   I executed Judge Platt's orders believing that they were fully and properly in issued and enforceable.

32.   During the course of the Narcotics-Trafficking investigation, the decision was made to refer the "main players" to the Office of the United States Attorney for the District of Kansas to prosecute for violations of federal laws. This was mostly because of the complexity of the prosecution.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July __6__, 2020.

_____
Glen Virden