IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15-3093-HLT-GEB |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 15-3117-HLT-GEB |
| DAVID L. PLATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF TIMOTHY BROWN'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 3

II.    PROCEDURAL HISTORY ............................................................................... 4

    A.    Plaintiffs' Criminal Cases ....................................................................... 4

    B.    Plaintiffs' Civil Cases .............................................................................. 5

III.    STATEMENT OF MATERIAL UNCONTROVERTED FACTS ............................ 6

    A.    Individuals and Entities Involved .......................................................... 6

    B.    Formation of Conglomerate Task Force ................................................. 7

    B.    Obtaining Warrants to Wiretap .............................................................. 7

    C.    Execution and Effect the Wiretap Warrants ........................................... 8

    D.    Chief Brown's Involvement .................................................................... 8

IV.    STANDARD OF REVIEW ................................................................................ 9

V.    ARGUMENT AND AUTHORITIES ............................................................... 10

    A.    Overview. ................................................................................................ 10

    B.    Banks' and Thompson's wiretap claims are barred by the statute of limitations. 11

        1.    Plaintiffs' state wiretap claims are time barred. ......................... 11

        2.    Plaintiffs' federal wiretap claims are time barred. ..................... 12

    C.    There was no violation of state or federal wiretap law. ........................... 14

    D.    Brown is Subject to Good Faith Immunity. ............................................ 16

        1.    The Tenth Circuit Contoured a State and Federal Statutory Good Faith Defense. .... 17

        2.    A Good Faith Exception Applies Under a Fourth Amendment Analysis. ................. 18

VI.    CONCLUSION ................................................................................................. 24

# I.     <u>INTRODUCTION</u>

The Plaintiffs, Albert Dewayne Banks ("Banks") and Anthony Carlyle Thompson ("Thompson"), bring this action under Title I of the Electronic Communications and Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§2510 – 2522, and K.S.A. § 22-2518(1). Both statutes generally provide that inappropriate interception, disclosure or intentional misuse of a person's wire, oral, or electronic communications entitles a person to pursue a civil action to recover damages or other appropriate relief.   In doing so, they allege that Judge Platt acted outside his authority when issuing Orders that allowed interception of communications that were "extraterritorial" or outside the Eighth Judicial District. Banks and Thompson incorrectly claim Brown oversaw the interception of extraterritorial communications knowing, or with reason to know that the Orders were invalid on their face.

Unlike other Defendants, Brown was not involved in obtaining or executing any Orders from Judge Platt.  Rather, he held a logistics role in the Drug Task Force that provided space and technical support.

Brown is entitled to judgment as a matter of law because:

1)  The Plaintiffs' claims are barred by the statute of limitations;

2)  There was no violation of the state or federal wiretap laws in the first instance; and

3)  Brown acted in good faith in his limited role and is entitled to good faith immunity.

## II.    PROCEDURAL HISTORY

### A.    Plaintiffs' Criminal Cases[1]

The history of Banks' and Thompson's criminal prosecution is well documented through multiple decisions by Judge Crabtree of this Court, who presided over the Plaintiffs' criminal trials and the trials of their co-conspirators. Highly summarized, investigators obtained wiretap orders in the last months of a lengthy investigation into a narcotics-trafficking conspiracy. The investigation was a joint effort between various law enforcement agencies including the Kansas Bureau of Investigation ["KBI"], the Junction City Police Department, the Geary County Sheriff's office, the City of Grandview Plaza Police Department, and the Riley County Police Department.

In March of 2013, investigators submitted applications for wiretap orders to Judge Platt in Kansas' Eighth Judicial District. Judge Platt issued eight wiretap orders pursuant to the Kansas Wiretap Statute, K.S.A. §22-2514 *et seq. United States v. Banks,* 2014 WL 4261344, at *1 (D. Kan. August 29, 2014).

Later, after their arrest, Banks, Thompson, and their co-conspirators filed motions arguing that the wiretap evidence collected during the investigation leading to their prosecutions should be suppressed. Each of the motions asserted that the Kansas Wiretap Statute prohibits agents from intercepting communications outside of the territorial jurisdiction of the Judge that authorized the wiretaps. Judge Crabtree agreed and suppressed all but 7,000 of the approximately 67,000 interceptions. *U.S. v. Banks,* 93 F. Supp. 3d 1237 (2015).

In spite of the suppression, Banks and Thompson were ultimately convicted of distribution of cocaine base and distribution of cocaine base within 1000 feet of a school. Their convictions

---

[1] It is proper for a federal court to take judicial notice of state court documents. Fed. R. Evid. 201 has been interpreted as "[a]uthorizing a federal court to take judicial notice of adjudicative facts at any stance of the proceedings…." *Pace v. Swerdlow,* 519 F.3d 1067, 1072-73 (10th Cir. 2008).

were affirmed by the Tenth Circuit in August, 2017. *United States v. Thompson,* 866 F.3d 1149 (10th Cir. 2017).

