**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN L. OPAT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ----------------------------------------------------------- | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| DAVID L. PLATT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STEVEN OPAT'S MEMORANDUM IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT**

This is the second of two civil lawsuits filed by Plaintiff Albert Banks against Defendant Steven Opat in the District of Kansas. Both concern the criminal investigation and prosecution that ultimately resulted in Banks' conviction on federal drug-trafficking charges. In this case, Case No. 15-3093, Banks alleges that Opat—then the County Attorney of Geary County, Kansas—violated state and federal wiretap laws by illegally intercepting, disclosing, and using his communications.

Opat is entitled summary judgment. To begin with, as was recognized in Banks' first suit against Opat, he is entitled to absolute immunity because he was acting as an advocate for the State of Kansas. Summary judgment is also required because (1) Opat is entitled to qualified immunity, (2) his actions fall within the statutory good-faith defenses, (3) claim preclusion bars Banks' claims, (4) Banks' claims are barred by *Heck v. Humphrey*, and (5) Banks' damages are limited by the statute of limitations.

## I. STATEMENT OF UNCONTROVERTED FACTS

The facts are familiar to this Court from previous litigation in this matter. *See* Memorandum & Order, ECF No. 109. Defendant Steve Opat, in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1, sets forth the following statement of uncontroverted facts:

1. This case arises from a law enforcement investigation of drug trafficking in Geary County, Kansas that began in February 2012. The investigation into the suspected narcotics-trafficking conspiracy was jointly conducted by the Kansas Bureau of Investigation, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department. Exhibit A, Virden Declaration, ¶ 6.

2. At that time, the investigation focused on trafficking of crack cocaine in Geary County, Kansas. The investigators had discovered evidence of crack cocaine sales by Albert Banks in Junction City, which is in Geary County, Kansas. Exhibit A, Virden Declaration, ¶ 11.

3. Glen Virden, a Kansas Bureau of Investigation special agent in charge of the investigation, informed Steven Opat, the County Attorney for Geary County, about the investigation. They agreed that interception of Banks' communications was necessary and appropriate. Exhibit A, Virden Declaration, ¶ 10; Exhibit B, Opat Declaration, ¶ 7.

4. Because there had been a substantial period of time since Opat had last prepared an application for a wiretap order, he consulted the United States Attorney's Office for guidance and samples. Exhibit B, Opat Declaration, ¶ 9.

5. In 2013, Opat applied for wiretap orders authorizing the interception of wire communications by the Kansas Bureau of Investigation and its designees. As the County Attorney, Opat was authorized to make the applications by Kansas law. Opat personally presented each of the applications to Judge Platt. Exhibit B, Opat Declaration, ¶¶ 2-3, 8, 10-12; K.S.A. 22-2515(a)(11).

6. Virden and other law enforcement officers provided affidavits in support of each application. Opat reviewed each affidavit as part of his decision that each application was appropriate and supported by evidence. Exhibit A, Virden Declaration, ¶ 13; Exhibit B, Opat Declaration, ¶ 11.

7. Based on a sample obtained from the United States Attorney's Office, Opat prepared and submitted a proposed order authorizing the interception of wire communications to Judge Platt with each application. Exhibit B, Opat Declaration, ¶ 13.

8. In March and April 2013, Judge David R. Platt of the Eighth Judicial District of Kansas issued wiretap orders for cell phones used by Banks. Each order was not to exceed 30 days. Exhibit A, Virden Declaration, ¶ 9; Exhibit B, Opat Declaration, ¶ 14; Exhibit C, Wiretap Orders at 1-6 (March 5, 2013); 25-30 (April 12, 2013).

9. The wiretap orders entered by Judge Platt provided that if "the target telephone is transferred outside the territorial jurisdiction of this court, interceptions may take place in another jurisdiction within the United States." Exhibit C, Wiretap Orders at 3.

10. On March 6, 2013, more than 60 law enforcement officers attended a meeting and added their signatures to a copy of Judge Platt's wiretap order. All officers were required to sign and date a copy of the order. Exhibit A, Virden Declaration, ¶ 24, 26; Exhibit C, Wiretap Orders at 6-9.

