IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| STEVEN L. OPAT, et. al., | ) | |
| Defendants. | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| GLEN VIRDEN, et. al., | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT TIMOTHY BROWN'S MOTION
FOR SUMMARY JUDGMENT (Doc. 175/176)**

*Introduction*

On May 9, 2013, defendant Timothy Brown stood before a small bank of microphones and spoke about "Operation Adabag," thanking agencies, celebrating the 90 arrests that had been made, and highlighting Junction City Police Department's role in the investigation.  He boasted about the purported effects of the operation, guided the press conference for approximately twenty minutes, took questions from the media, and generally took a leading role in the press conference. Now, facing a federal lawsuit, he claims he only held a "logistics role" in the investigation and that his "limited role" in the unlawful interception of wire communications was done in "good faith."

1

The law does not support his conclusion.   And for that reason, viewing the facts in the light most favorable to defendants, along with the reasonable inferences therefrom, his motion for summary judgment should be denied.

### PLAINTIFFS' RESPONSE TO STATEMENT OF MATERIAL UNCONTROVERTED FACTS

1.     ADMITTED.

2.     ADMITTED.

3.     ADMITTED.

4.     ADMITTED.

5.     ADMITTED.

6.     ADMITTED.

7.     ADMITTED in part.   T-Mobile was also a mobile service provider for one of the plaintiffs.

8.     ADMITTED.

9.     ADMITTED.

10.     ADMITTED.

11.     ADMITTED.

12.     DENIED.   Plaintiffs assume this is a typographical error, but the wiretap warrants were issued in 2013, not 2014.   Further, Judge Platt issued orders for the wire communications for various cell phones.   There is no such thing as a blanket "wiretap warrant[] for…mobile phones."

13.     DENIED.   As noted *infra*, Judge Platt was not authorized to issue wiretap orders beyond the scope of his jurisdiction.

2

14.    DENIED.   This explanation is in conflict with at least one other defendant.

15.    DENIED.   As noted throughout, the orders issued by Judge Platt, by their own terms, did not authorize interception of text messages.   Further, Judge Platt's orders were impermissibly broad as to his jurisdiction, so the agents never had legal authority for significant portions of the interceptions.

16.    ADMITTED.

17.    ADMITTED.

18.    ADMITTED.

19.    DENIED.   At a press conference on May 9, 2013, the day most of the arrests happened, Brown took the lead role describing this investigation, directing who spoke, and answering media questions.   This is indicative that he had a much larger role than he acknowledges here.   *See* "VIDEO—'Operation Adabag' Bags 90 Suspects So Far," May 9, 2013, at https://1350kman.com/operation-adabag-bags-90-suspects-so-far/, *accessed September 3, 2021.*

20.    DENIED.   Brown was the Junction City Police Chief, supplied "manpower" to the investigation, and likely received updates, at least from his subordinates.   *See* Brown Exhibit B, at ¶¶ 11-12.

21.    DENIED.   Brown did sign and date the order March 6, 2013, but it was not "issued" to the carriers until March 7, 2013.   *See generally* Brown Exhibit A; Carrier Defendants' Memorandum.

22.    ADMITTED.

23.     DENIED.   Brown supplied manpower, a building, and equipment, as well as was the Chief of Police.   It is reasonable to infer that he had some supervisory role, at least as related to his officers.   *See generally* Brown Exhibit B.   Further, the Kansas statute explains that "any person who intercepts, discloses or uses, or *procures any other person* to intercept, disclose or use" unlawfully obtained information is liable.   K.S.A. 22-2518 (emphasis added).   The federal statute says that "any person who…procures any other person to intercept or endeavor to intercept…[or]…uses, endeavors to use, or procures any other person to use or endeavor to use…" unlawfully intercepted information is liable.   18 U.S.C. § 2511(1)(a)-(b) (ellipses and brackets added).

24.     ADMITTED.

25.     DENIED.   This was the first time Mr. Banks would have learned his phone was wiretapped at all.   Knowledge of the unconstitutionality did not come until later.   *See* Banks Amended Complaint, 15-3093-HLT-GEB (ECF Doc. 74-1), at ¶ 19.

26.     ADMITTED that a complaint was filed.   The parties were not identical.

27.     DENIED.   Thompson claims June 4, 2013, was the first time he learned his phone was wiretapped at all.   Knowledge of the unconstitutionality did not come until later.   *See* Thompson Amended Complaint, 15-3117-HLT-GEB (ECF Doc. 54), at ¶ 18.

28.     ADMITTED.

29.     ADMITTED.

## PLAINTIFFS' STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

*\*\*\*Plaintiffs note for the Court that, in order to avoid confusion, they are just continuing with the numbering started by the Carrier Defendants.*

30.     Albert Banks filed his complaint in this matter on April 28, 2015.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 1.

31.     That same day, Mr. Banks filed a "Motion for Issuance of Summons." *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 3.

