IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| STEVEN L. OPAT, et. al., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| GLEN VIRDEN, et. al., | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT VIRDEN'S MOTION FOR
SUMMARY JUDGMENT (Doc. 173/174)**

Defendant Glen Virden violated Kansas and federal wiretap by unlawfully intercepting, using, and disclosing extraterritorial communications in direct contravention of state and federal law.   Now he asks the Court to use his failure to diligently know the law as a shield to excuse his violations.   The Court should not accept the invitation.   Taking all facts and reasonable inferences in favor of Albert Banks and Anthony Thompson, Virden's motion should be denied.

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**

1.      ADMITTED.

2.      ADMITTED.

3.      ADMITTED.

4.     ADMITTED.

5.     ADMITTED.

6.     ADMITTED.

7.     ADMITTED.

8.     ADMITTED.

9.     ADMITTED.

10.     DENIED.   It is admitted that some communications were intercepted. But at least some communications were intercepted inconsistently with the terms of the orders, or pursuant to orders which were unlawful under Kansas law.

11.     DENIED.   The March 5 orders did not authorize "oral, wire and/or electronic communications."

12.     DENIED.   The March 5 orders did not authorize "oral, wire and/or electronic communications."

13.     ADMITTED, but irrelevant as to Opat, Virden and others' collective agreement as to the "need" for interception.

14.     DENIED.   To the extent that this response is intended to limit the jurisdictional anticipation of the wiretap, it is denied.   Riley County officers were involved from the beginning.   *See* Virden SOF, at ¶ 8.

15.     DENIED.   Virden testified that he anticipated it would be "multi-jurisdictional" from past wiretaps he had worked on.   *See Exhibit C,* Glen Virden Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1012) (D. Kan. Hrg. Aug. 21, 2014), at 164.

16.    ADMITTED.

17.    ADMITTED.

18.    ADMITTED.

19.    ADMITTED.

20.    ADMITTED.

21.    ADMITTED.

22.    ADMITTED.

23.    ADMITTED.

24.    ADMITTED.

25.    ADMITTED.

26.    ADMITTED as to intent but denied as to execution.    For instance, both Mr. Banks and Mr. Thompson were aware of non-related communications that were intercepted and used.   Hence, the minimization was not effective.   *See Exhibit A*, Banks Declaration, at ¶¶ 9-11; *Exhibit B*, Thompson Declaration, at ¶¶ 9-11.

27.    ADMITTED that officers signed the order.   The reason for such signature is explained differently by different parties in this lawsuit.

28.    ADMITTED that officers signed the order.   The reason for such signature is explained differently by different parties in this lawsuit.

29.    ADMITTED, but per argument below, Plaintiffs' contend he had a duty to exercise his own independent judgment.

30.    ADMITTED.

31.    DENIED as to implication.   Virden had an obligation to know the law

he was enforcing.   The language of the orders included only interception for wire communications, but Virden knew and intercepted texts anyway.   While those claims may not exist anymore, Virden's actions in the face of language in the orders shows that he did not pay attention to the orders at all.   It is admitted that the language of the orders did not restrict interception to the Eighth Judicial District.

32.     DENIED, except as to the fact that Virden did not make a "conscious evaluation" of the judge's authority.   The rest of the statement is denied as immaterial.

33.     ADMITTED.

34.     ADMITTED as to Virden's awareness, but that unawareness was not objectively reasonable, and Virden knew the wiretap was likely to be "multi-jurisdictional" from the beginning.   *See Exhibit C,* Glen Virden Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1012) (D. Kan. Hrg. Aug. 21, 2014), at 164.

35.     ADMITTED that is what Virden believed, but the implied reasonableness and/or good faith of the belief is denied.

36.     ADMITTED

37.     ADMITTED.

38.     ADMITTED.

39.     ADMITTED.   But Mr. Banks was denied counsel for the nearly one month he was held in state custody.

40.     ADMITTED.   But Mr. Thompson was denied counsel for the nearly one month he was held in state custody.

41.     DENIED.   Mr. Banks learned his phone had been wiretapped on June 3, 2013, but he did not learn of the "unconstitutionality" until much later.   *See* Banks Amended Complaint, 15-3093-HLT-GEB (ECF Doc. 74-1), at ¶ 19.

42.     DENIED.   Mr. Thompson learned his phone had been wiretapped on June 3, 2013, but he did not learn of the "unconstitutionality" until much later.   *See* Thompson Amended Complaint, 15-3117-HLT-GEB (ECF Doc. 54), at ¶ 18.

43.     ADMITTED.

44.     ADMITTED.

45.     ADMITTED.

46.     ADMITTED.

47.     ADMITTED.

## PLAINTIFFS' STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

*\*\*\*Plaintiffs note for the Court that, in order to avoid confusion, they are just continuing with the numbering started by Virden and will just refer to the entire list as Statement of Facts or something similar\*\*\**

48.     Albert Banks filed his complaint in this matter on April 28, 2015.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 1.

49.     That same day, Mr. Banks filed a "Motion for Issuance of Summons." *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 3.

50.     The "Motion for Issuance of Summons" was not addressed until the Court's *Notice and Order to Show Cause* was filed on July 21, 2015.   In that Notice,

Judge Crow ruled that Mr. Banks needed to show cause why his complaint should not be dismissed and that "plaintiff's motion for issuance of summons (Doc. 3) is denied without prejudice." *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 4, at 15.

