IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALBERT DEWAYNE BANKS, | ) | |
|            Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3093-HLT-GEB |
| | ) | |
| STEVEN L. OPAT, et. al., | ) | |
|            Defendants. | ) | |
| | ) | |
| | ) | |
| ANTHONY THOMPSON, | ) | |
|            Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-3117-HLT-GEB |
| | ) | |
| GLEN VIRDEN, et. al., | ) | |
|            Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT WOLF'S MOTION FOR SUMMARY JUDGMENT (Doc. 179/180)**

**INTRODUCTION**

Defendant Wolf participated in the unlawful interception, use, and disclosure of extraterritorial communications.   He also procured others to do so in his role as Geary County Sheriff.   Because these violations were based on clearly-established statutory law, a rational trier of fact could find that he is liable to Anthony Thompson for the violations.   His motion should be denied.

**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**

1.     ADMITTED.

2.     ADMITTED.

3.     ADMITTED, but incomplete.   Judge Platt issued orders for the wire

communications for various cell phones.   There is no such thing as a blanket "wiretap order[] for cell phones."

    4.     ADMITTED.

    5.     ADMITTED.

    6.     ADMITTED.

    7.     ADMITTED.

    8.     ADMITTED.

    9.     ADMITTED.

    10.    DENIED.   At a press conference on May 9, 2013, the day most of the arrests happened, Wolf described his role in this investigation as "this has really been a big undertaking, we've worked well together…we've worked very hard together…a lot of a lot of late hours and long hours were put into doing this, and this has been a lot of fun today."   *See* "VIDEO—'Operation Adabag' Bags 90 Suspects So Far," May 9, 2013, at [https://1350kman.com/operation-adabag-bags-90-suspects-so-far/](https://1350kman.com/operation-adabag-bags-90-suspects-so-far/), *accessed August 21, 2021* (relevant portion of the embedded video starts at approximately 4:23).

    11.    DENIED.   At the very least, the interceptions of text messages were not "pursuant to" the terms of Judge Platt's orders.

    12.    ADMITTED.   But the Kansas statute explains that "any person who intercepts, discloses or uses, or *procures any other person* to intercept, disclose or use" unlawfully obtained information is liable.   K.S.A. 22-2518 (emphasis added).   The federal statute says that "any person who…procures any other person to intercept or

endeavor to intercept…[or]…uses, endeavors to use, or procures any other person to use or endeavor to use…" unlawfully intercepted information is liable.   18 U.S.C. § 2511(1)(a)-(b) (ellipses and brackets added).   As Sheriff, Wolf was responsible for the conduct of his undersheriffs and deputies.   *See K.S.A. 19-805*; *Seifert v. Unified Govt. of Wyandotte Cty.*, 779 F.3d 1141, 1151 (10th Cir. 2015).   Geary County Sheriff's deputies participated in the investigation, including monitoring and intercepting calls and texts.   *See* Declaration of Glen Virden (Doc. 180-1), ¶ 17.

13.   ADMITTED.   But see response to ¶ 12.

14.   ADMITTED.   But see response to ¶ 12.

15.   ADMITTED.   But see response to ¶ 12.

16.   ADMITTED.

17.   ADMITTED, in part.   The motion argued other items as well.

18.   ADMITTED.

19.   ADMITTED.

20.   ADMITTED.

21.   ADMITTED as to part about Wolf.   Presumptions as to Judge Platt are denied.

22.   ADMITTED.

23.   ADMITTED in part.   Mr. Thompson claimed damages but noted that any "calculations are uncertain at this time" and "reserve[d] the right to amend these estimates as additional information becomes known…" Wolf Motion, Exhibit D, Plaintiffs' Rule 26(a)(1) Disclosures, at 6.   Damages and claims are more precisely

refined at the pretrial stage and would depend in large part on the evidence presented and admitted at trial.