Critically important to this Motion is Judge Crabtree's Order in response to the Plaintiffs' Motions to Suppress Intercepted Text Messages. There, Banks and Thompson argued that the court should suppress text message evidence because investigators intercepted them pursuant to orders which were only authorized to intercept wire communications. After a hearing on the motion, Judge Crabtree suppressed all but 7,000 of the intercepted communications acknowledging that they were made by phone located in Judge Pratt's jurisdiction. He also ordered the suppression of extra-territorial intercepted communications.  However, although Judge Crabtree did not apply the exclusionary rule's good faith exception, he noted that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdiction defect that forms the basis of the Court's threshold suppression ruling." *U.S. v. Banks,* 2401048 at *3 (D. Kan. May 15, 2015).

**B.     Plaintiffs' Civil Cases**

During their criminal trials Banks and Thompson filed civil actions, respectively, on April **28, 2015** and May **14, 2015.** Brown was served with the summons in both cases on **September 29, 2017.**

Liberally read, both parties, acting pro se at the time, raised the same causes of action under 42 U.S.C. § 1983, 18 U.S.C. § 2515, and K.S.A. § 22-2516 alleging that the Defendants violated their Fourth Amendment rights under the United States Constitution because Geary County District Judge Platt approved wiretaps for each Plaintiff's cell phone, but lacked jurisdiction to issue warrants with an extraterritorial effect.

Banks' and Thompson's claims were twice rejected by the District Court for failing to plead a plausible wiretap claim and because the Defendants relied in good faith on Judge Platt's orders regarding interception of electronic text messages, and interception of extraterritorial communications. Banks and Thompson appealed to the Tenth Circuit. That Court affirmed dismissal of the text message claims because the District Court's determination in the criminal cases that the officers acted in good faith precluded the plaintiffs from contesting a good faith affirmative defense in their civil cases. However, the Tenth Circuit reversed the dismissal of the extraterritorial communications claim. The Court found that the District Court in the criminal cases did not fully litigate the issue of whether the extraterritorially intercepted communications were subject to the good faith exception such that collateral estoppel did not operate to bar these claims.

### III.    STATEMENT OF MATERIAL UNCONTROVERTED FACTS

**A.    Individuals and Entities Involved**

1.  Plaintiff Anthony Carlyle Thompson ["Thompson"] was convicted on multiple counts of distributing and conspiring to distribute crack cocaine following a joint investigation conducted by multiple state entities.  5:15-CV-03117, ECF Doc. 1.

2.  Plaintiff Albert Dwayne Banks ["Banks"] was convicted on multiple counts of distributing and conspiring to distribute crack cocaine following a joint investigation conducted by multiple state entities.  5:15-CV-3093, ECF Doc. 1.

3.  Defendant Timothy Brown ["Brown"] served as the Chief of the Junction City Police throughout the duration of the Task Force's investigation. 5:15-CV-3093, ECF Doc. 1, at 4.

4.  Defendant Steven L. Opat ["Opat"] served as the Geary County District Attorney during the Task Force's investigation. 5:15-CV-3093, ECF Doc. 1, at 8.

5.  Defendant Glen F. Virden ["Virden"] was a special agent for the Kansas Bureau of Investigation during the Task Force's investigation. 5:15-CV-3093, ECF Doc. 1, at 3.

6.  Defendant Ron Miller ["Miller"] served as the Chief of the Topeka, Kansas Police Department during the Task Force's investigation. 5:15-CV-3093, ECF Doc. 1, at 4.

7.  Defendant "Sprint," was the mobile service provider for the plaintiffs during the events in question.  5:15-CV-3093, ECF Doc. 1 at 3.

**B.**     **Formation of Conglomerate Task Force**

8.  In April 2012, Riley County Police Department had information about Banks, Thompson and others participating in narcotics trafficking in Riley County. [Exhibit B, ¶ 3].

9.   Later in 2012, The Kansas Bureau of Investigation ["KBI"], Junction City Police Department, Geary County Sheriff's Office, Geary County Attorney's Office, Grandview Plaza Police Department, and the Riley County Police Department formed a joint Task Force to investigate narcotics trafficking in the area. [Exhibit B, ¶ 5].

10. Until early 2013, the joint effort relied on standard investigative techniques until deciding to engage in wiretaps. [Exhibit B, ¶ 6].

**B.**     **Obtaining Warrants to Wiretap**

11. In March 2013, investigators applied for wiretap orders in Kansas' Eighth Judicial District. [Exhibit B, ¶ 6].

12. In March and April of 2014, Judge Platt issued wiretap warrants for Banks' and Thompson's mobile phones. [Exhibit C].

13. Judge Platt issued wiretap orders under the authorization granted by Kansas' Wiretap Statute, K.S.A. §22-2514 *et seq.* [Exhibit A, ECF Doc. 1-1, pg. 1-10][2].