11. Opat attended the meeting and added his name and signature to a list of names and signatures of law enforcement officers and other prosecutors who attended the meeting. The signatures were added to a copy of Judge Platt's March 5, 2013 wiretap order. Opat dated his name and signature March 6, 2013. Exhibit B, Opat Declaration, ¶¶ 15-16; Exhibit C, Wiretap Orders at 8.

12. Opat did not anticipate a jurisdictional issue regarding the wiretap order, in part because the scope of the investigation was not anticipated at the time it was initiated. Exhibit B, Opat Declaration, ¶ 17.

13. Defendant Glen Virden, a Kansas Bureau of Investigation special agent in charge of the investigation, executed the orders. Pursuant to and in reliance on Judge Platt's orders, the investigating agents monitored and collected information from intercepted calls and text messages to and from Banks' phones. Exhibit A, Virden Declaration, ¶¶ 7, 17.

14. Opat had no role in the investigation. Exhibit B, Opat Declaration, ¶ 18.

15. Opat did not intercept any of Banks' communications. Exhibit B, Opat Declaration, ¶ 19.

16. Opat did not listen to any of Banks' calls or view any of his text messages. Exhibit B, Opat Declaration, ¶ 20.

17. Opat did not use any of Banks' communications for any unlawful purpose. Opat was authorized to use the contents of Banks' communications included in Virden's affidavits as part of the judicial process of applying for wiretap orders. Exhibit B, Opat Declaration, ¶ 21; K.S.A. 22-2515(b)(c).

18. Opat did not disclose any of Banks' communications to anyone other than Judge Platt. Exhibit B, Opat Declaration, ¶ 22; K.S.A. 22-2515(b)(c).

19. All of Opat's actions were undertaken in his role as a prosecutor. Exhibit B, Opat Declaration, ¶ 23.

20. At that time, Virden and Opat anticipated that any criminal charges against the suspects, including Banks, resulting from the investigation would be filed and prosecuted in Geary County District Court in the Eighth Judicial District. Exhibit A, Virden Declaration, ¶ 12; Exhibit B, Opat Declaration, ¶ 24.

21. In fact, Banks was initially arrested on state charges and placed in the Geary County Jail. He was charged with drug-trafficking offenses in Geary County District Court. Exhibit B, Opat Declaration, ¶ 25.

22. While the state case was pending in May 2013, according to a civil lawsuit filed by Banks against Opat, Banks submitted a motion requesting that Opat deliver all information about the state charges to him. District of Kansas Case No. 14-3199-SAC, ECF No. 3 at 7.

23. During the course of the criminal investigation, the decision was made to refer Banks to the Office of the United States Attorney for the District of Kansas to prosecute for violations of federal laws, including conspiracy, an offense more appropriate for federal court. Exhibit A, Virden Declaration, ¶ 32; Exhibit B, Opat Declaration, ¶ 26.

24. Based on this decision, Opat moved to dismiss the state-court charges, which were dismissed without prejudice. Exhibit B, Opat Declaration, ¶ 27; *See Banks v. Geary County District Court*, No. 14-3199-SAC, 2015 WL 12864252, at *2 (D. Kan. Nov. 24, 2015).

25. In May 2013, a federal grand jury indicted Banks on multiple counts of distributing and conspiring to distribute crack cocaine. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 1.

26. Banks moved to suppress the intercepted communications. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 343.

27. The district court judge, Judge Crabtree, ruled that "a Kansas state court judge acting under Kansas law has no authority to authorize interception outside the judge's own judicial district." District of Kansas Case No. 13-CR-40060-DDC, ECF No. 517 at 1.

28. Judge Crabtree granted the motions to suppress the extra-territorial communications, excluding all but 7,000 of the 67,000 intercepted communications from trial. As to the 7,000 surviving communications, Judge Crabtree ruled that the government had offered sufficient

evidence that the communications were made by phones located inside the Eighth Judicial District. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 580.