32.     The "Motion for Issuance of Summons" was not addressed until the Court's *Notice and Order to Show Cause* was filed on July 21, 2015.   In that Notice, Judge Crow ruled that Mr. Banks needed to show cause why his complaint should not be dismissed and that "plaintiff's motion for issuance of summons (Doc. 3) is denied without prejudice." *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 4, at 15.

33.     Mr. Banks filed a response to the show cause order on August 17, 2015. *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 6.

34.     No action was taken, and Mr. Banks filed a "Motion for Stay of Execution" on January 6, 2016, requesting that the civil case be stayed while his criminal appeal was proceeding.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 7.

35.     Mr. Banks's motion for stay was granted on March 16, 2016.   *See*

United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 8.

36.     On September 29, 2017, the Court entered an order lifting the stay and ruling on the show cause issues.   In that order, Judge Crow allowed the present claims to move forward and ordered the Clerk of the Court to issue summons and waiver of summons forms to all of the parties, including Brown.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 11, at 10-12.

37.     After some litigation, Judge Crow granted Mr. Banks's motion to amend, screened and dismissed a number of claims, but allowed others, include the claim against Brown, to proceed.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 73.

38.     Anthony Thompson filed his complaint in this matter on May 14, 2015. Included with his Complaint were summons for various defendants, including Glen Virden.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 1 (case has now been consolidated with 15-cv-03093-HLT-GEB, but at the time it was a separate action).

39.     Summons were not issued, but the Court's *Notice and Order to Show Cause* was filed on July 21, 2015.   In that Notice, Judge Crow ruled that Mr. Thompson needed to show cause why his complaint should not be dismissed.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 3.

40.    Mr. Thompson filed a response to the show cause order, as well as a motion to amend, on August 13, 2015.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 4, 5.

41.    No action was taken, and Mr. Thompson filed a "Motion for Stay of Execution" on January 25, 2016, requesting that the civil case be stayed while his criminal appeal was proceeding.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 7.

42.    Mr. Thompson's motion for stay was granted on March 16, 2016.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 8.

43.    On September 29, 2017, the Court entered an order lifting the stay and ruling the show cause issues.   In that order, Judge Crow allowed the present claims to move forward and ordered the Clerk of the Court to issue summons and waiver of summons forms to all of the parties, including Brown.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 9.

44.    After some litigation, Judge Crow issued an order striking various pleadings, clarifying others, and granting motions on January 5, 2018.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc.

45.    On February 20, 2018, Judge Crow granted Mr. Thompson's motion to amend, screened and dismissed a number of claims, but allowed others, including the claim against Brown, to proceed.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 70.

7

46.     Both Mr. Banks and Mr. Thompson diligently pursued service of process in this matter to the best of their respective abilities, given their incarceration.   They both acted in accord with the permissions and orders of the judge in this matter.   *See Plaintiff Exhibit A*, Banks Declaration, at ¶ 12; *Plaintiff Exhibit B*, Thompson Declaration, at ¶ 12.

47.     Defendant Brown assigned manpower to the task force investigation. That included for the interception, use, and disclosure of wiretap information.   *See* Brown Exhibit B (Doc. 176-2), Affidavit of Timothy Brown, ¶ 11; Declaration of Glen Virden (Doc. 180-1), ¶ 17.   Detective Alvin Babcock, JCPD, used voluminous wiretap information in the application for a search warrant, and the information was disclosed to federal prosecutors.   *See Plaintiff Exhibit D*, Babcock Search Warrant Application.

## LEGAL STANDARDS

Plaintiffs generally concur with the summary judgment standard of review outlined by Brown.   Nevertheless, they are confident that, when resolving factual disputes and reasonable inferences in their favor, the Court will undoubtedly see that a rational trier of fact can find for the plaintiffs.

## ARGUMENT

### *Statute of Limitations*

#### State

Defendant Brown argues that Plaintiffs' state law claims are time barred because they were not served within 90 days (or 120 days) after the filing of the

complaints.    Brown's summary of Kansas law regarding commencement of actions is generally correct, but his conclusion as to the application of the law here is flawed. Additionally, his date calculation is incorrect, as the unlawful interception of the Plaintiffs' phone calls extended well past March 5, 2013, and disclosure and use of those calls lasted until well into 2015.   Both Banks and Thompson are within the state statute of limitations.

First, both Mr. Banks and Mr. Thompson were under a legal disability pursuant to K.S.A. 60-515(a).   That statute provides:

> [I]f any person entitled to bring an action…at any time during the period the statute of limitations is running…is…imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced…more than eight years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a).   The statute further clarifies that a prisoner who has "access to the court for purposes of bringing an action" is not "deemed to be under a legal disability." *Id.*

Here, Mr. Banks and Mr. Thompson have been imprisoned throughout the duration of the statute of limitations.   Nevertheless, plaintiffs' each filed their respective claims well within the 3-year statute of limitations, requesting service at the same time.   Statement of Facts, ¶¶ 30, 31, 38.   Despite those requests, summons were not issued and the Court issued notices to show cause in each case.   The order to show cause in Mr. Banks's case also specifically denied his motion for summons to be issued.   Plaintiffs timely responded to the show cause orders and requested the cases be stayed until resolution of the underlying criminal case.   Statement of Facts,

¶¶ 32-34, 39-41.   The stays were granted.   Statement of Facts, ¶¶ 35, 42. Ultimately, the stays were lifted, summons were issued, and the plaintiffs' diligently pursued service.   Statement of Facts, ¶¶ 36-37, 43-46.