51.     Mr. Banks filed a response to the show cause order on August 17, 2015. *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 6.

52.     No action was taken, and Mr. Banks filed a "Motion for Stay of Execution" on January 6, 2016, requesting that the civil case be stayed while his criminal appeal was proceeding.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 7.

53.     Mr. Banks's motion for stay was granted on March 16, 2016.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 8.

54.     On September 29, 2017, the Court entered an order lifting the stay and ruling the show cause issues.   In that order, Judge Crow allowed the present claims to move forward and ordered the Clerk of the Court to issue summons and waiver of summons forms to all of the parties, including Virden.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 11, at 10-12.

55.     It appears summons were not immediately sent to Virden, and waiver of summons forms were issued.   *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, Docket Report Entries dated 9/29/17.

56.     Summons was served upon the KBI on October 12, 2017.    The summons receipt indicated that the "[n]umber of parties to be served in this case" and the "[n]umber of process to be served with this Form 285" were both "3."    The document directed service at "Kansas Bureau of Investigation c/o Kansas Attorney General." *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 19.

57.     After some litigation, Judge Crow granted Mr. Banks's motion to amend, screened and dismissed a number of claims, but allowed others, include the claim against Virden in his personal capacity, to proceed.    *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 73.

58.     On February 28, 2018, Magistrate Judge K. Gary Sebelius ordered the Clerk of the Court to issue a summons for Defendant Glen F. Virden and directed service at the "address provided by a plaintiff in a related case, Thompson v. Platt." *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. Entry 78.

59.     Virden was served on March 16, 2018.    *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 85.

60.     Anthony Thompson filed his complaint in this matter on May 14, 2015. Included with his Complaint were summons for various defendants, including Glen Virden.    *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 1 (case has now been consolidated with 15-cv-03093-HLT-GEB, but at the time it was a separate action).

61.    Summons were not issued, but the Court's *Notice and Order to Show Cause* was filed on July 21, 2015.   In that Notice, Judge Crow ruled that Mr. Thompson needed to show cause why his complaint should not be dismissed.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 3.

62.    Mr. Thompson filed a response to the show cause order, as well as a motion to amend, on August 13, 2015.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 4, 5.

63.    No action was taken, and Mr. Thompson filed a "Motion for Stay of Execution" on January 25, 2016, requesting that the civil case be stayed while his criminal appeal was proceeding.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 7.

64.    Mr. Thompson's motion for stay was granted on March 16, 2016.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 8.

65.    On September 29, 2017, the Court entered an order lifting the stay and ruling the show cause issues.   In that order, Judge Crow allowed the present claims to move forward and ordered the Clerk of the Court to issue summons and waiver of summons forms to all of the parties, including Virden.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 9.

66.    It appears summons were not immediately sent to Virden, and waiver of summons forms were issued.   *See* United States District Court, District of Kansas,

Case No. 15-cv-03117-HLT-GEB, ECF Docket Entries dated 9/29/17.

67.     Summons was served upon the KBI on October 12, 2017.    The summons receipt indicated that the "[n]umber of parties to be served in this case" and the "[n]umber of process to be served with this Form 285" were both "3."    The document directed service at "Kansas Bureau of Investigation c/o Kansas Attorney General." *See* United States District Court, District of Kansas, Case No. 15-cv-03093-HLT-GEB, ECF Doc. 19.

68.     After some litigation, Judge Crow issued an order striking various pleadings, clarifying others, and granting motions on January 5, 2018.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 61.

69.     In response to that Order, Mr. Thompson filed a response on January 16, 2018, noting that he had been informed Virden never entered an appearance. Mr. Thompson noted his confusion as he had received motions filed on behalf of the KBI and thus had assumed that Virden was a party.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 65.

70.     On January 17, 2018, Judge Crow issued an order granting Mr. Thompson an additional 60 days to make service upon Virden.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 66.

71.     On January 30, 2018, Mr. Thompson filed a letter with the Clerk providing Virden's address at the KBI and requesting service upon Virden.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB,

ECF Doc. 67.

72.     On February 20, 2018, Judge Crow granted Mr. Thompson's motion to amend, screened and dismissed a number of claims, but allowed others, including the claim against Virden in his personal capacity, to proceed.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 70.

73.     On February 26, 2018, Judge Crow ordered the Clerk of the Court to issue a summons for Defendant Glen F. Virden and directed service by the United States Marshals.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 72.

74.     Virden was served on March 9, 2018.   *See* United States District Court, District of Kansas, Case No. 15-cv-03117-HLT-GEB, ECF Doc. 85.

75.     This was not Agent Virden's first wiretap.   He had previously written affidavits and orders in another wiretap case approximately 10 years before the criminal case at issue here.   *See Exhibit C,* Glen Virden Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1012) (D. Kan. Hrg. Aug. 21, 2014), at p. 162.

76.     Agent Virden knew wiretaps would likely cross jurisdictional boundaries and knew that you could not do them "haphazardly."   *See Exhibit C,* Glen Virden Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1012) (D. Kan. Hrg. Aug. 21, 2014), at p. 164.

77.     Drafting the affidavits in this case was a weeks-long process that involved additional research and an evolving document.   *See Exhibit C,* Glen Virden Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1012) (D. Kan. Hrg.