24.    ADMITTED.

**PLAINTIFFS' STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS**

*\*\*Plaintiff notes for the Court that, in order to avoid confusion, he is just continuing with the numbering started by Wolf.*

25.    The interceptions of both calls and texts, as well as information derived from those calls and texts, were disclosed to federal law enforcement and/or federal prosecutors by the defendants or people who were procured to do so by defendants. *See Exhibit A*, Thompson Declaration, at ¶ 8.

26.    In addition to calls and/or texts intercepted for the purpose of the law enforcement investigation and prosecution, the defendants also intercepted private communications unrelated to any criminal investigation, including but not limited to: private text communications among family members, pictures of children, intimate conversations between romantic partners, intimate pictures to and from romantic partners, and other information.   *See Exhibit A*, Thompson Declaration, at ¶ 9.

27.    Private information was used and disclosed by defendants, and others, to disrupt relationships, to embarrass subjects of those conversations, to create family strife among my family and friends, and to create and sow distrust and antipathy towards myself.   Some of these uses and disclosures were for law enforcement purposes, but other such uses and disclosures served no valid law enforcement purpose.   *See Exhibit A*, Thompson Declaration, at ¶ 10.

28.    These interceptions, disclosures, and uses of the illegally wiretapped

information harmed Mr. Thompson in ways independent of any criminal investigation, including but not limited to embarrassment, invasion of privacy, and other harms to relationships and reputation.   *See Exhibit A*, Thompson Declaration, at ¶ 11.   Further, none of the unlawfully intercepted communications were used in his criminal trial.

29.   Mr. Thompson diligently pursued service of process in this matter to the best of his ability, given the limited access to court service of process that he was allowed.   He acted in accord with the permissions and orders of the judge in getting service of process as quickly and as diligently as he could.   *See Exhibit A*, Thompson Declaration, at ¶ 12.

## ARGUMENT

### *Legal Standards*

Mr. Thompson is in general agreement with the standards for summary judgment as outlined by Wolf.   However, the well-worn phrase—that summary judgment is "not a disfavored procedural shortcut" but an important procedure "designed to secure the just, speedy and inexpensive determination of every action"— has outlived its usefulness and courts should be mindful of that.   While a thorough analysis of the death of the civil jury trial is well beyond the scope of this motion, the effectiveness of summary judgment as a case management tool deserves to be analyzed skeptically.

Consider National Judicial Caseload Profiles from September 1997 and September 2020.   From 1992 to 1997, the median time "from filing to trial" in federal

civil cases rose from 15 to 19 months. *See Federal Court Management Statistics, National Judicial Caseload Profile*, September 1997, at 1 (*available at* https://www.uscourts.gov/sites/default/files/statistics_import_dir/District_FCMS_Sep_1997.pdf), *accessed August 23, 2021.*   The number of trials completed dropped from 32 to 26 per judgeship. *Id.*   In September 2020, the numbers showed that from 2015 to 2020, the median time "from filing to trial" in federal civil cases rose from 26.8 to 27.1 months. *See Federal Court Management Statistics, National Judicial Caseload Profile*, September 2020, at 1 (*available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf), *accessed August 23, 2021.*   The number of trials completed dropped from 17 to 12 per judgeship. *Id.*

Again, the implications and causes of these numbers are beyond the scope of this case, but it is at least clear that summary judgment's increased use since *Celotex* has not stemmed a rising tide of litigation, nor has it resulted in "speedier" or more "just" litigation.   It has probably harmed the right to trial by jury.   Thus, to the extent that the "policy" justifications are used in defense of summary judgment, those justifications should be viewed skeptically.

As to what the law is, Mr. Thompson does not dispute Wolf's summary, but believes that a rational trier of fact will find that Wolf is liable.