14. To document that officers monitoring communications knew the terms of the order, including its minimization requirements, officers were required to sign and date a copy of the Order. [Exhibit B, ¶ 8].

**C.**      **Execution and Effect the Wiretap Warrants**

15. On March 5, 2013, Judge Platt issued wiretap orders effectively granted the investigating agent's authority to intercept phone calls and text messages from Banks' and Thompson's phones. [ Exhibit A, ECF Doc. 1-1, pg. 1-10]; [Exhibit B, ¶ 7].

16. Both orders authorizing wiretaps included the following language: "in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States." [Exhibit A, ECF Doc. 1-1, pg. pg. Pg. 3, ¶9].

**D.**      **Chief Brown's Involvement**

17. Brown was Chief of the Junction City Police throughout the duration of Junction City's involvement in the Task Force. [Exhibit B, ¶ 2].

18. Brown, did arrange for the Task Force to have a headquarters in Junction City and conduct investigative duties. [Exhibit B, ¶ 11].

19. Brown did not supervise, direct, or engage in any search related to drug trafficking in this case. [Exhibit B, ¶ 14].

---

[2] Exhibit A refers to the Order containing Browns signature that was attached to Banks' initial pleading.

20. Brown did not receive regular or frequent formal updates from any member of the taskforce. [Exhibit B, ¶ 12].

21. Brown added his signature to the wiretap order after it had been issued.  [Exhibit B, ¶8].

22. Brown did not sign the warrant in an effort to procure an order from a judge. [Exhibit B, ¶ 10].

23. Brown did not supervise, direct, or engage in any search related to the Task Force's investigation of drug trafficking. [Exhibit B, ¶ 14].

**E.  Plaintiffs' Civil Actions**

24. Banks filed a Complaint against former Junction City, Kansas Chief of Police Timothy Brown and others on **April 28, 2015**. D. Kan. Case No. 5:15-CV-3093, ECF Doc. 1.

25. Banks claims he learned his phone was "unconstitutionally" wiretapped on June 3, 2013. D. Kan. Case No. 5:15-CV-3093, ECF Doc. 32, at 5-6.

26. Thompson filed a Complaint against the same parties on **May 14, 2015**. D. Kan. Case No. 5:15-CV-03117, ECF Doc 1.

27. Thompson claims he learned his phone was "unconstitutionally" wiretapped on June 3, 2013. D. Kan. Case No. 5:15-CV-03117, ECF Doc. 21, at 6.

28. Brown was served with the summons in both cases on **September 29, 2017**.  [Brown Summons D. Kan. Case No. 5:15-CV-3093, issued sued September 29, 2017]; [D. Kan. Case No. 5:15-CV-03117 Brown Summons, issued September 29, 2017].

29. Motions to Suppress the communications that were intercepted pursuant to Judge Platt's orders were filed on Banks' and Thompson's underlying criminal cases on or around June 30, 2014. D. Kan. Case no 5:15-CV-3093 ECF Docs. 342, 343, 356.

## IV.    STANDARD OF REVIEW

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). When considering a motion for summary judgment, a court must view the facts and resolve all factual disputes and reasonable inferences in the non-moving party's favor. *See Tolan v. Cotton,* 572 U.S. 650 (2014); *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1215 (10th Cir. 2013). Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Tolan,* 572 U.S. at 651.

Facts are "material" if, under the governing law, it would affect the outcome of a case. *Id.* Disputes over material facts are "genuine" when a rational jury could find in favor of the nonmoving party based on the evidence presented. *Id.;* see also *Dawson v. Archambeau,* 763 Fed. Appx. 667 (10th Cir. 2019). Establishing a genuine dispute of a material fact requires the opposing party to affirmatively establish, with particularity, a part of the record showing the existence of a genuine dispute. Failing to challenge a material fact deems the fact admitted for the purpose of summary judgment. Courts are not required to accept a plaintiff's conclusory allegations. *Carpenter v. Sw. Bell Tel. Co.,* 27 F. Supp. 3d 1168, 1170 (D. Kan. 2014). Similarly, a plaintiff's inferences supported by conjecture or speculation is insufficient to defeat a motion for summary judgment. *Self v. Crum,* 439 F.3d 1227, 1236 (10th Cir. 2006).

## V. ARGUMENT AND AUTHORITIES

### A. Overview.

This Court should grant summary judgment of all claims against Brown for three reasons. First, Plaintiffs' state and federal wiretap claims are barred by the applicable statutes of limitation.

Second, there was no violation as a matter of law because of Brown's limited involvement. Finally, Brown is entitled to a good faith exception which operates as a complete defense.