29. Although declining to apply the exclusionary rule's good-faith exception to evidence collected from the wiretaps, Judge Crabtree stated that the good-faith exception "almost certainly applies because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect." District of Kansas Case No. 13-CR-40060-DDC, ECF No. 650 at 6.

30. Opat was not aware of the possibility of a technical jurisdictional defect in Judge Platt's wiretap orders until the issue was raised in motions to suppress, which resulted in the suppression of those interceptions as evidence against Banks. Exhibit B, Opat Declaration, ¶ 28.

31. The application and proposed orders Opat prepared for submission to Judge Platt were based in part upon his review of the documents he had received and used in preparing the application, and he did not consider a technical jurisdictional issue at the time. Exhibit B, Opat Declaration, ¶ 29.

32. A jury convicted Banks on all counts in June 2015. District of Kansas Case No. 13-CR-40060-DDC, ECF No. 766.

33. In October 2014, Banks filed a lawsuit against Opat, alleging that Opat violated Banks' Fourteenth Amendment Due Process and Equal Protection rights for not delivering the information he requested in the short-lived state case. District of Kansas Case No. 14-3199, ECF No. 1, 3. The claim against Opat was dismissed based on prosecutorial immunity. *Banks v. Geary County District Court*, No. 14-3199-SAC, 2015 WL 12864252, at *2 (D. Kan. Nov. 24, 2015), *aff'd by* 645 F. App'x 713 (10th Cir. 2016).

34. Banks filed this lawsuit April 28, 2015. ECF No. 1. Banks filed an Amended Complaint on February 20, 2018. ECF No. 74. He claims actual damages of between $1 million and $2 million. Exhibit D, Plaintiffs' Rule 26(a)(1) Disclosures at 5.

35. After ongoing litigation, including an appeal to the Tenth Circuit Court of Appeals, two claims remain against Opat: (1) violation of the Kansas wiretap statutes, K.S.A. 22-2514 to 22-2519; and (2) violation of the federal wiretap statutes, 18 U.S.C. §§ 2510 to 2523. *Banks v. Opat*, 814 F. App'x 325, 333-34, 338 (10th Cir. 2020) (reversing this Court's dismissal of extra-territorial wiretapping claims in ECF No. 109 based on good-faith reliance defense).

## II.   ARGUMENTS & AUTHORITIES

Steve Opat is entitled to summary judgment because he is entitled to absolute immunity from civil liability as a prosecutor. Alternatively, Opat's motion for summary judgment should be granted because (1) he is entitled to qualified immunity from civil liability, (2) Opat's actions fall within the statutory good-faith defenses under state and federal wiretap laws, (3) Banks' claims are precluded by his first lawsuit against Opat, (4) Banks' claims are barred by *Heck v. Humphrey*, and (5) Banks' purported damages are limited by the statute of limitations.

**Legal standard: Federal Rule of Civil Procedure 56**

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" about "any material fact" exists and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* Summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

**Legal framework: 18 U.S.C. § 2520(a), K.S.A. 22-2518(1)**

The Electronic Communications Privacy Act[1] of 1986 (18 U.S.C. §§ 2510 to 2523) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Kansas law provides a nearly identical remedy. K.S.A. 22-2518(1).

### A. Opat is entitled to absolute immunity because all of his actions were undertaken in his role as a prosecutor and advocate for the State of Kansas.

Opat is entitled to absolute immunity because he acted as an advocate for the State of Kansas in his role as a prosecutor. Opat appeared before a judge in support of applications for wiretap orders, initially prosecuted Banks in state court, and later referred Banks to federal prosecutors. SOF 5, 20-23. All of Opat's actions were undertaken in his role as prosecutor in the judicial phase of the criminal process. SOF 19.