While Mr. Banks and Mr. Thompson technically had "access" to the court, the Court's denial of summons or failure to issue summons essentially blocked that access for the purpose of securing service, a critical piece to commencing an action under Kansas or federal law.   And when proceeding *in forma pauperis* from custody, the only option for service is via the process used here.   *See* D. Kan. Local Rules, 9.1(g)(3).   For all practical purposes, Mr. Banks and Mr. Thompson were thus without access until the Court ordered the clerk to issue summons and effectuate service in September 2017.   From that moment, the disability was lifted and Mr. Banks and Mr. Thompson each had one year to file their claims.   They both commenced their actions within that timeframe.

Second, equitable tolling and unique circumstances apply to extend the statute of limitations.   The argument is largely the same as above.   But if the Court does not find that Mr. Banks and Mr. Thompson were under a legal disability per statute, equitable principles still warrant allowing their cases to proceed.   The "unique circumstances" doctrine, per Kansas case law, applies where a non-party error contributes to delay.   *Dartez v. Peters*, Case No. 15-3255-EFM, ECF Doc. 149 (D. Kan. Mar. 2, 2018), at *9-11.   It has been applied to toll a statute of limitations in an almost identical situation as here.

In *Dartez*, the court held that a pro se prisoner was subject to the court's

screening process and thus the court's delay in screening the case and in issuing summons should not be counted against the plaintiff, where plaintiff filed well within the statute of limitations. *Dartez*, 15-3255-EFM, at 12-13 (also finding that other circumstances warranted additional tolling). Here, as noted above, the circumstances are almost identical. Both plaintiffs filed their cases within the statute of limitations. Both requested summons immediately. Both were denied summons pending show cause orders, screening, and a stay of litigation. Both diligently pursued service, even pointing out issues to the Court as needed. There was nothing more they could have done as pro se prisoner litigants, and equity warrants tolling the statute of limitations (if it is even required).

Equitable tolling is slightly different and provides that where a person "has been pursuing his rights diligently and some 'extraordinary circumstance' prevented the timely filing," the statute can be tolled. *Dartez*, 15-3255-EFM, at *15. It has been held that court-based delays due to screening could also qualify as "extraordinary circumstances," where it would be inequitable to "penalize" plaintiffs for "events beyond [their] control." *Id.* at *17. Here, again, both Banks and Thompson diligently pursued their rights, and their delay was the result of the Court's processes. Penalizing them for those delays would not be equitable.

Third, even apart from the equity of the situation, Plaintiffs' claims were filed timely. Federal law should apply to determine the commencement of the action. Each of the cases Brown cites for the proposition that state law provides the statute of limitations are *diversity* cases, not supplemental jurisdiction cases. *See, e.g.*,

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 100 (1945) ("The suit, instituted as a class action on behalf of non-accepting noteholders and brought in a federal court solely because of diversity of citizenship…"); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 741 (1980) ("This case presents the issue whether in a diversity action the federal court should follow state law or, alternatively, Rule 3 of the Federal Rules of Civil Procedure in determining when an action is commenced for the purpose of tolling the state statute of limitations."); *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 711 (10th Cir. 2005) ("This case arises under diversity jurisdiction…").   It appears that the Supreme Court has not addressed the question whether Rule 3 commencement tolls the state statute of limitations in federal question/supplemental jurisdiction cases.   *See, e.g.*, *Tillman v. Georgia*, 466 F. Supp. 2d 1311, 1316 (S.D. Ga. 2006) ("[T]he Supreme Court has not pronounced the appropriate interaction between Rule 3 and state-law claims supplemental to federal question claims…").

Here, the Court should apply federal Rule 3 and Rule 4(m) to determine the commencement of the action.   *Tillman* is persuasive.   There, the Georgia court was faced with a situation involving a federal 42 U.S.C. § 1983 claim and supplemental state law claims.   *Id.* at 1313.   The defense moved to dismiss the state law claims, arguing that they were filed out of time because they were not "commenced" within Georgia's "five days" or "diligent in perfecting service" statute.   *Id.* at 1315. Plaintiff there did not serve defendant until 110 days after filing.   *Id.* at 1314. Plaintiff argued that federal Rule 3 should control, while defendant argued that Georgia's rule should control.   *Id.*

The *Tillman* court found that Rule 3 did not govern the commencement of the suit but that federal Rule 4(m) preempted Georgia's more restrictive service of process law and thus the plaintiff's claims were timely filed.   *Id.* at 1323.   Rule 4(m) now provides plaintiffs 90 days to serve but requires courts to "extend the time for service for an appropriate period" where there is "good cause."   Here, plaintiffs' each requested service of summons on the same day they filed their complaints.   Each was denied service of summons, and each of their cases was stayed.   Upon lifting the stays, the Court set an "appropriate period" for service, ordered summons to be issued, and allowed the case to commence.   Plaintiffs acted diligently to effect service, and that service should relate back to control the commencement of the supplemental state law claims in the present case.