Aug. 21, 2014), at p. 174-175.   Despite this length of time, Agent Virden never read the wiretap statute.   *Id.* at 207.

78.   No record was ever kept of the discussions between Judge Platt, Agent Virden, and County Attorney Opat.   *See Exhibit C,* Glen Virden Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1012) (D. Kan. Hrg. Aug. 21, 2014), at p. 206-207; *Exhibit D,* Judge David Platt Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1013) (D. Kan. Hrg. Aug. 22, 2014), at p. 359-60.

79.   Judge   Platt   did   not   "understand[]   necessarily   all   of   the hardware/software, those types of things," and the agents "explained all of that to" him.   *See Exhibit D,* Judge David Platt Testimony Excerpt, *United States v. Banks*, 13-cr-40060 (Doc. 1013) (D. Kan. Hrg. Aug. 22, 2014), at p. 366.   This admission came in the context of a discussion about sealing tape drives, but it reveals that the state court judge relied on the agents for "those type of things," meaning technical aspects of software or hardware.   Agent Virden would have been aware of that.

80.   Both Mr. Banks and Mr. Thompson diligently pursued service of process in this matter to the best of their respective abilities, given their incarceration.   They both acted in accord with the permissions and orders of the judge in this matter.   *See Plaintiff Exhibit A*, Banks Declaration, at ¶ 12; *Plaintiff Exhibit B*, Thompson Declaration, at ¶ 12.

## STATUTE OF LIMITATIONS

### *State*

Defendant Virden argues that Plaintiffs' state law claims are time barred

because they were not served within 90 days (or 120 days) after the filing of the complaints.   Virden's summary of Kansas law regarding commencement of actions is generally correct, but his conclusion as to the application of the law here is flawed. Both Banks and Thompson are within the state statute of limitations.

First, both Mr. Banks and Mr. Thompson were under a legal disability pursuant to K.S.A. 60-515(a).   That statute provides:

> [I]f any person entitled to bring an action…at any time during the period the statute of limitations is running…is…imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced…more than eight years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a).   The statute further clarifies that a prisoner who has "access to the court for purposes of bringing an action" is not "deemed to be under a legal disability." *Id.*

Here, Mr. Banks and Mr. Thompson have been imprisoned throughout the duration of the statute of limitations.   Nevertheless, plaintiffs' each filed their respective claims well within the 3-year statute of limitations, requesting service at the same time.   Statement of Facts, ¶¶ 48, 49, 60.   Despite those requests, summons were not issued and the Court issued notices to show cause in each case.   The order to show cause in Mr. Banks's case also specifically denied his motion for summons to be issued.   Plaintiffs timely responded to the show cause orders and requested the cases be stayed until resolution of the underlying criminal case.   Statement of Facts, ¶¶ 50-52, 61-63.   The stays were granted.   Statement of Facts, ¶¶ 53, 64. Ultimately, the stays were lifted, summons were issued, and the plaintiffs' diligently

12

pursued service.   Statement of Facts, ¶¶ 54, 65, 80.

While Mr. Banks and Mr. Thompson technically had "access" to the court, the Court's denial of summons or failure to issue summons essentially blocked that access for the purpose of securing service, a critical piece to commencing an action under Kansas law or federal law.   And when proceeding *in forma pauperis* from custody, the only option for service is via the process used here.   *See* D. Kan. Local Rules, 9.1(g)(3).   For all practical purposes, Mr. Banks and Mr. Thompson were thus without access until the Court order the clerk to issue summons and effectuate service in September 2017.   From that moment, the disability was lifted and Mr. Banks and Mr. Thompson each had one year to file their claims.   They both commenced their actions within that timeframe.

Second, equitable tolling and unique circumstances apply to extend the statute of limitations.   The argument is largely the same as above.   But if the Court does not find that Mr. Banks and Mr. Thompson were under a legal disability per statute, equitable principles still warrant allowing their cases to proceed.   The "unique circumstances" doctrine, per Kansas case law, applies where a non-party error contributes to delay.   *Dartez v. Peters*, Case No. 15-3255-EFM, ECF Doc. 149 (D. Kan. Mar. 2, 2018), at *9-11.   It has been applied to toll a statute of limitations in an almost identical situation as here.

In *Dartez*, the court held that a pro se prisoner was subject to the court's screening process and thus the court's delay in screening the case and in issuing summons should not be counted against the plaintiff, where plaintiff filed well within

the statute of limitations. *Dartez*, 15-3255-EFM, at 12-13 (also finding that other circumstances warranted additional tolling). Here, as noted above, the circumstances are almost identical. Both plaintiffs filed their cases within the statute of limitations. Both requested summons immediately. Both were denied summons pending show cause orders, screening, and a stay of litigation. Both diligently pursued service, even pointing out issues to the Court as needed. There was nothing more they could have done as pro se prisoner litigants, and equity warrants tolling the statute of limitations (if it is even required).

Equitable tolling is slightly different and provides that where a person "has been pursuing his rights diligently and some 'extraordinary circumstance' prevented the timely filing," the statute can be tolled. *Dartez*, 15-3255-EFM, at *15. It has been held that court-based delays due to screening could also qualify as "extraordinary circumstances," where it would be inequitable to "penalize" plaintiffs for "events beyond [their] control." *Id.* at *17. Here, again, both Banks and Thompson diligently pursued their rights, and their delay was the result of the Court's processes. Penalizing them for those delays would not be equitable.