*Wolf Violated Wiretap Law*

"No area of the law is more sensitive than that of electronic surveillance, since such activity intrudes into the very heart of personal privacy." *State v. Adams*, 2 Kan. App. 2d 135, 138, 576 P.2d 242 (1978) (quoting *In re Oleander*, 213 Kan. 282

6

(1973)).   Given the intrusiveness of electronic surveillance, the law strictly regulates such surveillance activities.   Both state and federal legislatures have created legal regimes for electronic surveillance that possess "strict procedural requirements and degree of judicial oversight," *id.*, and a "comprehensive statutory scheme providing explicit requirements, procedures, and protections." *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007).   Consequently, courts must "strictly construe" judicial wiretap authorizations because "[f]ew threats to liberty exist which are greater that that posed by the use of eavesdropping devises." *United States v. McNulty*, 729 F.2d 1243, 1265 (10th Cir. 1983).

The defendants in this case "relied on the authority granted by Kansas state law." *United States v. Banks*, United States District Court of Kansas, Case No. 13-cr-40060-DDC (ECF Doc. 517) (Nov. 19, 2014), at 2.   Federal law "requires… deference to [state] law on the question of the validity of the wiretap order obtained in state court under state law." *Id.* (quoting *United States v. McNulty*, 729 F.2d 1243, 1266) (10th Cir. 1983)).   Further, the federal statute incorporates restrictions of state law by specifying that, while a state court judge "of competent jurisdiction" may grant an order of interception, such an order must be "in conformity with section 2518 of this chapter and with the applicable State statute." *18 U.S.C. § 2516(2).*

Pursuant to Kansas law, the wiretap statute *explicitly* limits a judge's wiretap authority to the judge's "territorial jurisdiction." *Id.* (citing K.S.A. 22-2516(3)). Thus, a Kansas judge issuing a wiretap order pursuant to state law can only authorize a wiretap in his or her judicial district.   *Id.* (citing *State v. Adams*, 2 Kan.

App. 2d at 138).   Here, defendants unlawfully intercepted, disclosed, and/or used approximately 60,000 communications.   *United States v. Banks*, United States District Court of Kansas, Case No. 13-cr-40060-DDC (ECF Doc. 580) (Feb. 23, 2015), at 9 ("The government concedes that the Court's order suppressing calls intercepted outside the Eighth Judicial District rendered all but around 7,000 of the intercepted calls inadmissible.").

Violations of the law carry consequences.   In criminal proceedings, "[a]ny aggrieved person" may move to "suppress" any "wire or oral communication" that was unlawfully intercepted, based on a facially insufficient order, or not intercepted in conformity with the order.   *K.S.A. 22-2516(9)(a)*.   Further, any person whose "wire, oral, or electronic communication is intercepted, disclosed or used in violation of this act shall have a civil cause of action against *any person who intercepts, discloses or uses, or procures any other person to intercept*, disclose or use" such communications. *K.S.A. 22-2518 (emphasis added); see also 18 U.S.C. § 2520(a).*

Under federal law, a violation occurs when "any person…intentionally intercepts [or uses or discloses], endeavors to intercept [or use or disclose], *or procures any other person to intercept [or use or disclose] or endeavor to intercept [or use or disclose], any wire, oral, or electronic communication*" when that person "know[s] or ha[s] reason to know that the information was obtained…in violation of" the law.   *18 U.S.C. § 2511(1)(a)-(e) (brackets and emphasis added).*

Here, Wolf participated in the investigation and in the wiretap procedures. On the day of the arrests, he described the "long nights" he had been working and the

8

coordination of the team as a whole.   The idea that he was not involved in the use or disclosure of wiretap information is not reasonable.   Further, as the elected Geary County Sheriff, he was responsible for the conduct of his undersheriffs and deputies. *See K.S.A. 19-805*; *Seifert v. Unified Govt. of Wyandotte Cty.*, 779 F.3d 1141, 1151 (10th Cir. 2015).   Geary County Sheriff's deputies participated in the investigation, including monitoring and intercepting calls and texts.   *See* Declaration of Glen Virden (Doc. 180-1), ¶ 17.   It is reasonable to infer that that he assigned the manpower for those interceptions and approved his deputies' participation in the interception and subsequent use and disclosure.   As noted above, both the Kansas and federal statutes impose liability on individuals who "procure" violations as well.