**B.  Banks' and Thompson's wiretap claims are barred by the statute of limitations.**

      1.  Plaintiffs' state wiretap claims are time barred.

Any wiretap claim asserted against Brown is barred by the statute of limitations. K.S.A §22-2514, governs Kansas' wiretap statutes and provides a three-year date from the interception or disclosure of a plaintiff's communication. The statute does not have a discovery rule for non-fraud based statutory claims. *See e.g. Doll v. Chicago Title Ins. Co.,* 517 F. Supp. 2d 1273, 1282 (D. Kan. 2007) (absent any Kansas authority applying a discovery rule to a claim for unjust enrichment, court would not apply such a rule to a three-year statute of limitations). State law statutes of limitations apply to state law claims. *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 109-110 (1945). State law also determines when an action is commenced for the state's statute of limitations purposes. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 751 (1980); *Burnham v. Humphrey Hosp. Reit Tr., Inc.,* 403 F.3d 709, 712 (10th Cir. 2005). K.S.A. § 60-203(a) determines when an action is brought. *E.g. Burnham,* 403 F.3d at 715 (finding the claim was time barred because service was made of the 90-day period); *Fisher v. DeCarvalho,* 298 Kan. 482, 493 (2013) (recognizing the rule). K.S.A. § 60-203(a) provides that an action is commenced when a petition is filed and service of process is completed within 90 days or within 120 days upon a plaintiff's showing of good cause.[3]

---

[3] K.S.A. § 60-203(a) specifically provides: "(a) Time of commencement. A civil action is commenced at the time of: (1) Filing a petition with the court, if services of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon showing of good cause by the plaintiff; or (2) service of process of first publication, if services of process or first publication is note made within the time specified by paragraph (1).

Banks' Complaint alleges that conduct violating his rights occurred on March 5, 2013. SOF ¶ 25.[4] In the Complaint's statement of facts, Banks alleges Brown signed the Order for wiretap on March 5, 2013, supervised officers who surveilled Plaintiff from March 3rd through May 8, 2013, and allowed evidence obtained from wire communications to be disclosed to the United States Attorney's office. *Id.* Thus, the claim would expire on March 5, 2016. Banks waited until April 28, 2015 to file a Complaint. SOF ¶ 24. Two years after filing a complaint, Banks served Brown. SOF ¶ 28. Brown was served on September 29, 2017, nearly a year and a half after the expiration of the statute of limitations. *Id.*

Thompson's claim shares the same year and a half delay. Thompson alleges his rights were violated on March 6, 2013. SOF ¶ 27. Thompson's statement of facts indicates that Brown's signature and those of his subordinates under his supervision are the source of the injury suffered. *Id.* Yet, filed his Complaint on May 14, 2015, and waited until September 29, 2017, to serve Brown and commence the action. SOF ¶ 26-28.

In short, state actions commenced nearly a year and a half after the expiration of Kansas' statute of limitations. The delay between Banks and Thompson filing claims and effectuating their civil suits precludes them from pursuing their state claims.

2. Plaintiffs' federal wiretap claims are time barred.

The federal wiretap claim requires a different analysis but still leads to the same conclusion that Banks' and Thompsons' federal claims are time barred.

18 U.S.C. § 2520 (a) and (e) determine the applicable statute of limitations in federal wiretap claims. The statutes specifically state:

"(a) In general - Except as provided in §12511(2)(a)(kk), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this

---

[4] SOF ¶ refers to this memorandum's section of uncontroverted facts.

chapter may in a civil action recover from the person or entity, other than the United States which engaged in that violation such relief as may be appropriate."

"(e) Limitation - a civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."

 In essence, the statute bars suit when a reasonable person would have sued or investigated and uncovered the necessary facts. *Alexander v. Oklahoma,* 382 F.3d 1206 (10th Cir. 2004) ("federal law controls issues related to when federal causes of action accrue"); *Sparshott v. Feld. Entertainment, Inc.,* 311 F.3d 425, 429 (D.C. Cir. 2003); *Newcomb v. Ingle,* 827 F.2d 675 (10th Cir. 1987) ("federal law controls questions relating to accrual of federal causes of action.").

Under the federal statute, the limitations period is triggered when a claimant has the reasonable opportunity to discover the violation not when the claimant discovers the identity of the violators. *Andes v. Knox,* 905 F.2d 188, 189 (8th Cir. 1990); *Davis v. Zirkelbach,* 149 F.3d 614, 618 (7th Cir. 1988). Thus, the federal limitations period begins when a claimant has a reasonable opportunity to discover the violation, rather than the identity of a violator. *Reynolds v. Spears,* 93 F.3d 428, 430 (8th Cir. 1996) (holding claims under 18 U.S.C. §2520 were time-barred because failed to assert their claims when they reasonably had knowledge of the claims); *Davis,* 149 F.3d at 618 (applying *Andes* while rejecting the idea that plaintiff was required to have actual knowledge of a violation); *Lanier v. Bryant,* 332 F.2d 999 (6th Cir. 2003) (information provided to a plaintiff over a two-year period before bringing a suit was a "reasonable opportunity" to discover the violation).