Prosecutors are absolutely immune from civil liability when they act as advocates for the State. *Imbler v. Pachtman*, 424 U.S. 409, 430-32 (1976). That holding rests on "important public policy" justifications: "The 'public trust of the prosecutor's office would suffer' were the prosecutor to have in mind his 'own potential' damages 'liability' when making prosecutorial decisions—as he might well were he subject to § 1983 liability." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-42 (2009) (quoting *Imbler*, 424 U.S. at 424). While this immunity might leave the "genuinely wronged" without a remedy against prosecutors acting for malicious or unlawful purposes, the importance of shielding prosecutorial decision-making from the influence of concerns about subsequent personal liability, the Court concluded, outweighed that risk of harm. *See Imbler*, 424 U.S. at 427. Absolute immunity is available for

---

[1] The Amended Complaint refers to 18 U.S.C. §§ 2510 to 2523 as the "Federal Wiretap Statute." ECF No. 74 at 4-5. This Court and the Tenth Circuit have called these statutes the "Electronic Communications Privacy Act of 1986." ECF No. 109 at 4; *Banks v. Opat*, 814 F. App'x 325, 331 (10th Cir. 2020). The district court in Thompson's criminal case called the statutes "Title III of the Omnibus Crime Control and Safe Streets Act." *United States v. Banks*, No. 13-CR-40060-DDC, 2014 WL 4261344, at *1 (D. Kan. Aug. 29, 2014). Any of these titles refer to the same set of statutes, 18 U.S.C. §§ 2510 to 2523.

conduct of prosecutors that is "intimately associated with the judicial phase of the criminal process." *Id.* at 430. For example, that means that a state prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial. *Id.* at 431.

Specifically, the Supreme Court has held that a prosecutor's appearance in court in support of an application for a search warrant is protected by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 125-26 (1997). A prosecutor is absolutely immune for initiating a prosecution and for presenting the State's case, and "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution." *Burns v. Reed*, 500 U.S. 478, 490-91 (1991). In *Burns*, the Court ruled that the prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity." *Id.* at 492.

Absolute immunity protects against damages claims under any federal law not just 42 U.S.C. § 1983. *Ivory v. Platt*, No. 15-3051, 2016 WL 5916647, at *13 (D. Kan. Oct. 11, 2016). More recently, the Tenth Circuit has reiterated that absolute immunity is an available defense against claims under the federal wiretap statutes. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 630 (10th Cir. 2014); *see also Babb v. Eagleton*, 614 F. Supp. 2d 1232, 1237 (N.D. Okla. 2008) ("In the context of prosecutors performing quasi-judicial functions, federal courts have indicated that quasi-judicial immunity can serve as a defense to a Title III claim.").

Specifically, as relevant here, the Tenth Circuit has affirmed dismissal based on a county attorney's absolute immunity against an illegal wiretap claim under 18 U.S.C. § 2520. *See Newcomb v. Ingle*, 827 F.2d 675, 677 (10th Cir. 1987). In *Newcomb*, an assistant county attorney of Crawford County, Kansas, received tape recordings of telephone conversations and brought criminal charges based on information in the tape recordings. *Id.* A subsequent lawsuit included a claim under § 2520 against the assistant county attorney, which was dismissed based on prosecutorial immunity because the allegations in the complaint revealed that the assistant county attorney's activities were "intimately associated with

the prosecutorial phase of the criminal process." *Id.* The Tenth Circuit agreed with the district court's reasoning and affirmed. *Id.*

Courts in other jurisdictions, too, have acknowledged absolute immunity as a defense for prosecutors against claims of statutory wiretap violations. *See, e.g., Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003) (affirming district court's determination that prosecutors were immune from suit alleging illegal disclosure under Federal Wiretap Act); *Lewellen v. Raff*, 843 F.2d 1103, 1114-15 (8th Cir. 1988) (holding that prosecutors were entitled to absolute immunity on claims that they directed and participated in allegedly illegal electronic surveillance of plaintiff); *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 n.16 (3d Cir. 1979); *Jacobson v. Bell Telephone Co. of Nevada*, 592 F.2d 515, 524 (9th Cir. 1976); *Hill v. Donoghue*, 815 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (ruling that using intercepted jailhouse calls to obtain indictment "is among a prosecutor's quasi-judicial duties that are shielded by absolute immunity"); *Bansal v. Russ*, 513 F. Supp. 2d 264, 275 (E.D. Pa. 2007); *Belanus v. Chandler*, No. 11-0026, 2011 WL 3841828, at *7 (D. Mont. July 8, 2011) (ruling that county attorney was entitled to prosecutorial immunity in defense against claim under 18 U.S.C. § 2520 for acts taken in association with plaintiff's prosecution).