Such a result would be more than equitable.   It is likely that Brown knew about this lawsuit from the very beginning.   He would be facing parallel federal claims either way and is in no way prejudiced by the case moving forward.   Further, the plaintiffs' failure to secure service was not a result of neglect or non-diligence on their part, but rather arose from the orders of the Court and the unique situation of a parallel criminal investigation.   The statute of limitations should not bar the plaintiffs' supplemental jurisdiction state law claims.

<u>Federal</u>

The federal statute of limitations issue is easier.   Assuming arguendo Brown's dates for the statute of limitations, Mr. Banks and Mr. Thompson each exercised due diligence in procuring service.   As noted above, each plaintiff requested service of

summons on the same day they filed their complaints.   When those requests were denied or not acted upon, plaintiffs' options were nonexistent.   But, as soon as the Court lifted the stay on their proceedings and issued summons, service was completed promptly.

Both Mr. Thompson and Mr. Banks diligently pursued service of Brown (and the other defendants).   Their actions were commenced well within the statute of limitations.

### VIOLATIONS OF STATE AND FEDERAL WIRETAP LAW and GOOD FAITH

*The Law*

"No area of the law is more sensitive than that of electronic surveillance, since such activity intrudes into the very heart of personal privacy."   *State v. Adams*, 2 Kan. App. 2d 135, 138, 576 P.2d 242 (1978) (quoting *In re Oleander*, 213 Kan. 282 (1973)).   Given the intrusiveness of electronic surveillance, the law strictly regulates such surveillance activities.   Both state and federal legislatures have created legal regimes for electronic surveillance that possess "strict procedural requirements and degree of judicial oversight," *id.*, and a "comprehensive statutory scheme providing explicit requirements, procedures, and protections."   *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007).   Consequently, courts must "strictly construe" judicial wiretap authorizations because "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devises."   *United States v. McNulty*, 729 F.2d 1243, 1265 (10th Cir. 1983).

The strict requirements for wiretaps are embedded in both state and federal

law.   *See K.S.A. 22-2514 et seq; 18 U.S.C. § 2510 et seq.*   K.S.A. 22-2515 provides that an "ex parte order authorizing interception of wire, oral or electronic communication may be issued by a judge of competent jurisdiction" upon the application of a "county attorney."   The application must include a host of information, including the identity of the attorney making the application, the facts and circumstances of the alleged crimes, a summary of the investigative strategies tried so far, and information about prior applications.   *K.S.A. 22-2516.*   The order issued pursuant to the statute is strictly limited in time and is required to have several checks and balances.   *Id; see also generally 18 U.S.C. § 2516.*   The federal statute incorporates the restrictions of state law by specifying that, while a state court judge "of competent jurisdiction" may grant an order of interception, such an order must be "in conformity with section 2518 of this chapter *and* with the applicable State statute."   *18 U.S.C. § 2516(2)* (emphasis added).

The defendants in this case "relied on the authority granted by Kansas state law."   *United States v. Banks*, Case No. 13-cr-40060-DDC (ECF Doc. 517) (D. Kan. Nov. 19, 2014), at 2.   Federal law "requires…deference to [state] law on the question of the validity of the wiretap order obtained in state court under state law."   *Id.* (quoting *United States v. McNulty*, 729 F.2d 1243, 1266) (10th Cir. 1983)).

Pursuant to Kansas law, the wiretap statute *explicitly* limits a judge's wiretap authority to the judge's "territorial jurisdiction." *Id.* (citing K.S.A. 22-2516(3)). Thus, a Kansas judge issuing a wiretap order pursuant to state law can only authorize a wiretap in his or her judicial district.   *Id.* (citing *State v. Adams*, 2 Kan.

App. 2d at 138).   Here, defendants unlawfully intercepted, disclosed, and/or used approximately 60,000 communications.   *United States v. Banks*, United States District Court of Kansas, Case No. 13-cr-40060-DDC (ECF Doc. 580) (Feb. 23, 2015), at 9 ("The government concedes that the Court's order suppressing calls intercepted outside the Eighth Judicial District rendered all but around 7,000 of the intercepted calls inadmissible.").