Third, even apart from the equity of the situation, Plaintiffs' claims were filed timely. Federal law should apply to determine the commencement of the action. Each of the cases Virden cites for the proposition that state law provides the statute of limitations are *diversity* cases, not supplemental jurisdiction cases. *See, e.g.*, *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 100 (1945) ("The suit, instituted as a class action on behalf of non-accepting noteholders and brought in a federal court

14

solely because of diversity of citizenship…"); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 741 (1980) ("This case presents the issue whether in a diversity action the federal court should follow state law or, alternatively, Rule 3 of the Federal Rules of Civil Procedure in determining when an action is commenced for the purpose of tolling the state statute of limitations."); *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 711 (10th Cir. 2005) ("This case arises under diversity jurisdiction…").   It appears that the Supreme Court has not addressed the question whether Rule 3 commencement tolls the state statute of limitations in federal question/supplemental jurisdiction cases.   *See, e.g.*, *Tillman v. Georgia*, 466 F. Supp. 2d 1311, 1316 (S.D. Ga. 2006) ("[T]he Supreme Court has not pronounced the appropriate interaction between Rule 3 and state-law claims supplemental to federal question claims…").

Here, the Court should apply federal Rule 3 and Rule 4(m) to determine the commencement of the action.   *Tillman* is persuasive.   There, the Georgia court was faced with a situation involving a federal 42 U.S.C. § 1983 claim and supplemental state law claims.   *Id.* at 1313.   The defense moved to dismiss the state law claims, arguing that they were filed out of time because they were not "commenced" within Georgia's "five days" or "diligent in perfecting service" statute. *Id.* at 1315.   Plaintiff there did not serve defendant until 110 days after filing. *Id.* at 1314. Plaintiff argued that federal Rule 3 should control, while defendant argued that Georgia's rule should control.   *Id.*

The *Tillman* court found that Rule 3 did not govern the commencement of the suit but that federal Rule 4(m) preempted Georgia's more restrictive service of process

law and thus the plaintiff's claims were timely filed. *Id.* at 1323. Rule 4(m) now provides plaintiffs 90 days to serve but requires courts to "extend the time for service for an appropriate period" where there is "good cause." Here, plaintiffs' each requested service of summons on the same day they filed their complaints. Each was denied service of summons, and each of their cases was stayed. Upon lifting the stays, the Court set an "appropriate period" for service, ordered summons to be issued, and allowed the case to commence. Plaintiffs acted diligently to effect service, and that service should relate back to control the commencement of the supplemental state law claims in the present case.

Such a result would be more than equitable. It is likely that Virden knew about this lawsuit from the very beginning. He would be facing parallel federal claims either way and is in no way prejudiced by the case moving forward. Further, the defendants' failure to secure service was not a result of neglect or non-diligence on their part, but rather arose from the orders of the Court and the unique situation of a parallel criminal investigation. The statute of limitations should not bar the plaintiffs' supplemental jurisdiction state law claims.

*Federal*

The federal statute of limitations is easier. Assuming arguendo Virden's dates for the statute of limitation, Mr. Banks and Mr. Thompson each exercised due diligence in procuring service. As noted above, each plaintiff requested service of summons on the same day they filed their complaints. When those requests were denied or not acted upon, plaintiffs' options were nonexistent. But, as soon as the

16

court lifted the stay on their proceedings and issued summons, service was completed promptly.

Virden makes a puzzling claim that plaintiffs were "content to permit their lawsuits to proceed against other defendants," but "did not serve Virden for nearly three years, and only after being prompted by the district court." *Brief of Defendant Virden* (Doc. 174), at 21.   This claim is not accurate.   At each stage, Mr. Banks and Mr. Thompson diligently requested service when appropriate.   Statement of Facts, ¶ 80.   And while it is true that Virden was not served at the same time as the others, even after the stay, it appears that was the result of a clerical error.   Statement of Facts, ¶¶ 54-59, 65-74.   And contrary to being "prompted by the district court," Mr. Thompson proactively reached out to the court immediately when he had questions about whether Virden had been served.   Statement of Facts, ¶¶ 69, 71.   In fact, his action is likely what caused the court in Mr. Banks's case to realize what had happened.   Statement of Facts, ¶ 58.

Both Mr. Thompson and Mr. Banks diligently pursued service of Virden (and the other defendants).   Further, their claims for use and/or disclosure certainly fell within the statute of limitations.   Their actions commenced within the statute of limitations.

## VIRDEN VIOLATED FEDERAL WIRETAP LAW

"No area of the law is more sensitive than that of electronic surveillance, since such activity intrudes into the very heart of personal privacy." *State v. Adams*, 2 Kan. App. 2d 135, 138, 576 P.2d 242 (1978) (quoting *In re Oleander*, 213 Kan. 282

(1973)).   Given the intrusiveness of electronic surveillance, the law strictly regulates such surveillance activities.   Both state and federal legislatures have created legal regimes for electronic surveillance that possess "strict procedural requirements and degree of judicial oversight," *id.*, and a "comprehensive statutory scheme providing explicit requirements, procedures, and protections." *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007).   Consequently, courts must "strictly construe" judicial wiretap authorizations because "[f]ew threats to liberty exist which are greater that that posed by the use of eavesdropping devises." *United States v. McNulty*, 729 F.2d 1243, 1265 (10th Cir. 1983).