## *GOOD FAITH*

Both wiretap statutes, however, have a "good faith" defense in civil cases.   *See K.S.A. 22-2518(2); 18 U.S.C. § 2520(d).*   According to K.S.A. 22-2518(2), "[a] good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."   *See also* 18 U.S.C. §2520(d) ("A good faith reliance on…a court warrant or order…is a complete defense against any civil or criminal action brought under this chapter or any other law.").

Nevertheless, good faith is not an easily achieved immunity.   A "defendant may invoke the defense of good faith reliance on a court order *only* if he can demonstrate (1) that he had a subjective good faith belief that he acted legally

pursuant to a court order; and (2) that this belief was reasonable." *Dahl v. Charles F. Dahl, MD, PC*, 744 F.3d 623, 631 (10th Cir. 2014) (emphasis added).   And while often a defendant may be able to assert a subjective belief, that alone is not enough. The good faith exception "will not apply when an officer 'knows or *should have known* that a search warrant was invalid.'"   *United States v. Barajas*, 710 F.3d 1102, 1111 (10th Cir. 2013) (internal citations omitted, emphasis added).

Officers in Kansas are "presumed to know the law of the jurisdiction that they are enforcing.   Therefore, a failure to understand the law by the very person charged with enforcing it is not objectively reasonable..."   *State v. Oram*, 266 P.3d 1227, 1237 (Kan. Ct. App. 2011).   In this, officers are not treated particularly differently than regular citizens.   S*ee, e.g.*, *State v. Cook*, 187 P.3d 1283, 1289-90 (Kan. 2008) (holding that even regular citizens are "presumed to know that the legislature has made certain conduct illegal" and reiterating that "ignorance of the law is no excuse for violating law").

Further, a good faith exception is not generally applied where the plain language of a statute or case law controls.   *See, e.g.*, *State v. Pettay*, 326 P.3d 1039, 1041 (Kan. 2014) ("The State's arguments do not justify application of a good faith exception in light of the plain language of K.S.A. 22-2501, which had been held to statutorily control the permissible circumstances, purposes, and scope for a search incident to arrest long before Pettay's vehicle search.").   In fact, "objective reasonableness sometimes turns on the clarity of existing law."   *United States v. Workman*, 863 F.3d 1313, 1321 (10th Cir. 2017).

10

This comports with other Circuit precedent as well.   In suppressing evidence seized as the result of a traffic stop based on an officer's misunderstanding of the left-turn law in New Mexico, the Court noted that "failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable."   *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013) (emphasis in original).   This rule does not only apply to "plain and unambiguous laws."   *Id.* at 1241.   *But see also Heggy*, 944 F.2d at 1539 (finding Title III wiretap act to be "clear and unambiguous"); *Thompson v. Dulaney*, 970 F.2d 744, 748 (10th Cir. 1992) (language of § 2511 is "clear and broad").

Here, the defendants, including Wolf, should have known that the orders signed by Judge Platt were invalid on their face.   First, the Kansas wiretap statute "explicitly" limits a judge's wiretapping authority to his or her own "territorial jurisdiction."   *See, United States v. Banks*, United States District Court of Kansas, Case No. 13-cr-40060-DDC (ECF Doc. 517) (Nov. 19, 2014), at 2.   The face of the order, however, purports to authorize interception throughout the "United States." Even accepting Judge Crabtree's dicta that this was a "subtle technical" issue (which Plaintiffs do not), a state court district judge purporting to authorize interception to the bounds of the country should have at least prompted further investigation.

Second, the law was clear.   Even beyond the "explicit" statutory language, there was clear Kansas case law that had, at the time of the order, been precedent for 35 years.   *See State v. Adams*, 2 Kan. App. 2d 135 (1978).   That case had been discussed positively in Kansas Supreme Court case law 19 years before the time of

the orders in this case. *See State v. Gibson*, 255 Kan. 474, 478-79 (1994) (distinguishing *State v. Adams*).   And it would not have taken any deep research or any technical know-how for any of the parties (officers, Opat, Platt) to have figured out there was an issue before the order was granted.   The Kansas Statutes Annotated books literally list cases interpreting each statute.   At K.S.A. 22-2516, which is the statute that governs the procedure for orders, the second case listed was *Adams*, with this description: "Where telephone intercepting devices and monitoring equipment were within same judicial district, district judge in another district without power to authorize interception."