Here, Banks and Thompson had a "reasonable opportunity" to discover violations of federal law by June 30, 2014, when the Motions to Suppress in their underlying criminal cases were filed. *Cf. Porter v. Jefferson Cty. Sheriff's Dep't,* No. CIV A. 91-2432, 1992 WL 105052 at *1

(D. Kan. Apr. 13, 1992) (plaintiff had a reasonable opportunity to discover the alleged violation on the date the plaintiff's husband filed a Motion to Suppress in the Husband's criminal case).

Federal Rule of Civil Procedure 3 indicates that a civil action is commenced when a complaint is filed with the court.[5] However, filing an action "only provisionally" "commences a federal question case for the statute of limitations." Wright & Miller, 4 *Fed. Prac. & Proc. Civ.* §1956,3 (4th Ed. April 2020 update). Similar to Kansas' statute, Federal claims do not commence until service of process is complete. See *Danforth v. Medtronic, Inc.,* No. Civ. 08-432, 2008 WL 1132213 at * 1 (D.N.M. July 30, 2008). A failure to exercise diligence in effectuating service of process is oft grounds for dismissal when service occurs outside the statute of limitations. *Id.* See also *Murphy v. Citizens Bank of Clovis,* 244 F.2d 511, 512 (10th Cir. 1957) (applying the due diligence rule in a diversity case).[6] Banks filed a civil action on April 28, 2015. SOF ¶ 24. Thompson filed a civil action on May 14, 2015. SOF ¶ 26. Timothy Brown was not served by either Plaintiff until September 29, 2017, more than two years after the action had been filed. SOF ¶ 28. This delay demonstrates a lack of diligence. Therefore, the Court should find that Plaintiffs' federal wiretap claims are time barred.

**C.   There was no violation of state or federal wiretap law.**

As a matter of law, Brown's signature on a wiretap order, after its issuance is insufficient to establish liability. Banks and Thompson suggest that absent direct involvement, mere occupation of a leadership role as Junction City Chief of Police is enough to establish liability for wiretap violations. This argument, however, does not account for the prevailing statutory schemes and

---

[5] Plaintiff's may argue that the federal claim commenced when they filed the original complaints in April and May of 2015. Accepting this argument, the amended complaints would relate back under Fed. R. Civ. P. 15(c)(1)(B).
[6] Although it was established after *Murphy* that federal rules regarding commencement of actions do not apply to state law claims, *Murphy* was applying Rule 3, and its reasoning affirming required diligence should apply in this case.

Brown's attenuated involvement. Thus, Banks' and Thompson's Complaints are founded on conclusory allegations and are devoid of facts establishing Brown's liability.

Kansas statute and the Electronic Communications and Privacy Act of 1986 ("ECPA"),18 U.S.C. § 2518 *et seq.* share many similarities. A study of each scheme reveals Brown is not liable for state or federal wiretap violations. Both statutory schemes also similarly authorize causes of action. The federal statute requires that "any person who – (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or in endeavor to intercept, any wire, oral or electronic communication," shall be found in violation of the statute and subject to civil or criminal penalties. 18 U.S.C. § 2511(1)(a).  Kansas statute indicates, that a person whose communications are unlawfully intercepted has a cause of action against "any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use, such communications." K.S.A. § 22-2518(1). And, both Kansas and federal statutes require that orders authorizing interception identify the agency authorized to intercept communications, and the person authorizing the application. K.S.A. § 22-2516(4)(d); 18 U.S.C. 2518(4)(d).

Although Brown was the Chief of Junction City's police department, his professional role is not enough to establish liability. Like the statutes at issue indicate, personal liability hinges on Banks and Thompson showing Brown encouraged or participated in the conduct at issue. There is a complete absence of evidence that Brown specifically participated in or encouraged the procurement of a wiretap warrant on either Thompson's or Banks' mobile phones. Rather, Brown signed and dated a copy of the orders *after* they had already been issued. SOF ¶ 22. Brown's signature merely acknowledged of receipt rather than a directive. Simply put, Brown was not involved in the investigative tactics, methods, or strategies used by the Task Force. SOF

¶ 23. Further, as will be discussed below, extraterritorial language does not in itself prompt cause for concern. *See Dahda v. United States,* 138 S. Ct. 1491 (2018).

It is also notable that no order authorizing interception of Banks' and Thompson's communication identify Junction City Police department as the agency authorized to intercept communications. *See* [Exhibit C]. Likewise, neither Order identifies any Junction City personnel as parties authorizing the application for a wiretap warrant. *Id.* The absence of Junction City's police department in the application or authorization of the warrant points to the obvious. Brown cannot be culpable for a search he neither applied for nor executed. Unlike other defendants, there was no official feedback loop inviting Brown's involvement in the investigation. Brown never received regular or formal detailed information updates on the investigation's status or strategies. Brown's role in the investigation was limited to: (1) ensuring the Task Force had a secure location to delegate responsibilities among active Task Force investigators; (2) supplying man power to the Task Force when necessary; (3) providing necessary office equipment. SOF ¶ 17-23. Brown had no hands-on supervisory role in the Task Force's efforts and was not involved in the decision to pursue a wiretap order, or the execution of the issued Orders. SOF ¶ 19.