Similarly, Kansas law provides that the actions within the scope of authority as county attorney are absolutely immune from a lawsuit under Kansas law. *See Sampson v. Rumsey*, 1 Kan. App. 2d 191, 197, 563 P.2d 506 (1977). As in under federal law, prosecutors in Kansas have absolute prosecutorial immunity if the prosecutor's actions are "intimately associated with the judicial phase of the criminal process." *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 634, 35 P.3d 815 (2001). Such actions include the filing of a criminal complaint or information, presenting the State's case, and performing traditional functions of an advocate. *Id.* at 634-36.

The uncontroverted historical and procedural facts confirm that Opat was acting as an advocate for the State of Kansas when he applied for the wiretap order at issue in this case. He applied to the

court for each of the wiretap orders and personally presented the application and Virden's affidavit to the judge each time in his capacity as County Attorney. SOF 5-7. In addition, Opat filed a criminal complaint against Banks in Geary County District Court and obtained dismissal when Banks was indicted in federal court. SOF 20-23. Opat took no part in the investigation. SOF 14. All of Opat's actions were undertaken in his role as a prosecutor. SOF 19. Judge Crow, in dismissing a nearly identical lawsuit filed by co-conspirator Johnny Ivory, concluded: "Defendant Opat's actions at the probable cause hearing on the wiretap application in plaintiff's case are plainly analogous to a prosecutor's actions at a probable cause hearing on a search warrant, and Opat's presentation of the application was clearly related to the judicial phase of the criminal process. The court concludes that defendant Opat's acts upon which the complaint is based are protected by absolute immunity." *Ivory v. Platt*, No. 15-3051, 2016 WL 5916647, at \*11 (D. Kan. Oct. 11, 2016). Opat's actions in Banks' prosecution were identical to his actions in Ivory's prosecution. Thus, Opat is entitled to absolute immunity to both claims under state and federal law.

### B. In the alternative, Opat is at least entitled to qualified immunity because he did not violate Banks' rights or any law that was clearly established at the time.

Even if the Court determines that Opat's role was less than completely prosecutorial, he is at least entitled to qualified immunity. First of all, Opat did not violate federal or state wiretap laws because his actions were statutorily authorized. Even so, the actions alleged against Opat in the Amended Complaint did not violate any law that was clearly established at the time.

In Banks' first lawsuit against Opat, the district court and the Tenth Circuit observed that a prosecuting attorney may be "at the very least entitled to qualified immunity for his role in Mr. Banks's state prosecution" unless the plaintiff alleges facts showing that the prosecutor "violated a clearly established constitutional right." *Banks v. Geary County District Court*, 645 F. App'x 713, 718 (10th Cir. 2016). A prosecutor is entitled only to qualified immunity when he "functions as an administrator rather than as an officer of the court." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). That means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The Tenth Circuit has acknowledged the availability of the qualified immunity defense for an alleged violation of the federal wiretap statutes. *See Phillips v. Bell*, 365 F. App'x 133, 143 (10th Cir. 2010). At least one district court in the circuit recently has granted summary judgment based on qualified immunity against a claim alleging violation of the Federal Wiretap Act. *See Stewart v. City of Oklahoma City*, No. 18-420, 2020 WL 4352503, at *3-4 (W.D. Okla. July 29, 2020) (citing *Phillips* as "indicating that qualified immunity is available as a defense under the FWA"); *see also Babb*, 614 F. Supp. 2d at 1237-38 ("In addition, there is authority holding that qualified immunity extended to government actors is a defense to Title III liability."). Other circuits have agreed that a defendant may raise a qualified immunity defense to alleged violations of the federal wiretap act. *See, e.g., John K. MacIver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1015 (7th Cir. 2018); *Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2001); *Blake v. Wright*, 179 F.3d 1003, 1012-13 (6th Cir. 1999).