Once interception begins, law enforcement obligations do not end.   There are requirements for recording, storing, and preserving information.   *See generally K.S.A. 22-2514 et seq; 18 U.S.C. § 2510 et seq.*   But there are also limits on what can be done with the information gained.   While law enforcement officers are authorized to "disclose" and "use" such information in the "proper performance of" their "official duties," they must get "subsequent" approval by a judge that proper procedures were followed before they may disclose information "while giving testimony" in any criminal proceeding or grand jury about criminal activities "other than those specified in the order authorizing the interception."   *See K.S.A. 22-2515(b)-(f); see also 18 U.S.C. § 2517.*

Violations of the law carry consequences.   In criminal proceedings, "[a]ny aggrieved person" may move to suppress any "wire or oral communication" that was unlawfully intercepted, based on a facially insufficient order, or not intercepted in conformity with the order.   *K.S.A. 22-2516(9)(a).*   No "wire or oral communication" or derivative evidence may be "received in evidence" in any trial or other proceeding if the "disclosure of such information would be in violation" of this law.   *K.S.A. 22-*

16

*2517*. Further, any person whose "wire, oral, or electronic communication is intercepted, disclosed or used in violation of this act shall have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use" such communications. *K.S.A. 22-2518; see also 18 U.S.C. § 2520(a)*.

Under federal law, a violation occurs when "any person…intentionally intercepts [or uses or discloses], endeavors to intercept [or use or disclose], or procures any other person to intercept [or use or disclose] or endeavor to intercept [or use or disclose], any wire, oral, or electronic communication" when the person "know[s] or ha[s] reason to know that the information was obtained…in violation of" the law. *18 U.S.C. § 2511(1)(a)-(e)* (brackets added).

Liability for intercepting communications requires proof of intentional conduct. *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992). Liability for use and disclosure requires proof that a defendant knew or had reason to know that the "information was obtained through the interception…in violation of" the statute. *Id.* This requires proof that a defendant knew that information "came from an intercepted communication" and "sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited." *Id.* But, where a law enforcement officer intercepts communications relating to crimes "other than those specified in the order, he or she must obtain judicial permission before disclosing those communications, or evidence derived therefrom, in a court proceeding." *United*

*States v. Levy*, F.2d 326, 329 (10th Cir. 1990).

Both wiretap statutes, however, have a "good faith" defense in civil cases.   *See K.S.A. 22-2518(2); 18 U.S.C. § 2520(d)*.   According to K.S.A. 22-2518(2), "[a] good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."   *See also* 18 U.S.C. §2520(d) ("A good faith reliance on…a court warrant or order…is a complete defense against any civil or criminal action brought under this chapter or any other law.").

Nevertheless, good faith is not an easily achieved immunity.   A "defendant may invoke the defense of good faith reliance on a court order *only* if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable."   *Dahl v. Charles F. Dahl, MD, PC*, 744 F.3d 623, 631 (10th Cir. 2014) (emphasis added).   And while often a defendant may be able to assert a subjective belief, that alone is not enough. The good faith exception "will not apply when an officer 'knows or *should have known* that a search warrant was invalid.'"   *United States v. Barajas*, 710 F.3d 1102, 1111 (10th Cir. 2013) (internal citations omitted, emphasis added).

Officers in Kansas are "presumed to know the law of the jurisdiction that they are enforcing.   Therefore, a failure to understand the law by the very person charged with enforcing it is not objectively reasonable…"   *State v. Oram*, 266 P.3d 1227, 1237 (Kan. Ct. App. 2011).   In this, officers are not treated particularly differently than

18

regular citizens.   S*ee, e.g.*, *State v. Cook*, 187 P.3d 1283, 1289-90 (Kan. 2008) (holding that even regular citizens are "presumed to know that the legislature has made certain conduct illegal" and reiterating that "ignorance of the law is no excuse for violating law").

Further, a good faith exception is not generally applied where the plain language of a statute or case law controls.   *See, e.g.*, *State v. Pettay*, 326 P.3d 1039, 1041 (Kan. 2014) ("The State's arguments do not justify application of a good faith exception in light of the plain language of K.S.A. 22-2501, which had been held to statutorily control the permissible circumstances, purposes, and scope for a search incident to arrest long before Pettay's vehicle search.").   In fact, "objective reasonableness sometimes turns on the clarity of existing law." *United States v. Workman*, 863 F.3d 1313, 1321 (10th Cir. 2017).

There is no "good faith" defense for a mistake of law.   In *Heggy v. Heggy*, 944 F.2d 1537, 1542 (10th Cir. 1991), the Court upheld a district court's rejection of a defense that a husband did not know there was "anything illegal" about wiretapping his wife's phone without consent.   *Id.* at 1541.   The Court held that there was no good faith defense "based on a misunderstanding of the law."   *Id.* at 1542.

This comports with other Circuit precedent as well.   In suppressing evidence seized as the result of a traffic stop based on an officer's misunderstanding of the left-turn law in New Mexico, the Court noted that "failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable." *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013) (emphasis in original).   This rule

does not only apply to "plain and unambiguous laws." *Id.* at 1241.   *But see also Heggy*, 944 F.2d at 1539 (finding Title III wiretap act to be "clear and unambiguous"); *Thompson v. Dulaney*, 970 F.2d 744, 748 (10th Cir. 1992) (language of § 2511 is "clear and broad").