The strict requirements for wiretaps are embedded in both state and federal law. *See K.S.A. 22-2514 et seq; 18 U.S.C. § 2510 et seq.*   K.S.A. 22-2515 provides that an "ex parte order authorizing interception of wire, oral or electronic communication may be issued by a judge of competent jurisdiction" upon the application of a "county attorney."   The application must include a host of information, including the identity of the attorney making the application, the facts and circumstances of the alleged crimes, a summary of the investigative strategies tried so far, and information about prior applications. *K.S.A. 22-2516.*   The order issued pursuant to the statute is strictly limited in time and is required to have several checks and balances. *Id; see also generally 18 U.S.C. § 2516.*   The federal statute incorporates the restrictions of state law by specifying that, while a state court judge "of competent jurisdiction" may grant an order of interception, such an order must be "in conformity with section 2518 of this chapter *and* with the applicable

18

State statute." *18 U.S.C. § 2516(2)* (emphasis added).

The defendants in this case "relied on the authority granted by Kansas state law." *United States v. Banks*, Case No. 13-cr-40060-DDC (ECF Doc. 517) (D. Kan. Nov. 19, 2014), at 2. Federal law "requires…deference to [state] law on the question of the validity of the wiretap order obtained in state court under state law." *Id.* (quoting *United States v. McNulty*, 729 F.2d 1243, 1266) (10th Cir. 1983)).

Pursuant to Kansas law, the wiretap statute *explicitly* limits a judge's wiretap authority to the judge's "territorial jurisdiction." *Id.* (citing K.S.A. 22-2516(3)). Thus, a Kansas judge issuing a wiretap order pursuant to state law can only authorize a wiretap in his or her judicial district. *Id.* (citing *State v. Adams*, 2 Kan. App. 2d at 138). Here, defendants unlawfully intercepted, disclosed, and/or used approximately 60,000 communications. *United States v. Banks*, United States District Court of Kansas, Case No. 13-cr-40060-DDC (ECF Doc. 580) (Feb. 23, 2015), at 9 ("The government concedes that the Court's order suppressing calls intercepted outside the Eighth Judicial District rendered all but around 7,000 of the intercepted calls inadmissible.").

Once interception begins, law enforcement obligations do not end. There are requirements for recording, storing, and preserving information. *See generally K.S.A. 22-2514 et seq; 18 U.S.C. § 2510 et seq.* But there are also limits on what can be done with the information gained. While law enforcement officers are authorized to "disclose" and "use" such information in the "proper performance of" their "official duties," they must get "subsequent" approval by a judge that proper procedures were

followed before they may disclose information "while giving testimony" in any criminal proceeding or grand jury about criminal activities "other than those specified in the order authorizing the interception." *See K.S.A. 22-2515(b)-(f); see also 18 U.S.C. § 2517.*

Violations of the law carry consequences. In criminal proceedings, "[a]ny aggrieved person" may move to suppress any "wire or oral communication" that was unlawfully intercepted, based on a facially insufficient order, or not intercepted in conformity with the order. *K.S.A. 22-2516(9)(a).* No "wire or oral communication" or derivative evidence may be "received in evidence" in any trial or other proceeding if the "disclosure of such information would be in violation" of this law. *K.S.A. 22-2517.* Further, any person whose "wire, oral, or electronic communication is intercepted, disclosed or used in violation of this act shall have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use" such communications. *K.S.A. 22-2518; see also 18 U.S.C. § 2520(a).*

Under federal law, a violation occurs when "any person...intentionally intercepts [or uses or discloses], endeavors to intercept [or use or disclose], or procures any other person to intercept [or use or disclose] or endeavor to intercept [or use or disclose], any wire, oral, or electronic communication" when the person "know[s] or ha[s] reason to know that the information was obtained...in violation of" the law. *18 U.S.C. § 2511(1)(a)-(e)* (brackets added).

Liability for intercepting communications requires proof of intentional

conduct. *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992). Liability for use and disclosure requires proof that a defendant knew or had reason to know that the "information was obtained through the interception...in violation of" the statute. *Id.* This requires proof that a defendant knew that information "came from an intercepted communication" and "sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited." *Id.* But, where a law enforcement officer intercepts communications relating to crimes "other than those specified in the order, he or she must obtain judicial permission before disclosing those communications, or evidence derived therefrom, in a court proceeding." *United States v. Levy*, F.2d 326, 329 (10th Cir. 1990).

Virden argues essentially that there was no violation of federal because Judge Platt qualified as a judge of "competent jurisdiction." The crux of his argument seems to rest on his conclusion that the federal statutes "do not impose the state statute's 'territorial jurisdiction' restriction." Virden Memorandum (Doc. 174), at 23. He seems to be arguing about restrictions on what kind of judge is even authorized to issue warrants at all. In other words, whether Judge Platt was even qualified for the job. That is not the issue in Plaintiffs' cases.

The federal statute is concerned with more than whether the judge is the right judge. It is concerned with whether the right judge issues lawful orders. In fact, it specifically allows a state court judge "of competent jurisdiction" to grant an order of interception only when such order is "in conformity with section 2518 of this chapter

*and* with the applicable State statute." *18 U.S.C. § 2516(2)* (emphasis added). Here, the applicable State statute is K.S.A. 22-2516(3), which explicitly restricts a judge's wiretap authority to his territorial jurisdiction.   It is not concerned with the "quality of the public officials who will pass on issuing wiretaps," but rather whether those public officials pass on issuing wiretaps in conformity with the law.   Wiretap orders under federal law must comply both with the federal and state statutes.