Other cases have so held in related circumstances.   In *Oram*, the Kansas Court of Appeals found, in the context of statutory authority for non-warranted search incident to arrest, that "deputies in this case should have been aware of Kansas' caselaw indicating that a car is no longer within the immediate presence of an arrestee when the arrestee has been handcuffed and secured in the back of a patrol car," and "that the search violated the statutory limits of K.S.A. 22-2501."   *Oram*, 266 P.3d at 1238.

Caselaw can be imputed to a reasonably well-trained officer.   *See also, e.g.*, *State v. Powell*, 325 P.3d 1162, 1173 (Kan. 2014) (refusing to apply good faith to deficient warrant based on uncorroborated tips to "signal to police officers that they cannot ignore *well-settled* law regarding anonymous tips") (emphasis added), *compare United States v. Rowland*, 145 F.3d 1194, 1207 (10th Cir. 1998) (holding that it was not unreasonable for officer to rely on magistrate "[g]iven the unsettled state of the

law").

Here, there was not a "subtle technical" defect.   There was "explicit" statutory language limiting an authorizing judge's jurisdiction.   There was well-settled, unquestioned, easy-to-find, 35-year-old precedent making clear that jurisdiction was limited to a judge's judicial district.   There was well-settled, unquestioned, easy-to-find, 19-year-old precedent positively reinforcing the 35-year-old precedent.   And there was an order, on its face, that delimited the jurisdiction far beyond the bounds allowed by Kansas law.   While good faith is intended to protect officers from "magistrate errors," *United States v. Potts*, 559 F. Supp. 2d 1162, 1173-74 (D. Kan. 2008), this case is so clear that a "reasonably well-trained officer" should have known of the order's deficiency despite Judge Platt's authorization.   *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005).   Because Wolf did not, reliance upon the warrant was not objectively reasonable and thus not protected by good faith.   *Id.* at 1231.

## *Qualified Immunity*

Wolf next argues that, even if he is not entitled to absolute immunity, he should be entitled to qualified immunity.   Qualified immunity protects officials from liability unless the official violated a statutory right that was clearly established at the time of the violation.   A "clearly established" right is one that would make clear to a reasonable official that his conduct was unlawful.   *See* Wolf Memorandum (Doc. 180), at 8.   Mr. Thompson does not really dispute the statement of the law, but Wolf is not shielded from liability in this case.

Here, it is reasonable to infer that Wolf made virtually no effort to determine what the wiretap law was at the time he assigned deputies to intercept and monitor ongoing wire taps.   At that time, under state law, the statute specifically limited the interceptions to the "territorial jurisdiction" of the district court judge.   When Geary County Sheriff's officers monitored and intercepted calls, there was 35-year-old unchallenged precedent prohibiting interception outside of a judge's judicial district. That precedent was simple to find.   It would have taken almost no effort.   Still Wolf procured monitoring deputies based on orders authorizing interception to the bounds of the United States.

Wolf also argues that the "law enforcement exceptions" in the statute protect him from liability for use or disclosure.   This argument also fails.   Although Wolf argues that he did not personally intercept any communications, he certainly "procured" others to do so.   He attended the March 6 meeting, affixing his signature to the orders along with dozens of other officers.   Wolf's actions were critical to procuring others to do the actual wiretapping.