Thus, Banks' and Thompson's general legal conclusion that Brown's supervisory position as Chief of Junction City Police constitutes culpability is severely lacking in substance, and as a matter of law, falls short of establishing liability.

### D.  Brown Enjoys Good Faith Immunity.

Brown's Motion for Summary Judgment should be granted because the good faith exception applies to the interception of extraterritorial wiretaps. When the Tenth Circuit remanded the case, the panel indicated that state and federal wiretap statutes, in and of themselves, provide a statutory good faith defense, and the applicability of those defenses can be analyzed like the good

faith exception that is utilized in Fourth Amendment claims. *Banks v. Opat,* 814 F. App'x 325, 2020 WL 2390048, *4 (10th Cir. May 12, 2020); *Thompson v. Platt,* No. 19-3072, 2020 WL 2394007, at *4 (10th Cir. May 12, 2020).

Thus, the ultimate question is whether extraterritorial interception of communications is subject to the good faith exception provided in the state and federal statutes. Brown is entitled to the good faith exception for three reasons. First, the Tenth Circuit contoured a statutory good faith defense. Second, Fourth Amendment analysis affirms the applicability of a good faith exception. Finally, there is nothing in the language of either Order that would alert a reasonable officer of an illegal search.

1.  <u>The Tenth Circuit Contoured a State and Federal Statutory Good Faith Defense.</u>

When remanding this case, the Tenth Circuit explicitly noted:

"Both the federal and state statutes provide "a complete defense" for "good faith reliance" on "court warrant or order." 18 U.S.C. §2520(d); K.S.A. § 22-22518(2). The statutory good faith defense is akin to the good faith exception to the exclusionary rule for Fourth Amendment violations. *See United States v. Moore,* 41 F.3d 370, 376 (8th Cir. 1994) (observing that the federal wiretap statutes "legislative history expresses a clear intent to adopt suppression principles developed in Fourth Amendment cases"); *see, e.g., Reed v. Labbe,* Non. CV 10-8315-SVW (OP), 2012 WL 526 7726, at *9 (C.D. Cal. Oct. 22, 2012) (relying on findings in the plaintiff's underlying criminal case to conclude that § 2520(d) provided a complete defense to plaintiff's claims under the ECPA and required dismissal under rule 12(b)(6); *Marino v. Hegarty,* No. 86 C. 6759, 1987 WL 9582, at *1 (N.D. Ill. Apr. 10, 1987) ("Good faith reliance on a court order is a defense both to Fourth Amendment claims and to claims under [the ECPA].")."

*Banks v. Opat,* 814 F. App'x 325, 2020 WL 2390048, *4 (10th Cir. May 12, 2020); *Thompson v. Platt,* No. 19-3072, 2020 WL 2394007, at *4 (10th Cir. May 12, 2020).

As previously discussed, Kansas' wiretap statutes are virtually identical to federal wiretap statutes. Kansas shares the same requirements for authorization of a wiretap as the federal statute.

*Compare* K.S.A. § 22-2516 (3) *with* 18 U.S.C. 2518(3).[7] Likewise, both Kansas and federal statute articulate a good faith defense for the violation of wiretap statutes. K.S.A. § 22-2518; 18 U.S.C. § 2520. Thus, both should be subjected to a similar analysis regarding the applicability of a good faith defense.

K.S.A. § 22-2518 provides, "A good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception." The Kansas statute makes a specific reference to instances of wiretapping with the language, "interception of any wire, oral or electronic communication." Similarly, the federal statute provides a good faith exception suggesting that, "A good faith reliance on a court warrant or order, a grand jury subpoena, a legislative authorization, or statutory authorization…. is a complete defense against any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2520(d)(1)? Aside from establishing the existence of a good faith defense under state and federal statute, the next step is determining under a Fourth Amendment analysis whether a good faith exception applies to the state and federal claims.

2. <u>A Good Faith Exception Applies Under a Fourth Amendment Analysis.</u>

The good faith exception applies where a detached and neutral judge finds probable cause for the search, and law enforcement executes the search in a good faith reliance on the order. *U.S. v. Leon,* 468 U.S. 897, 915, 926 (1984). The exception applies only to evidence seized under a once valid warrant that was subsequently invalidated. *United States v. Barber,* No. 15-40043184 F. Supp.3d 1013, 1018, 2016 WL 1660534, at *3 (D. Kan. Apr. 27, 2016) (applying Fourth

---

[7] Both statutes use the exact same relevant language stating "Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing the interception of wire, oral or electronic communications withing the territorial jurisdiction of such judge…"

Amendment considerations).   A good faith exception applies because: (a) Brown's attenuated involvement with the investigation does not establish deceptive conduct; (b) the search conducted by the Task Force was objectively reasonable; (c) Brown reasonably exercised good faith reliance on the validity of each order.

   a.   Brown's distant connection to the investigation does not establish any engagement in deceptive conduct.