Also relevant are exceptions to the wiretap statutes for law enforcement under Kansas and federal wiretap laws. Both statutes define an "investigative or law enforcement officer" to include "any attorney authorized by law to prosecute or participate in the prosecution" of certain criminal offenses, including drug trafficking. 18 U.S.C. § 2510(7); K.S.A 22-2514(5); K.S.A. 22-2515(a)(11). "Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived

therefrom, may use such contents to the extent such use is appropriate to the proper performance of his official duties." 18 U.S.C. § 2517(2); K.S.A. 22-2515(c) (same). Similarly, a prosecuting attorney "may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." 18 U.S.C. § 2517(1); K.S.A. 22-2515(b).

Here, Opat was authorized to apply to a judge for a wiretap order. *See* K.S.A. 22-2515(a)(11) (allowing county attorney to make application to any judge of competent jurisdiction for a wiretap order to produce evidence of trafficking of controlled substances). SOF 5. He was authorized to use Banks' communications in the proper performance of his official duties as a prosecutor. 18 U.S.C. § 2517(2). SOF 17. Opat did not violate any of Banks' statutory rights under state and federal wiretap laws. He did not participate in the interception of Banks' communications. SOF 15. To the extent that the Amended Complaint alleges that Opat used the communications to prosecute Banks or disclosed the contents of the communications, both actions are authorized by the law enforcement exceptions. 18 U.S.C. § 2517(1); K.S.A. 22-2515(b). Thus, Opat did not engage in unauthorized conduct and may not be held civilly liable under the law enforcement exception present in the text of federal and state laws. *See Ivory v. Platt*, No. 15-3051, 2016 WL 5916647, at *13-14 (D. Kan. Oct. 11, 2016) (dismissing identical state and federal wiretap claims against Opat for multiple reasons, including the law enforcement exception).

Thus, the record does not support a claim that Opat violated any of Banks' statutory rights. Even so, Opat is entitled to qualified immunity because Banks cannot show that the alleged right to be free from the conduct Opat is alleged to have undertaken was clearly established. Specifically, Banks cannot show that the law was clearly established that a county attorney protected by the law enforcement exception violates the wiretap statutes by using contents of intercepted communications obtained through a wiretap order that is subsequently found to be partially invalid to file drug trafficking charges in state court but soon after obtains dismissal of those charges in favor of federal prosecution.

### C. In the alternative, Opat's good-faith reliance on Judge Platt's court orders is a complete defense under state and federal wiretap statutes.

This Court's original basis for dismissal of these claims is still valid. ECF No. 109 at 6-8. As this Court previously determined, Opat's good-faith reliance on a court order is a complete defense to Banks' wiretap claims under state and federal law. *See* K.S.A. 22-2518(2) ("A good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."); 18 U.S.C. § 2520(d)(1) ("A good faith reliance on … a court warrant or order … is a complete defense against any civil or criminal action brought under this chapter or any other law.").

This Court expressly found that the record establishes that Banks' claims are barred by the good-faith defense. ECF No. 109 at 7. This Court agreed that "Judge Crabtree's reasoning in the underlying criminal case is equally applicable" to this civil case. ECF No. 109 at 8. In ruling on motions to suppress extra-territorial communications in Banks' criminal case, Judge Crabtree noted that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *United States v. Banks*, No. 13-40060, 2015 WL 2401048, at *3 (D. Kan. May 15, 2015), *vacated by* 138 S. Ct. 2707 (2018). In concluding that Banks' Amended Complaint fails to state a claim, this Court determined that the individual defendants, including Opat, did not violate state and federal wiretap statutes because their "good faith reliance provides a complete defense to Plaintiff's wiretap claims." ECF No. 109 at 8.