In *Quigley v. Rosenthal*, the Tenth Circuit addressed lawyers' use and disclosure of unlawfully intercepted telephone calls.   In rejecting a "good faith" defense to a punitive damage claim, the Court noted that the attorneys had failed to discover that their "use" of the calls was unlawful.   *Quigley v. Rosenthal*, 327 F.3d 1044, 1070-71 (10th Cir. 2003).   The majority explained "the 'use' of tape-recorded telephone communications is a discrete legal issue" from the "legality of intercepting and recording" such communications.   *Id.* at 1071 n.15.   They further criticized the attorneys in that case for failing to "research[] or even consider[] the legality of using the tape-recorded conversations." *Id* (brackets added).   They reasoned that "a reasonably competent attorney researching the issue" should have discovered a change in the law from three months prior (October to December 1994).   *Id.*   They ultimately found that an attorney's failure to "research the issue" and decision to use recordings "constituted an extreme departure from ordinary care, in a situation where a high degree of danger was apparent."   *Id.* (internal quotations and brackets omitted).

Preventing law enforcement from "good faith"-ing away their misunderstandings of law "comports with a basic policy of fairness." *Nicholson*, 721 F.3d at 1242.   If a defendant is presumed to know the law, so should officers (and

prosecutors) be expected to know the law.   *Id.*   Permitting them to excuse mistakes of law as "reasonable" would disincentivize officers or prosecutors from "mak[ing] certain that they properly understand the law that they are entrusted to enforce and obey."   *Id.* (brackets added and internal citations omitted).   And where they do not understand the law, "one would hope that a law enforcement official would clarify his understanding of any unclear provision before bringing the full force of the law upon an unsuspecting citizen."   *Id.* at 1243.   *See also, e.g., Leone v. Owsley*, 810 F.3d 1149, 1156 (10th Cir. 2015) (defining "bad faith," in contracts setting, to include "lack of diligence…willful rendering of imperfect performance").

*Brown Violated the Law*

Brown begins his substantive argument contending that his signature, placed "after issuance" of a wiretap order is insufficient to establish legal liability.   Brown essentially argues that because he was just the Chief of Police and did not personally monitor or intercept calls, he is not liable.   That argument must fail.

First, his signature was place on the order after Judge Platt signed it, but before it was actually "issued" to the phone companies.   *See* Carrier Defendants Memorandum Statement of Facts, at ¶¶ 26, 28 (ECF Doc. 182), at 7-8 (noting that order was issued to carriers on or about March 7, 2013).   Thus, from the perspective of the citizens tasked with compliance with the order, Brown had lent his authority and that of the Junction City Police Department to ensure such compliance.   *See* Brown Statement of Facts, ¶ 21 (noting he added his signature); Brown Exhibit A (showing Brown's name and "JCPD" beside his signature).   His signature also,

21

according to him, is an indication that he was familiar with the terms of the order. Brown Statement of Facts, ¶ 14.   Brown was an authorizing official whose signature and participation lent credence and authority to the order.   A reasonable trier of fact could certainly find that he is liable for that role.

Second, and more importantly, however, he is responsible under the terms of both the state and federal statutes.   Both statutes hold liable anyone who intercepts, discloses, or uses wiretap data unlawfully.   But both statutes *also* hold liable "any person who…*procures any other person* to intercept, disclose or use" unlawfully obtained information.   *See* K.S.A. 22-2518 (emphasis added); 18 U.S.C. § 2511(1)(a)-(b) (stating "any person who…*procures any other person* to intercept or endeavor to intercept…[or]…uses, endeavors to use, or procures any other person to use or endeavor to use…" unlawfully intercepted information is liable) (emphasis, ellipses and brackets added).   Here, Brown acknowledges that he "assigned additional manpower to the Task Force."   Statement of Facts ¶ 47; Brown Exhibit B (Doc. 176-2), Affidavit of Timothy Brown, ¶ 11.   Further, that assigned manpower was directly involved in the interception and collection of wiretap data.   Declaration of Glen Virden (Doc. 180-1), ¶ 17 (explaining that Junction City Police Department (JCPD) officers participated in the monitoring of wiretap information).   Additionally, Detective Alan Babcock, a JCPD detective, used wiretap information in various investigative matters, including search warrant applications.   *See Exhibit D*, Search Warrant Application.

A rational trier of fact could certainly conclude that the Junction City Chief of

Police, who "assigned manpower" to a wiretap investigation, where that manpower was used to actively intercept data in real-time, "procured" other people to intercept, use, or disclose wiretap data that was unlawfully obtained.   Additionally, Brown even argues that "no order authorizing interception" identifies JCPD as an agency authorized to intercept communications.   Brown Memorandum (Doc. 176), at 16. But wiretap orders must specify the identity of each agency "authorized to intercept" communications.   *K.S.A. 22-2516(4)(d)*; *18 U.S.C.§ 2518(4)(d)*.   Brown's attempt to evade responsibility reveals that JCPD was in violation of the statutes.   Brown violated the law, and a rational trier of fact could hold him accountable for those violations.