## GOOD FAITH DOES NOT RESCUE VIRDEN

Both wiretap statutes, however, have a "good faith" defense in civil cases.   *See K.S.A. 22-2518(2); 18 U.S.C. § 2520(d)*.   According to K.S.A. 22-2518(2), "[a] good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."   *See also* 18 U.S.C. §2520(d) ("A good faith reliance on…a court warrant or order…is a complete defense against any civil or criminal action brought under this chapter or any other law.").

Nevertheless, good faith is not an easily achieved immunity.   A "defendant may invoke the defense of good faith reliance on a court order *only* if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable."   *Dahl v. Charles F. Dahl, MD, PC*, 744 F.3d 623, 631 (10th Cir. 2014) (emphasis added).   And while often a defendant may be able to assert a subjective belief, that alone is not enough. The good faith exception "will not apply when an officer 'knows or *should have known*

that a search warrant was invalid.'" *United States v. Barajas*, 710 F.3d 1102, 1111 (10th Cir. 2013) (internal citations omitted, emphasis added).

Officers in Kansas are "presumed to know the law of the jurisdiction that they are enforcing.   Therefore, a failure to understand the law by the very person charged with enforcing it is not objectively reasonable..." *State v. Oram*, 266 P.3d 1227, 1237 (Kan. Ct. App. 2011).   In this, officers are not treated particularly differently than regular citizens.   S*ee, e.g., State v. Cook*, 187 P.3d 1283, 1289-90 (Kan. 2008) (holding that even regular citizens are "presumed to know that the legislature has made certain conduct illegal" and reiterating that "ignorance of the law is no excuse for violating law").

Further, a good faith exception is not generally applied where the plain language of a statute or case law controls.   *See, e.g., State v. Pettay*, 326 P.3d 1039, 1041 (Kan. 2014) ("The State's arguments do not justify application of a good faith exception in light of the plain language of K.S.A. 22-2501, which had been held to statutorily control the permissible circumstances, purposes, and scope for a search incident to arrest long before Pettay's vehicle search.").   In fact, "objective reasonableness sometimes turns on the clarity of existing law." *United States v. Workman*, 863 F.3d 1313, 1321 (10th Cir. 2017).

There is no "good faith" defense for a mistake of law.   In *Heggy v. Heggy*, 944 F.2d 1537, 1542 (10th Cir. 1991), the Court upheld a district court's rejection of a defense that a husband did not know there was "anything illegal" about wiretapping his wife's phone without consent.   *Id.* at 1541.   The Court held that there was no

23

good faith defense "based on a misunderstanding of the law." *Id.* at 1542.

This comports with other Circuit precedent as well. In suppressing evidence seized as the result of a traffic stop based on an officer's misunderstanding of the left-turn law in New Mexico, the Court noted that "failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable." *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013) (emphasis in original). This rule does not only apply to "plain and unambiguous laws." *Id.* at 1241. *But see also Heggy*, 944 F.2d at 1539 (finding Title III wiretap act to be "clear and unambiguous"); *Thompson v. Dulaney*, 970 F.2d 744, 748 (10th Cir. 1992) (language of § 2511 is "clear and broad").

In *Quigley v. Rosenthal*, the Tenth Circuit addressed lawyers' use and disclosure of unlawfully intercepted telephone calls. In rejecting a "good faith" defense to a punitive damage claim, the Court noted that the attorneys had failed to discover that their "use" of the calls was unlawful. *Quigley v. Rosenthal*, 327 F.3d 1044, 1070-71 (10th Cir. 2003). The majority explained "the 'use' of tape-recorded telephone communications is a discrete legal issue" from the "legality of intercepting and recording" such communications. *Id.* at 1071 n.15. They further criticized the attorneys in that case for failing to "research[] or even consider[] the legality of using the tape-recorded conversations." *Id* (brackets added). They reasoned that "a reasonably competent attorney researching the issue" should have discovered a change in the law from three months prior (October to December 1994). *Id.* They ultimately found that an attorney's failure to "research the issue" and decision to use

recordings "constituted an extreme departure from ordinary care, in a situation where a high degree of danger was apparent."   *Id.* (internal quotations and brackets omitted).

Preventing law enforcement from "good faith"-ing away their misunderstandings of law "comports with a basic policy of fairness."   *Nicholson*, 721 F.3d at 1242.   If a defendant is presumed to know the law, so should officers (and prosecutors) be expected to know the law.   *Id.*   Permitting them to excuse mistakes of law as "reasonable" would disincentivize officers or prosecutors from "mak[ing] certain that they properly understand the law that they are entrusted to enforce and obey."   *Id.* (brackets added and internal citations omitted).   And where they do not understand the law, "one would hope that a law enforcement official would clarify his understanding of any unclear provision before bringing the full force of the law upon an unsuspecting citizen."   *Id.* at 1243.   *See also, e.g., Leone v. Owsley*, 810 F.3d 1149, 1156 (10th Cir. 2015) (defining "bad faith," in contracts setting, to include "lack of diligence…willful rendering of imperfect performance").