Finally, the law enforcement exceptions authorize use or disclosure in "the proper performance of his official duties."   *K.S.A. 22-2515(c)*.   That excludes situations where the official knows, or has reason to know, the interceptions were unlawful.   *See e,g.*, *K.S.A. 22-2515(b)-(d)* (allowing disclosure or use when contents were obtained "by any means authorized" by the statute); *18 U.S.C. § 2511(b)-(d)* (prohibiting use or disclosure when someone "know[s] or ha[s] reason to know" the interception was in violation of the statute); *see also United States v. Vest*, 813 F.2d

477, 480-81 (1st Cir. 1987) (finding that because privacy was an "overriding" concern of the statute and that an invasion of privacy is "compounded by disclosure," even an "innocent" recipient who discloses unlawful intercepts may be liable); *Berry v. Funk*, 146 F.3d 1003, 1012 (D.C. Cir. 1998) (rejecting argument that there is "no limitation" on law enforcement use or disclosure so long as the officer "was not involved in or did not procure the interception"); *Chandler v. United States Army*, 125 F.3d 1296, 1302 (9th Cir. 1997) (rejecting "clean hands" defense of use or disclosure, but acknowledging circuit split on the issue).

In sum, use or disclosure of unlawfully intercepted wiretap information is never "appropriate to the proper performance" of an official's duties, where that official or knew or should have known that the interception was unlawful.  Here, Wolf should have known at least 60,000 interceptions were unlawfully outside of the jurisdictional limits of the statute and should not have procured deputies to intercept, use or disclose any of them.

### *Heck v. Humphrey*

Wolf's next argument is that *Heck v. Humphrey*, 512 U.S. 477 (1994) precludes Mr. Thompson's claims because it would call into question the validity of his conviction.  Wolf Memorandum (Doc. 180), at 10-11.  The entire premise of his argument is flawed, however, as it all rests on the assumption that because Mr. Thompson asks for damages, it must be "presumably because of his incarceration." *Id.* at 10.

But Mr. Thompson has not challenged, and is not challenging, his conviction

via this lawsuit, and to the extent that any damage claim would call into question his conviction, he is not asserting it.   Additionally, *none of the unlawful calls were used in the trial to secure his conviction*.   They were suppressed.   Which means these calls could not form the basis of a challenge to his conviction, even if Mr. Thompson wanted to.

However, there are other reasons to reject this argument.   First, as noted above, Mr. Thompson's damages claims in his initial disclosures are merely estimates and may be amended or modified as necessary per discovery and/or the evidence at trial.   *See Response to SOF,* ¶ 23.   It is premature to assert that they lock him into a position at this stage.   Second, Mr. Thompson suffered damages wholly independent of the criminal case.   *See Additional SOF*, ¶ 26-28.   Those damages can form the basis for his monetary estimates, and no presumption need be made.   *Heck* does not apply to bar Mr. Thompson's lawsuit.

## *Statute of Limitations*

Assuming arguendo Wolf's dates for the statute of limitation calculation, Mr. Thompson is well within the statute.   Wolf argues that because Thompson filed suit on May 14, 2015, he may only claim damages back to May 14, 2013.   Disregarding the fact that Wolf's analysis is incorrect, the more important issue is that the statute of limitations only begins to run from "the date upon which the claimant first has a reasonable opportunity to discover the violation."   *18 U.S.C. § 2520(c)*.   Here, Mr. Thompson did not even know his phone was tapped until June 2013.   *See generally Amended Complaint*.   Which means that, even using the *very first day* he knew his

phone had been tapped *at all*, Mr. Thompson had until June 2015 to file his suit.   He filed suit in time.

## CONCLUSION

Wolf's role in the interception, use, and disclosure of illegally obtained communications may not be as direct as some others.   But Wolf claimed a significant role in the investigation, which culminated in arrest right after the execution of wiretaps.   It is reasonable to assume then, that as the only elected law enforcement officer in the county of the investigation, he would be involved the wiretap process. But even if he was not, he certainly procured others to participate in the interception of wire information.   The law holds him liable, and his motion should be denied.

Respectfully submitted,

s/Michael Shultz
Michael Shultz, #23133
Shultz Law Office, P.A.
445 N. Waco
Wichita, Kansas 67202
(316) 269-2284 Telephone
(316) 269-2011 Fax
michael@shultzlaw.net
*Attorney for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.

s/Michael Shultz
Michael Shultz, #23133