To overcome a good faith exception, Banks and Thompson are tasked with identifying false or deceptive conduct by law enforcement in the preparation and presentation of the application. *Massachusetts v. Sheppard,* 468 U.S. 981 (1984). Under, *United States v. Augustine,* 742 F.3d 1258, 1262 (10th Cir. 2014) "reliance on a warrant is reasonable in four situations: (1) the issuing magistrate was misled by an affidavit containing false information or information the affiant would have known was false if not for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandons their judicial role; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official believe in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid." *Accord Messerschmidt v. Millender,* 565 U.S. 535 (2012) (noting that the "shield of immunity" conferred by a warrant is lost when the warrant is "based on an affidavit so lacking in indicial of probable cause as to render official belief in its existence entirely unreasonable."). See also *U.S. v. Andrews,* 577 F.3d 231 (4th Cir. 2009) (under *Leon,* the good-faith exception to the exclusionary rule for evidence seized in violation of the Fourth Amendment, evidence obtained pursuant to a warrant issued by a neutral magistrate does not need to be excluded if reliance on the warrant was objectively reasonable).

At a minimum, Banks and Thompson must show Brown was involved in the application for the search warrants or the search of Banks' and Thompson's communications. In essence, the

alleged circumstances described by Banks and Thompson must make it appropriate for the imposition of liability on an officer on the face of a judicially approved warrant. As discussed above, Brown's attenuated connection with the Task Force efforts preclude liability and mandate application of a good faith exception. Brown was not involved in developing the Task Force's strategies or tactics. SOF ¶ 19.  Brown did not participate in securing or executing the wiretap warrant. SOF ¶ 22. Ultimately, Brown's thin connection with the Task Force's efforts is wholly inadequate, and therefore, must be subject to a good faith exception as a matter of law.

b.   The search was objectively reasonable.

Aside from failing to establish any deceptive conduct by Brown, his reliance on the defective warrant was objectively reasonable. *Massachusetts v. Sheppard,* 468 U.S. 981 (1984); *U.S. v. Andrews,* 577 F.3d 231 (4th Cir. 2009) (under *Leon,* the good-faith exception to the exclusionary rule for evidence seized in violation of the Fourth Amendment, evidence obtained pursuant to a warrant issued by a neutral magistrate does not need to be excluded if reliance on the warrant was objectively reasonable). Unless a reasonably well-trained officer would have understood a judicially authorized search to be illegal, then the good faith exception applies. Here, the search was objectively reasonable for two key reasons. First, the extraterritorial provision amounts to searching the "wrong place," and a body of case law suggests searching the wrong place is subject to a good faith exception. Second, law enforcement is allowed to rely on the authority of a judge issuing wiretap orders.

There is ample case law suggesting that a search executed in the wrong place, absent deceptive conduct, is subject to the good faith exception. *Sheppard,*  468 U.S. 981; *U.S. v. Curry,* 911 F.2d 72 (8th Cir. 199) (applying the good faith exception where a defect in the warrant was a product of clerical error rather than bad faith); See *United States v. Thomas,* 263 F.3d 805 (2001)

(affirming district court denial of suppression of evidence seized based on warrant that contained the wrong address); *United States v. Lopez,* 582 Fed. Appx. 438, 444 (5th Cir. 2014) ("an incorrect address does not invalidate a search"); *United States v. Williams,* 548 F.3d 311 (4th Cir. 2008) (admitting evidence based on a good faith exception in spite of failure in warrant to specify evidence linking locations to be searched for drug trafficking activity).

Here, the allegation is that Brown supervised agents who effectively searched the wrong place pursuant to the extraterritorial language in the warrant.  Officers listened to communications that occurred outside of Judge Platt's jurisdiction. Yet, the criminal court specifically found a good faith reliance on the warrant when admitting interceptions of text messages.  *United States v. Banks,* 2015 WL 2401048, at *3 (2015). There the Court expressly concluded that the order authorizing the search of text messages was objectively reasonable because it was obvious the applicants for the order, and the judge understood the intended scope of the wiretap to include interception of text messages. A corollary to the criminal court's finding of good faith reliance on the warrant to intercept text messages, is that a good faith finding would also apply to extraterritorial interceptions of communications. In effect, the judge and law enforcement executing the warrant understood the intended scope of the search with respect to the entire warrant.

Aside from conducting a search within the intended scope of the order, Brown should be able to rely on the authority of a judge issuing wiretap orders. See *Massachusetts v. Sheppard,* 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search requested."). *See also, United States v. Russian,* 848 F.3d 1239, 1247 (10th Cir. 2017) ("[S]ince judges and magistrates are neutral judicial officers" with "no stake in the outcome

of particular criminal prosecutions," the exclusionary sanction "cannot be expected significantly to deter them." Accordingly, given the lack of misconduct by law enforcement and Deputy Wilson's reliance on a warrant he reasonably believed to be valid we decline to apply the exclusionary rule to the evidence seized from Russian's phones.").