The Tenth Circuit's remand of this issue does not undermine this Court's previous ruling. The Tenth Circuit held only that issue preclusion was not available as a defense in this case because Judge Crabtree did not expressly rule that the good-faith defense applied in the criminal case. *Banks v. Opat*, 814 F. App'x 325, 333 (10th Cir. 2020) ("Because the court made only an observation about good faith but not a finding, Mr. Banks is not collaterally estopped from litigating the issue of good faith regarding his wiretap claims alleging the interception of extra-territorial communications.").

- 14 -

Notably, Opat did not argue for issue preclusion either before this Court or in the Tenth Circuit. On remand, Opat asks this Court to make its own independent finding based on the uncontroverted facts in this case that the state and federal wiretap claims against Opat are barred by the statutory good-faith defense. Specifically, Opat was not aware of the technical jurisdictional defect in the wiretap orders until the issue was raised in motions to suppress.[2] SOF 30. Opat did not consider the possibility of a jurisdictional issue when he applied for the wiretap orders, in part because the larger geographic scope of the investigation was not anticipated at the time it was initiated. SOF 2, 12, 31. Thus, Opat had no reason to question the authority of Judge Platt to enter the wiretap orders as issued, and he reasonably relied on them. For these reasons, Opat is entitled to summary judgment based on his good-faith reliance on a court order, which is a complete defense under state and federal law. *See* K.S.A. 22-2518(2); 18 U.S.C. § 2520(d)(1).

**D.     In the alternative, the doctrine of claim preclusion bars Banks' claims because he could have and should have asserted them in a prior lawsuit against Opat.**

A fundamental rule of civil litigation is that litigants are expected to assert all claims they may have against a defendant in one lawsuit or be barred from asserting them in a subsequent case. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). A "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Banks' claims are barred by claim preclusion because Banks filed a separate civil action against Opat in October 2014 but did not include the claims now made in this lawsuit even though by then he was aware of the conduct alleged in his complaint. *See Banks v. Geary County District Court*, 645 F. App'x 713, 715 (10th Cir. 2016). In his Amended Complaint, Banks admits that he was aware that his phone

---

[2] Under certain circumstances for applications made in federal court, federal wiretap law allows for interception of communications outside the judge's territorial jurisdiction but within the United States, as was reflected in the sample order obtained from the United States Attorney's Office. 18 U.S.C. § 2518(3); SOF 4, 7. For applications made in state court, Kansas wiretap law limits interceptions to within the territorial jurisdiction of the issuing judge. K.S.A. 22-2516(3).

was tapped by June 2013 and knew within months that the wiretap order was defective. ECF No. 74 at 4. But he did not file this lawsuit until April 2015. ECF No. 1. In August 2015, Banks moved to consolidate his first-filed case, No. 14-3199, with this case. ECF No. 5. His motion was denied as moot when Case No. 14-3199 was dismissed. *Banks v. Geary County District Court*, No. 14-3199-SAC, 2015 WL 12864252 (D. Kan. Nov. 24, 2015); ECF No. 8.

The Tenth Circuit acknowledged Opat's claim preclusion argument but declined to address it, questioning whether claim preclusion should apply to this procedural circumstance where Banks moved to consolidate the two cases. *Banks v. Opat*, 814 F. App'x 325, 334 n.12 (10th Cir. 2020). But the Tenth Circuit has held that a district court's denial of a motion to consolidate does not negate an otherwise valid defense of claim preclusion. *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1334 (10th Cir. 1988) (affirming dismissal based on claim preclusion of successive actions in federal court). A second lawsuit is not immunized from claim preclusion by a district court's order denying a motion to consolidate. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1228 (10th Cir. 1999) (affirming dismissal based on claim preclusion of wrongful discharge suit after settlement of FLSA suit). Because these claims could have and should have been brought in Case No 14-3199 in October 2014—which was more than a year after Banks became aware of the defective wiretap order but six months before he filed this case—they may not be brought in this case because they are barred by claim preclusion.