*Good Faith Does Not Save Brown*

In evaluating the defendants' unlawful interceptions in the underlying criminal case, Judge Crabtree ultimately ruled that the extrajudicial interceptions should be suppressed.   *United States v. Banks*, Case No. 13-cr-40060-DDC (ECF Doc. 650) (D. Kan. May 15, 2015), at 1.   He did so despite the government's assertions that the "good-faith exception" rescued the warrants, ultimately holding that the "good-faith exception" does not apply to wiretaps for the purpose of evaluating suppression.   *Id.* at 6.   Nevertheless, Judge Crabtree, in dicta, stated that he believes the exception "almost certainly applies because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *Id.*   The defendants here, Brown included, have clung to that line like a life raft, but

much like Jack and Rose, it will not support them all.

First, despite Judge Crabtree's dicta, the defendants, including Brown, should have known that the orders signed by Judge Platt were invalid on their face.   The Kansas wiretap statute "explicitly" limits a judge's wiretapping authority to his or her own "territorial jurisdiction."   *See United States v. Banks*, Case No. 13-cr-40060-DDC (ECF Doc. 517) (D. Kan. Nov. 19, 2014), at 2.   The face of the order, however, purports to authorize interception throughout the "United States," explicitly allowing for interception "*outside* the territorial jurisdiction" of Judge Platt.   Brown Statement of Facts, ¶ 16 (emphasis added).

Even accepting Judge Crabtree's dicta that this was a "subtle technical" issue (which Plaintiffs do not), a state court district judge explicitly purporting to authorize interception contrary to the explicit language of the statute (and to the bounds of the entire United States) is a sufficient fact for a rational factfinder to conclude that Brown and other should have known the orders were unlawful or at least should have investigated further.   *See Quigley*, 327 F.3d at 1071 n.15 (criticizing attorney defendants for failing to research issue further); *Nicholson*, 721 F.3d at 1243 (indicating that officers should clarify any uncertain understandings before applying law to citizen).

Second, the law was clear.   Even beyond the "explicit" statutory language, there was clear Kansas case law that had, at the time of the order, been precedent for 35 years.   *See State v. Adams*, 2 Kan. App. 2d 135 (1978).   That case had been discussed positively in Kansas Supreme Court case law 19 years before the time of

the orders in this case. *See State v. Gibson*, 255 Kan. 474, 478-79 (1994) (distinguishing *State v. Adams*). Brown was a Kanas law enforcement official. Brown Statement of Facts, ¶ 3. He should have been aware of the law of the state he was enforcing. *See Oram*, 266 P.3d at 1237 (Kansas officers are presumed to know the law they enforce); *Pettay*, 326 P.3d at 1041 (plain language of statute prevents application of good faith defense).

And it would not have taken any deep research or any technical know-how for any of the defendants (Brown, Wolf, Virden, or Opat) to have figured out there was an issue before the order was granted. The Kansas Statutes Annotated books (a/k/a "the old-fashioned way"), under a heading "Case Annotations," literally list and summarize cases interpreting each statute. At K.S.A. 22-2516, which is the statute that governs the procedure for wiretap orders and applications, the second case listed was *Adams*. This was the annotation: "Where telephone intercepting devices and monitoring equipment were within same judicial district, district judge in another district without power to authorize interception." *See* Exhibit C, K.S.A. 22-2516, 2007 Book Edition Excerpt, at 562.

Obviously, this is somewhat tongue-in-cheek, but the point is that this law had been clear for at least 35 years and should have been known by any reasonably well-trained officer, including Brown, when they reviewed an order that *by its very terms* exceeded the permissible jurisdiction of the statutes. *Compare* Brown Statement of Facts, ¶ 16 (order planned for phones to be "outside the territorial jurisdiction" and authorized continued interception) *with* K.S.A. 22-2516(3) (only permitting

25

interception orders "within the territorial jurisdiction" of Judge Platt).

Other cases have so held in similar circumstances regarding statutory authority to search.   In *Oram*, the Kansas Court of Appeals found, in the context of statutory authority for non-warranted search incident to arrest, that "deputies in this case should have been aware of Kansas' caselaw indicating that a car is no longer within the immediate presence of an arrestee when the arrestee has been handcuffed and secured in the back of a patrol car," and "that the search violated the statutory limits of K.S.A. 22-2501."   *Oram*, 266 P.3d at 1238.

Caselaw can also be imputed to a reasonably well-trained officer.   *See, e.g.*, *State v. Homolka*, Unpublished, Kan. Ct. App. 121,904, Slip Opinion (July 10, 2020), at 2, 11 (noting argument in dicta but affirming on other grounds that objective officer conducting DUI stop in January 2018 "had every reason to know" about Kansas case law from June 2017 that rendered his advisory form incorrect); *see also, e.g., State v. Powell*, 325 P.3d 1162, 1173 (Kan. 2014) (refusing to apply good faith to deficient warrant based on uncorroborated tips to "signal to police officers that they cannot ignore *well-settled* law regarding anonymous tips") (emphasis added), *compare United States v. Rowland*, 145 F.3d 1194, 1207 (10th Cir. 1998) (holding that it was not unreasonable for officer to rely on magistrate "[g]iven the unsettled state of the law").