In evaluating the defendants' unlawful interceptions in the underlying criminal case, Judge Crabtree ultimately ruled that the extrajudicial interceptions should be suppressed.   *United States v. Banks*, United States District Court of Kansas, Case No. 13-cr-40060-DDC (ECF Doc. 650) (May 15, 2015), at 1.   He did so despite the government's assertions that the "good-faith exception" rescued the warrants, ultimately holding that the "good-faith exception" does not apply to wiretaps for the purpose of evaluating suppression.   *Id.* at 6.   Nevertheless, Judge

Crabtree, in dicta, stated that he believes the exception "almost certainly applies because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *Id.* The defendants here have clung to that line like a life raft, but much like Jack and Rose, it will not support them all.

First, the defendants, particularly Virden, should have known that the orders signed by Judge Platt were invalid on their face. The Kansas wiretap statute "explicitly" limits a judge's wiretapping authority to his or her own "territorial jurisdiction." *See United States v. Banks*, Case No. 13-cr-40060-DDC (ECF Doc. 517) (D. Kan. Nov. 19, 2014), at 2. The face of the order, however, purports to authorize interception throughout the "United States," explicitly allowing for interception "outside the territorial jurisdiction" of Judge Platt. Statement of Facts, at ¶¶ 18, 24.

Even accepting Judge Crabtree's dicta that this was a "subtle technical" issue (which Plaintiffs do not), a state court district judge explicitly purporting to authorize interception contrary to the explicit language of the statute (and to the bounds of the entire United States) is a sufficient fact for a rational factfinder to conclude that Brown and other should have known the orders were unlawful or at least should have investigated further. *See Quigley*, 327 F.3d at 1071 n.15 (criticizing attorney defendants for failing to research issue further); *Nicholson*, 721 F.3d at 1243 (indicating that officers should clarify any uncertain understandings before applying law to citizen).

This is especially true for Virden. This was not his first wiretap. He had

been in Kansas law enforcement for years and knew that wiretaps would be "multi-jurisdictional" and could not be done "haphazardly."   Statement of Facts, at ¶¶ 6, 75, 76.   Despite this, and even though drafting the affidavits took a few weeks that involved additional research and discussion, Virden never thought to read the statutes authorizing wiretaps.   Statement of Facts, at ¶¶ 77.   Further, he knew Judge Platt had relied on him to explain the technical aspects of the wiretaps.   Statement of Facts, at ¶¶ 79.   He should have been aware of the jurisdictional issue.

Second, the law was clear.   Even beyond the "explicit" statutory language, there was clear Kansas case law that had, at the time of the order, been precedent for 35 years.   *See State v. Adams*, 2 Kan. App. 2d 135 (1978).   That case had been discussed positively in Kansas Supreme Court case law 19 years before the time of the orders in this case.   *See State v. Gibson*, 255 Kan. 474, 478-79 (1994) (distinguishing *State v. Adams*).   Virden was a longtime Kansas law enforcement official and should have been aware of Kansas law.   *See Oram*, 266 P.3d at 1237 (Kansas officers are presumed to know the law they enforce); *Pettay*, 326 P.3d at 1041 (plain language of statute prevents application of good faith defense).

And it would not have taken any deep research or any technical know-how for any of the defendants (Brown, Wolf, Virden, or Opat) to have figured out there was an issue before the order was granted.   The Kansas Statutes Annotated books (a/k/a "the old-fashioned way"), under a heading "Case Annotations," literally list and summarize cases interpreting each statute.   At K.S.A. 22-2516, which is the statute that governs the procedure for wiretap orders and applications, the second case listed

was *Adams*.  This was the annotation: "Where telephone intercepting devices and monitoring equipment were within same judicial district, district judge in another district without power to authorize interception."  *See Exhibit E*, K.S.A. 22-2516, 2007 Book Edition Excerpt, at 562.

Obviously, this is somewhat tongue-in-cheek, but the point is that this law had been clear for at least 35 years and should have been known by any reasonably well-trained officer, including Brown, when they reviewed an order that *by its very terms* exceeded the permissible jurisdiction of the statutes.  *Compare* Virden Statement of Facts, ¶ 18 (order planned for phones to be "outside the territorial jurisdiction" and authorized continued interception) *with* K.S.A. 22-2516(3) (only permitting interception orders "within the territorial jurisdiction" of Judge Platt).

Other cases have so held in related circumstances.  In *Oram*, the Kansas Court of Appeals found, in the context of statutory authority for non-warranted search incident to arrest, that "deputies in this case should have been aware of Kansas' caselaw indicating that a car is no longer within the immediate presence of an arrestee when the arrestee has been handcuffed and secured in the back of a patrol car," and "that the search violated the statutory limits of K.S.A. 22-2501."  *Oram*, 266 P.3d at 1238.

Caselaw can also be imputed to a reasonably well-trained officer.  *See, e.g.*, *State v. Homolka*, Unpublished, Kan. Ct. App. 121,904, Slip Opinion (July 10, 2020), at 2, 11 (noting argument in dicta but affirming on other grounds that objective officer conducting DUI stop in January 2018 "had every reason to know" about Kansas case

law from June 2017 that rendered his advisory form incorrect); *see also, e.g.*, *State v. Powell*, 325 P.3d 1162, 1173 (Kan. 2014) (refusing to apply good faith to deficient warrant based on uncorroborated tips to "signal to police officers that they cannot ignore *well-settled* law regarding anonymous tips") (emphasis added), *compare United States v. Rowland*, 145 F.3d 1194, 1207 (10th Cir. 1998) (holding that it was not unreasonable for officer to rely on magistrate "[g]iven the unsettled state of the law").