In Brown's case, his reliance on Judge Platt's authority was especially reasonable given his attenuated connection with the Task Force investigation. Brown's acknowledgment of each Order only affirms his role as a passive observer rather than an active participant. Given Brown's passive involvement with the Task Force's efforts, it was objectively reasonable of Brown to rely on Platt's authority to issue the Orders.

    c.   Brown reasonably exercised good faith reliance on the validity of each Order.

Brown exercised a good faith reliance on the validity of each Order because the extraterritorial language included in each Order does not create cause to believe it authorizes an illegal search. Case law indicates that absent facial invalidity, good faith reliance applies to the entire warrant. Law enforcement may not benefit from the good faith exception if they know or should have known that a search warrant was invalid. *United States v. McKneely,* 6 F.3d 1447, 1455 (10th Cir. 1993). Further, not every failure to comply with a provision in a wiretap statute renders the interception of communications unlawful. *United States v. Banks,* 2015 WL 2401048, at *3*; *State v. Osborne,* 321 Wis.2d 748 (2009) ("no evidence seized under a search warrant shall be suppressed because of a technical irregularity not affecting the substantial rights of the defendant.").

In this case, there is nothing on the face of any Order that suggests Banks or Thompson were the subject of an illegal search. *Dahda v. United States,* 138 S. Ct. 1491 (2018), affirms that warrants authorizing extraterritorial interceptions do not make a warrant facially insufficient under

the Federal Statute.[8] In *Dadha,* the question was whether evidence collected under a wiretap warrant issued by a Kansas judge should be suppressed when the warrant was "insufficient on its face." *Dahda,* 138 S. Ct., at 1496-97. The crux of Dahda's argument turned on whether the warrant's express provision for extraterritorial interception made the warrant facially insufficient. *Id.* Ultimately, the Court found that the extraterritorial language did not render a wiretap warrant insufficient on its face such that the evidence gleaned from the warrant should be suppressed. *Id.* at 1498-99.

Other circuits have found that failure to adhere to every provision of the wiretap statutes does not make an interception unlawful. In *United States v. Lawson,* 545 F.2d 557, 562 (7ᵗʰ Cir. 1975) the 7ᵗʰ Circuit noted that the government's failure to comply with the inventory provisions of Title III, which requires that criminal suspects to receive notice of a wiretap order within 90 days of concluding surveillance was not so significant to merit suppression of evidence at criminal trial. *See also United States v. Bourassa, supra,* 2019 WL 7559293, at *17 (N.D. Ga. July 25, 2019) ("Finally, even if the wiretap warrant failed to comply with any territorial jurisdiction limitation, the evidence remained admissible under *Leon's* good-faith exception to the exclusionary rule."); *United States v. Lasher,* No. 4:18-CR-00003, 2019 WL 2723910, at *5 (N.D. Ga. July 1, 2019) (Applying *Leon,* "No evidence shows the wiretap warrants were so facially deficient that an officer could not reasonably presume them valid. Even if there were a jurisdictional defect in issuing the wiretap orders, suppression is inappropriate. The Court denies Defendant Lasher's motion to suppress.").

---

[8] The language in the case at hand is nearly identical to the contested language in *Dahda.* Here Judge Platt's Order authorizing extraterritorial interception read, "in the event that the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States." [Exhibit A]. Likewise, the warrant in *Dahda* read, "Pursuant to Title 18, United States Code §2518(3), it is further Ordered that in the event TARGET TELEPHONE #1, TARGET TELEPHONE #3, and TARGET TELEPHONE #4, are transported *outside the territorial jurisdiction of the court,* interception may take place in any other jurisdiction within the United States." *Dahda,* 138 S. Ct. 1498-99.

Upon reading each Order a reasonable officer like Brown would have understood the extraterritorial search to be legal. Brown was unalarmed by the language in the orders, because there was no language in the order that presented cause for alarm. At the very least, *Dada* strongly supports the proposition that evidence gathered in light of an extraterritorial provision is subject to a good faith exception because extraterritorial language does not make a warrant facially insufficient. Case law from lower courts indicate that extraterritorial interceptions are subject to a good faith exception. Brown as a passive observer did not suffer from Genovese Syndrome. The warrant was simply devoid of any indication that an illegal search could potentially occur. Therefore, the Court should grant Brown summary judgment as a matter of law.

## VI.     CONCLUSION

Based on the foregoing arguments and authorities, Brown is entitled to summary judgment as a matter of law.


Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, LLP


  /s/ Michael K. Seck
Michael K. Seck, #11393
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas 66210
913.339.6757/Fax: 913.339.6187
mseck@fpsslaw.com
**ATTORNEY FOR DEFENDANT**
**TIMOTHY BROWN**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of September, 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.


　/s/ Michael K. Seck
Michael K. Seck, #11393