### E. In the alternative, *Heck v. Humphrey* bars Banks' claims because his claim for actual damages necessarily calls into question the validity of his conviction.

By claiming actual damages of between $1 million and $2 million, Banks reverses his position from his prior briefing when he sought to avoid dismissal. SOF 34; ECF No. 93 at 1 (acknowledging that "plaintiff may not receive relief under habeas for the illegal interceptions which were not in his criminal trial"). As a result of Banks' change of course, Opat renews his argument that *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes Banks' claims.

In *Heck*, the Supreme Court held that a prisoner whose claim would call into question the validity of an underlying conviction "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Although *Heck* involved a Section 1983 plaintiff, a complaint is barred by *Heck* regardless of the statutory basis alleged, if success in the suit would challenge the validity of a conviction that has not been previously invalidated. *See Erlin v. United States*, 364 F.3d 1127, 1131 (9th Cir. 2004); *Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1998) (noting that *Heck* bar is fully applicable to federal wiretap claims).

Here, Banks alleges more than $1 million in actual damages, presumably because of his incarceration. Thus, he necessarily questions the validity of his underlying conviction, which he cannot do under *Heck* because Judge Crabtree upheld Banks' conviction in 2019. *United States v. Banks*, No. 13-40060-DDC, 2019 WL 3412305 (D. Kan. July 29, 2019). In a nearly identical lawsuit filed by co-conspirator Ivory, Judge Crow concluded that *Heck* barred the wiretap claims because "Plaintiff simply may not litigate any claim in this civil rights complaint for damages that would undermine or invalidate his federal criminal convictions." *Ivory v. Platt*, No. 15-3051-SAC, 2016 WL 5916647, at *14 (D. Kan. Oct. 11, 2016); *see also Chapman v. Lawson*, 89 F. Supp. 3d 959, 966 (S.D. Ohio 2015) (concluding that federal wiretap claims "necessarily call into question the validity of [plaintiff's] conviction and are barred by *Heck*); *Stegeman v. Rensselaer County Sheriff's Office*, No. 15-CV-21, 2017 WL 4350519, at *1 (N.D.N.Y. Aug. 23, 2017) (upholding dismissal of federal wiretap claim as barred by *Heck*). Thus, *Heck* bars these claims because Banks' alleged actual damages would undermine his convictions.

**F.      Banks' alleged damages under federal law should be limited because this suit was filed more than two years after most of the interceptions.**

Under the Electronic Communications Privacy Act, a civil action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Here, Banks filed this lawsuit on April 28, 2015. ECF No. 1. As a result,

the Court should find as a matter of law that Banks' damages under the ECPA are limited to those incurred after April 28, 2013. There were two wiretap orders authorizing interception of Banks' communications. The first was issued March 5, 2013, and it expired April 4, 2013. *United States v. Banks*, No. 13-40060-DDC, 2014 WL 4261344, at *1 (D. Kan. Aug. 29, 2014); SOF 8. Any damages resulting from this order are outside the statute of limitations and should be disregarded. The second order was issued April 12, 2013, and it expired May 12, 2013. *Id.*; SOF 8. As a matter of law, any damages resulting from this order should be limited to those incurred in the 15 days from April 28 to May 12, 2013.

## III. CONCLUSION

Opat is entitled to summary judgment on both remaining claims based on absolute immunity because his alleged actions were taken as an advocate of the State of Kansas in his prosecutorial capacity. Alternatively, Opat is entitled to summary judgment for any of the legal theories argued above.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: */s/ Eric Turner*
    Eric Turner, #25065
9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone: (913) 498-2100
Facsimile: (866) 347-9614
Email: eturner@foulston.com

ATTORNEY FOR DEFENDANT
STEVEN OPAT

**CERTIFICATE OF SERVICE**

   I certify that on September 18, 2020, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all counsel currently electronically registered with the Court.

                   */s/ Eric Turner*
                   ATTORNEY FOR DEFENDANT
                   STEVEN OPAT