Here, there was not a "subtle technical" defect.   There was "explicit" statutory language limiting an authorizing judge's jurisdiction.   There was well-settled, unquestioned, easy-to-find, 35-year-old precedent making clear that jurisdiction was

limited to a judge's judicial district.   There was well-settled, unquestioned, easy-to-find, 19-year-old precedent positively reinforcing the 35-year-old precedent.   And there was an order, on its face, that delimited the jurisdiction far beyond the bounds allowed by Kansas law.

While good faith is intended to protect officers from "magistrate errors," *United States v. Potts*, 559 F. Supp. 2d 1162, 1173-74 (D. Kan. 2008), this case is so clear that a "reasonably well-trained officer" should have known of the order's deficiency despite Judge Platt's authorization.   *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005).   Because the law enforcement defendants did not, reliance upon the order was not objectively reasonable and thus not protected by good faith.   *Id.* at 1231.

Brown attempts to argue that the only way around good faith is proving false or deceptive conduct in the procurement of the warrant.   That is not the entirety of the law.   As noted above, good faith requires both a subjective and objectively reasonable belief in the acceptability of the orders.   Both of those things are not present, so good faith does not apply, and the jurisdictionally unlawful wiretap can form the basis for a rational trier of fact to conclude Brown is liable.

Brown argues that the defective warrant was tantamount to searching the wrong place and that good faith excuses that.   First, as noted above, objectively reasonable officers should have known of the explicit jurisdictional defect in the warrant.   Second, the wiretap orders are based on a statutory scheme designed explicitly to protect the vital interest in privacy of wire communications.   The "wrong place" cases are general Fourth Amendment case that do not apply here.   The orders

targeted phones wire communications, those phones' wire communications (and texts) were intercepted.   It was not a "wrong location" or a clerical error that made the interceptions defective.   It was explicit requirements of the statute.

Brown argues that he should be able to rely on the orders of Judge Platt, but also acknowledges that if law enforcement "know or should have known" an order was deficient, they can still be liable.   He discusses *Dahda v. United States*, 138 S. Ct. 1491 (2018), arguing that it shields him from liability for violations of "one part" of the order.   *Dahda*, however, was addressing the question of whether a jurisdictional defect rendered an entire warrant "insufficient on its face" under federal law such that *all* evidence secured under the wiretap order should have been suppressed.   *Dahda*, 138 S. Ct. 1494.   Additionally, *Dahda* did not address either civil liability or civil liability for interceptions that were actually obtained unlawfully. *Id.*   In fact, the parties in *Dahda* agreed that the extraterritorial interceptions were unlawful.   *Id.* at 1496.   The question was whether that spilled over to the entire warrant.   That is not the question here, but rather, it is whether defendants are liable for the unlawful extraterritorial interceptions in the present case.

Also, Plaintiffs' arguments above expressly address that point.   Further, "[w]hile officers are generally entitled to rely on the magistrate's judgment, they are also required to exercise their own professional judgment.   Indeed, [they] are presumed to have a reasonable knowledge of the law."   *Gonzalez,* 399 F.3d at 1231. Here, Brown should have been aware of the jurisdictional defect and should have brought it up, rather than unquestioningly rely on the defective order.   *See also*

*Powell*, 325 P.3d at 1171 (noting *Groh v. Ramirez*, 540 U.S. 551 (2004) and explaining that for "well-established" particularity requirement, "even a cursory reading of the warrant...perhaps just a glance...would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal").

## CONCLUSION

Defendant Timothy Brown violated the wiretap law.   He affixed his signature to the order prior to its issuance to the phone companies tasked with carrying out the orders, endeavoring to obtain wiretap information from Mr. Banks and Mr. Thompson.   Further, he procured others to intercept and use and disclose wiretap information by assigning manpower to monitor the wiretap in real-time and gather that data.   Brown did so based on a warrant that unlawfully authorized interception outside the state judge's territorial jurisdiction, in direct opposition to long-standing, well-settled, easy-to-find statutory and case law that any reasonably well-trained officer should have been aware of.   His violations of the law were not objectively reasonable, nor are they shielded by good faith.

The Plaintiffs' timely brought suits challenging those violations.   Taking all facts and reasonable inferences in favor of the Plaintiffs, a rational trier of fact could find Brown liable for violations of federal and state wiretap law.   Brown's motion for summary judgment should be denied.

Respectfully submitted,

s/Michael Shultz
Michael Shultz, #23133
Shultz Law Office, P.A.
445 N. Waco
Wichita, Kansas 67202
(316) 269-2284 Telephone
(316) 269-2011 Fax
michael@shultzlaw.net
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.

s/Michael Shultz
Michael Shultz, #23133