Here, there was not a "subtle technical" defect.   There was "explicit" statutory language limiting an authorizing judge's jurisdiction.   There was well-settled, unquestioned, easy-to-find, 35-year-old precedent making clear that jurisdiction was limited to a judge's judicial district.   There was well-settled, unquestioned, easy-to-find, 19-year-old precedent positively reinforcing the 35-year-old precedent.   And there was an order, on its face, that delimited the jurisdiction far beyond the bounds allowed by Kansas law.

While good faith is intended to protect officers from "magistrate errors," *United States v. Potts*, 559 F. Supp. 2d 1162, 1173-74 (D. Kan. 2008), this case is so clear that a "reasonably well-trained officer" should have known of the order's deficiency despite Judge Platt's authorization.   *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005).   Because the law enforcement defendants did not, reliance upon the warrant was not objectively reasonable and thus not protected by good faith.   *Id.* at 1231.

Virden's claims that he did not read the statutes and would not have

challenged the judge are not enough to excuse him.   "While officers are generally entitled to rely on the magistrate's judgment, they are also required to exercise their own professional judgment.   Indeed, [they] are presumed to have a reasonable knowledge of the law." *Id.*   Here, Virden should have been aware of the jurisdictional defect and should have brought it up to Opat or Judge Platt, rather than unquestioningly rely on the defective order.   And his decision to not read the statutes should not excuse him either.   *See, e.g.*, *United States v. Gant*, 587 F. Supp. 128, 134 (S.D. Tex. 1984) ("The officers merely elaborated upon their 'good faith reliance' upon a warrant which they did not even read.   Such subjective good faith has been patently condemned as a rationale for applying the good faith exception to the exclusionary rule."); *Powell*, 325 P.3d at 1171 (noting *Groh v. Ramirez*, 540 U.S. 551 (2004) and explaining that for "well-established" particularity requirement, "even a cursory reading of the warrant…perhaps just a glance…would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal").

There is sufficient evidence, coupled with reasonable inference drawn in favor Mr. Banks and Mr. Thompson, to conclude that a rational trier of fact could find liability on the part of Virden.   He was the case agent, directing and procuring others to monitor the unlawful interceptions, and he was involved from the very beginning. He knew that wiretaps could not be done haphazardly and spent time drafting the affidavits over the course of weeks.   Yet, knowing this, and facing no emergency, he never once—not once—thought to read the statutes.   How can that be good faith?

As a result, violations of the law compounded.   Virden was given an order that on its face said the exact opposite of what the statute authorized it to do. Interception was allowed "outside" the "territorial jurisdiction," even though the statute prohibited exactly that.   But Virden did not know.   Why not?   Not because it was a "subtle, technical" defect, but because he never looked.   As a result of his failure to exercise his own professional judgment, the unlawful wiretap orders were issued and 60,000 communications were unlawfully intercepted, many with Virden's real-time participation.

Beyond that, however, Virden and Opat each made the decision to use the unlawfully obtained communications in applying for search warrants, interviewing other individuals, and providing the information to the federal government for prosecution in this District.   Statement of Facts, at ¶ 36.   As the lead agent, Virden would have disclosed the wiretap information to the federal government for prosecution of federal crimes.

Because those crimes were not specified in the initial wiretap orders, and there is no record of any subsequent authorization for such disclosure in testimony pursuant to K.S.A. 22-2515(b)-(f) and 18 U.S.C. § 2517, Virden is also liable for unlawful disclosure.   *See Exhibit A*, Banks Declaration, at ¶¶ 7, 8; *Exhibit B*, Thompson Declaration, at ¶¶ 7,8.   This did not just affect Mr. Banks and Mr. Thompson.   These disclosures and interceptions harmed the Plaintiffs and others in ways beyond the criminal prosecution.   *See Exhibit A*, Banks Declaration, at ¶¶ 10-11; *Exhibit B*, Thompson Declaration, at ¶¶ 10-11.

## CONCLUSION

Defendant Virden participated in the unlawful interception, use, and disclosure of extraterritorial communications in violation of state and federal wiretap law.   He did so despite being a long-time Kansas law enforcement officer charged with knowing the law he is enforcing, despite knowing that wiretaps were often multi-jurisdictional and could not be done haphazardly, and despite the existence of a wiretap order that (among other defects) explicitly authorized something that was explicitly prohibited under Kansas law.

His violations were not the product of a "subtle, technical" defect, but rather the product of his decision to not look.   There was clear statutory authority and clear and easy-to-find case law that any objective, reasonably well-trained officer should have known, and yet Virden did not look.   His failure to do so, and his subsequent violations of Kansas and federal wiretap law, now subject him to liability.   There is evidence, combined with reasonable inferences in favor of the Plaintiffs, from which a rational trier of fact could (and will) find for Albert Banks and Anthony Thompson. Virden's motion should be denied.

Respectfully submitted,

s/Michael Shultz
Michael Shultz, #23133
Shultz Law Office, P.A.
445 N. Waco
Wichita, Kansas 67202
(316) 269-2284 Telephone
(316) 269-2011 Fax
michael@shultzlaw.net
*Attorney for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.

s/Michael Shultz
Michael Shultz, #23133