## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Albert DeWayne Banks, | |
| Plaintiff, | |
| v. | Case No. 5:15-CV-3093 |
| Steven L. Opat, *et al.,* | |
| Defendants. | |
| Anthony Thompson, | |
| Plaintiff, | |
| v. | Case No. 5:15-CV-03117 |
| David L. Platt, *et al.,* | |
| Defendants. | |

### REPLY IN SUPPORT OF DEFENDANT
### GLEN VIRDEN'S MOTION FOR SUMMARY JUDGMENT

### I. Summary

This replies to the plaintiffs' opposition, ECF No. 198, to Defendant Glen

Virden's ("Virden") motions for summary judgment, ECF No(s). 173 & 174.

1.      The material facts are not controverted. *See* Section II, *infra*.

2.      Virden abandons his statute of limitation defenses against plaintiffs'

claims under the **federal** wiretap statutes. These claims were timely commenced,

under Fed. R. Civ. P. 3, because the district court implicitly granted extensions to

1

make service of process under Fed. R. Civ. P. 4(m), ECF 198, at 7, ¶ 58, 9, ¶ 70, and the court's screening of the prisoners' suits explains the delay.

    3.    However, Virden remains entitled to summary judgment under the uncontroverted facts because:

- The Kansas wiretap claims are time barred.

- There was no violation of the federal wiretap law as a matter of law.

- In any event, Virden's good faith reliance on court orders is a complete defense to both the state and federal wiretap claims.

## II. Uncontroverted Facts

    Pursuant to D. Kan. Rule 56.1(c), Virden responds to the plaintiffs' attempt to controvert facts and to the additional statements plaintiffs provided in paragraphs 48-80 of ECF 198, at 5-11.

    The Court should conclude that there is no genuine issue of material fact precluding entry of summary judgments for Virden. The statements in paragraphs 1-9, 13, 16-30, 33-40 & 43-47 of Defendants' statements of uncontroverted facts ("UF"), in ECF 174, are not controverted by the plaintiffs. Plaintiffs "deny" UF ¶¶ 10, 11, 12, 14, 15, 31, 32, 41 & 42; but the denials do not present evidence showing the presence of genuine issues of material fact as explained in the following.

    UF ¶ 10.    During the course of the Narcotics-Trafficking investigation, communications from and to seven cellular phones were intercepted for different

lengths of time pursuant to orders authorizing the interceptions issued by the Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt"). A list of the affidavits provided in support of applications for these orders and the corresponding orders is attached as Exhibit 1 to Exhibit A and Exhibit 1 to Exhibit B. *See* Exhibit A, ¶ 8; Exhibit B, ¶ 8. Redacted copies of the affidavits and of the orders [with added names and signatures on some of the orders as explained below] are also attached as Exhibits 2-17 to Exhibit A and Exhibit B. *See id.*

*Pl. Response*

DENIED. It is admitted that some communications were intercepted. But at least some communications were intercepted inconsistently with the terms of the orders, or pursuant to orders which were unlawful under Kansas law.

*Reply*

Plaintiffs have not controverted the statements in UF ¶ 10. They do not point to any evidence in the record supporting their denial. UF ¶ 10 stands uncontroverted.

UF ¶ 11.      In or around March and April 2013, Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt") entered orders authorizing the interception of Banks' (and his suspected co-conspirators') oral, wire and/or electronic communications regarding 785-375-6704, with service provided by Sprint/Nextel Wireless. *See* Exhibit A, ¶ 9; Exhibit B, ¶ 9. A copy

of the initial order, dated March 5, 2013, is attached as Exhibit 3 to Exhibits A and B. *See* Exhibit A, ¶ 9.

*Pl. Response*

DENIED. The March 5 orders did not authorize "oral, wire and/or electronic communications."

*Reply*

The question about the orders' application to texts was resolved against plaintiffs. *See Thompson v. Platt*, 815 F. App'x 227, 234-35 (10th Cir. May 12, 2020) (unpublished); *Banks v. Opat*, 814 F. App'x 325, 332-33 (10th Cir. 2020) (unpublished). Accordingly, UF ¶ 11 stands uncontroverted.

UF ¶ 12.      In or around March and April 2013, Eighth Judicial District, Kansas, District Court Judge David Platt ("Judge Platt") entered orders authorizing the interception of Thompson's (and his suspected co-conspirators') oral, wire and/or electronic communications regarding 785-226-1783, with service provided by T-Mobile USA Wireless. A copy of the initial order, dated March 5, 2013, is attached as Exhibit 5 to Exhibit A and B. *See* Exhibit B, ¶ 9.

*Pl. Response*

DENIED. The March 5 orders did not authorize "oral, wire and/or electronic communications."

*Reply*

4

The question about the orders' application to texts was resolved against plaintiffs. *See Thompson v. Platt*, 815 F. App'x 227, 234-35 (10th Cir. May 12, 2020) (unpublished); *Banks v. Opat*, 814 F. App'x 325, 332-33 (10th Cir. 2020) (unpublished). Accordingly, UF ¶ 12 stands uncontroverted.

UF ¶ 14.     Before March 5, 2013, the Narcotics-Trafficking investigation focused on trafficking of crack cocaine in Geary County, Kansas. Its investigators had discovered evidence of crack cocaine sales by Banks and Thompson in Junction City, Geary County, Kansas, which were arranged through communications on phones owned or used by Banks and Thompson. Exhibit A, ¶ 11; Exhibit B, ¶ 11.

*Pl. Response*

DENIED. To the extent that this response is intended to limit the jurisdictional anticipation of the wiretap, it is denied. Riley County officers were involved from the beginning. See Virden SOF, at ¶ 8.

*Reply*

Defendants' statement of uncontroverted facts ("UF") ¶ 8 does not conflict with the statements in UF ¶ 14.

UF ¶ 15.     At that time, Virden anticipated that any criminal charges against the suspects, including Banks and Thompson, in the Narcotics-Trafficking investigation would be filed and prosecuted in the Eighth Judicial District, District Court in Geary County. Exhibit A, ¶ 12; Exhibit B, ¶ 12.

*Pl. Response*

DENIED. Virden testified that he anticipated it would be "multijurisdictional" from past wiretaps he had worked on. See Exhibit C, Glen Virden Testimony Excerpt, United States v. Banks, 13-cr-40060 (Doc. 1012) (D. Kan. Hrg. Aug. 21, 2014), at 164.

*Reply*

Virden's testimony in the motion to suppress hearing addresses the "multi-jurisdictional" nature of the investigation (involving different law enforcement agencies) referenced in UF ¶ 8. It does not conflict with the statements in UF ¶ 15.

UF ¶ 31.      Virden did not understand or believe that either the "wiretap" orders referenced above or parts of those orders were invalid from the face of the orders. Nothing in the language of the orders confined the authorized interception of oral, wire and/or electronic communications to those initiated or intercepted within the Eighth Judicial District. Exhibit A, ¶ 27; Exhibit B, ¶ 27.

*Pl. Response*

DENIED as to implication. Virden had an obligation to know the law he was enforcing. The language of the orders included only interception for wire communications, but Virden knew and intercepted texts anyway. While those claims may not exist anymore, Virden's actions in the face of language in the orders shows that he did not pay attention to the orders at all. It is admitted that

the language of the orders did not restrict interception to the Eighth Judicial District.

*Reply*

The response is argument and does not offer facts which controvert the statements in UF ¶ 31.

UF ¶ 32.     Although not making a conscious evaluation at the time, Virden believed that Judge Platt was the proper judge, who had the authority to issue the March and April orders, because:

a.     Prosecutor Opat made applications to Judge Platt and Judge Platt entered the orders, both knowing how the subject communications would be intercepted;

b.     The underlying criminal activity at issue in the Narcotics-Trafficking investigation was in Geary County;

c.     The cellular phones, which were the subject of the interception orders, were used in Geary County.

d.     Banks and Thompson came into Geary County and engaged in the underlying criminal activity, and he expected this would continue.

Exhibit A, ¶ 28; Exhibit B, ¶ 28.

*Pl. Response*

DENIED, except as to the fact that Virden did not make a "conscious evaluation" of the judge's authority. The rest of the statement is denied as immaterial.

*Reply*

The response is argument and does not offer facts which controvert the statements in UF ¶ 32.

UF ¶ 41.     Plaintiff Banks claims that he first learned his phone(s) had been "unconstitutionally" wiretapped on June 3, 2013. D.Kan. Case No. 5:15-CV-3093, ECF Doc. 32, at 5-6.

*Pl. Response*

DENIED. Mr. Banks learned his phone had been wiretapped on June 3, 2013, but he did not learn of the "unconstitutionality" until much later. See Banks Amended Complaint, 15-3093-HLT-GEB (ECF Doc. 74-1), at ¶ 19.

*Reply*

The allegations in UF ¶ 41 are no longer material because Virden is not asserting that the statute of limitations bars the plaintiffs' federal claims and the statute of limitation applicable to the state wiretap claims does not have a "discovery" provision. However, Plaintiff Banks cannot controvert his admissions against interest, which is referenced in UF ¶ 41, with his unsworn subsequent pleading.

UF ¶ 42.     Plaintiff Thompson claims that he first learned his phone(s)

had been "unconstitutionally" wiretapped on June 4, 2013. D.Kan. Case No. 5:15-CV-03117, ECF Doc. 21, at 6.

*Pl. Response*

DENIED. Mr. Thompson learned his phone had been wiretapped on June 3, 2013, but he did not learn of the "unconstitutionality" until much later. See Thompson Amended Complaint, 15-3117-HLT-GEB (ECF Doc. 54), at ¶ 18.

*Reply*

The allegations in UF ¶ 41 are no longer material because Virden is not asserting that the statute of limitations bars the plaintiffs' federal claims and the statute of limitation applicable to the state wiretap claims does not have a "discovery" provision. However, Plaintiff Thompson cannot controvert his admissions against interest, which is referenced in UF ¶ 42, with his unsworn subsequent pleading.

**Plaintiffs' additional facts**

*Reply*

Virden does not controvert the statements in paragraphs 48-80.[1] However, the argument part of paragraph 79 (the last two sentences) is not supported by any evidence. *See* UF ¶¶ 16, 17, 21-23, 29 (reporting Virden's communications with Judge Platt).

---

[1] While the record plaintiffs cite sometimes does not support statements in these paragraphs, the statements are undisputed for Virden's motions.

### III. Argument and Authorities

**1.**     ***The Kansas wiretap claims are time barred.***

Plaintiffs do not dispute that the applicable statute of limitation for a claim for violation of the Kansas wiretap statutes is three years from the date of the interception or disclosure of the complaining plaintiffs' wire, oral, electronic communication. *See* K.S.A. § 60-512(2). They also do not contest that § 60-512(2) has no discovery rule for non-fraud based statutory claims. Instead, they present three arguments hoping to avoid the statute of limitation bar to their state law claims. None of the arguments has merit.

*First*, the Kansas tolling statute for disability expressly exempts its application "if a person imprisoned for any term has access to the court for purposes of bringing an action." K.S.A. § 60-515(a). *See Vann v. Fewell*, No. 20-3200, 2021 WL 3510202, at *2 (D. Kan. Aug. 10, 2021); *Parker v. Bruce*, 109 F. App'x 317, 319 (10th Cir. 2004) (unpublished). *See also Bulmer v. Bowling*, 27 Kan. App. 2d 376, 378, 4 P.3d 637, 638 (2000) ("The legislature clearly intended for prisoners to be bound by applicable statutes of limitation so long as they have access to the courts"). The plaintiffs did not timely serve their complaints. But their "access" to the courts is shown by the fact they were able to file the complaints and by their subsequent filings in this suit.

*Second*, state law determines when an action is commenced for the statute of limitation's purposes, in particular K.S.A. § 60-203(a), concerning the

plaintiffs' state law claims. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980); *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

The Supreme Court long ago established "rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court rather than in the state court." *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 532 (1949) (*citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "[W]e look to local law to find the cause of action on which suit is brought. Since that cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court." *Ragan* at 533. In *Walker v. Armco Steel Corp.,* 446 U.S. 740, 752-53 (1980), the Court explained that its holdings in *Erie* and *Ragan* also dictate that "state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction." *West v. Conrail*, 481 U.S. 35, 39, n.4 (1987), reiterated, "[w]hen the underlying cause of action is based on state law, and federal jurisdiction is based on diversity of citizenship, state law not only provides the appropriate period of limitations but also determines whether service must be effected within that period."

Plaintiffs argue that these cases, i.e., *Ragan*, *Walker*, and *West*, stand for the proposition that state law service requirements apply to state law claims only

when those claims are in federal court based on diversity jurisdiction. They maintain that because they brought both federal and state law claims based on both federal question jurisdiction and supplemental jurisdiction, state law requirements for service of process and commencement of actions should not apply to the state wiretap claims. In other words, they argue, although they failed to effect service within the time and in the manner required by Kansas law, the Court should apply Fed.R.Civ.P. 3 & 4 when the state claims are before the Court through 28 U.S.C. § 1367.

However, it is no consequence that the Court may exercise its supplemental jurisdiction over plaintiffs' claims in this case. Applying different rules because of variance in the source of the Court's subject matter jurisdiction to review the state wiretap claims is antithetical to the reasoning in *Ragan*, *Walker*, and *West*.

Every case we located, which has addressed efforts of litigants to distinguish the treatment of state law claims based on the federal court's jurisdiction, has rejected the very argument advanced by the plaintiffs. The cases reach the same conclusion: the Supreme Court's decision in *Walker v. Armco* applies with equal force to state law claims in federal court regardless of whether the federal court is exercising its diversity or its supplemental jurisdiction. "[T]he rationale of *Walker* does not change 'solely because of the fortuity' that [the plaintiff] pleaded a federal claim along with state claims." *Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir. 1995) (*quoting Appletree Square I, Ltd. v. W.R.*

*Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1984)); *Sentry Corp. v. Harris,* 802 F.2d 229, 246 (7th Cir. 1986) (commencement of state law claims in federal court pursuant to supplemental jurisdiction subject to state statute of limitations and service requirements); and *French v. Daviess County Kentucky*, No. 4:07-CV-105-M, 2009 WL 1766928, at *5 (W.D. Ky. June 23, 2009) (unpublished) ("[r]egardless of the basis of the Court's jurisdiction over a party's state law claims, the limitation of such claims is controlled by state law" and collecting cases).

Many other courts, including the Tenth Circuit, have rejected plaintiffs' argument *sub silentio*. *See Conner*, 543 F.2d at 1225 (applying Kansas service requirements to state law claims brought pursuant to supplemental jurisdiction); *Smith v. Douglas Cable Comm., L.P.*, No. 93-4009-RDR, 1993 WL 455249, at *3 (D. Kan., Oct. 15, 1993) ("supplemental state tort claims . . . do not benefit from [Fed. R. Civ. P.] Rule 3"); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc.*, 583 F.3d 832, 2009 WL 3110809, at *10 (C.A. Fed., Sept. 30, 2009) (state statute of limitations apply to state claims in federal court under supplemental jurisdiction); *Bouton v. BMW of North America, Inc.*, 29 F.3d 103, 110 (3rd Cir. 1994) (same); *Greene v. Distelhorst*, No. 96-3044, 116 F.3d 1480, 1997 WL 351298, at *4 (6th Cir., June 23, 1997) (unpublished) (same).

Plaintiffs cite *Tillman v. Georgia*, 466 F.Supp.2d 1311 (S.D.Ga. 2006). Whether the court's jurisdiction was supplemental or diversity was not relevant

to the part of the court's reasoning, in the case, about the time allowed to perfect service. *Tillman*, at 1317. There, the judge applied its understanding that *Erie* required application of Rule 4's 120 days former deadline to serve the complaint.[2] Arguably the decision was based on features of Georgia statutes which indicated the Georgia service of process statute was not an integral part of its statute of limitation. Otherwise, the holding conflicts with the Tenth Circuit's controlling precedent and must be ignored. *See, Habermehl v. Potte*r, 153 F.3d 1137, 1139 (10th Cir. 1998); U.*S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc*., 543 F.3d 1211, 1225 (10th Cir. 2008).[3]

 *Third,* tolling does not salvage the plaintiffs' failure to commence their state wiretap claims within 90 or 120[4] days of the filing of their Complaints. K.S.A. § 60-203(a) provides:

> (a) **Time of commencement**. A civil action is commenced at the time of: (1) Filing a petition with the court, ***if service of process is***

---

[2] Rule 4(m) was later amended.

[3] *Accord, Morse v. Elmira Country Club*, 752 F.2d 35, 42 (2d Cir. 1984) (stating in dicta that an argument that Rule 4(m) collides is dubious considering *Walker*); *Wm. H. McGee & Co. v. Liebherr Am., Inc.,* 789 F. Supp. 861, 866 (E.D. Ky. 1992) (noting that finding a direct collision with Rule 4(m) is directly contrary to *Walker*); *Poulos v. Wilson*, 116 F.R.D. 326, 330 (D. Vt. 1987) (rejecting the plaintiff's argument that Rule 4 applied instead of state law relying in part on *Walker*); *Robinette v. Johnston*, 637 F. Supp. 922, 925 (M.D. Ga. 1986) (looking to Walker to determine that state rather than federal law applied).

[4] The Court need not wrestle with whether the possibility of a 30-day extension of the 90-day deadline, in K.S.A. § 60-203(a), afforded the plaintiff 120 days as opposed to 90 to effect service. Service was well after 120 days passed.

> **obtained** or the first publication is made for service by publication **within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff**; …

*Id.* (emphasis supplied).

Accepting that the district court's screening of plaintiffs' claims tolls the 90 or 120 day "time of commencement" established by K.S.A. § 60-203(a)[5], plaintiffs' commencement of this action for the purposes of the state wiretap claims was months <u>after</u> the statute of limitation expired. Screening was complete and the plaintiffs had permission to pursue service of process on Virden on September 29, 2017. *See* ECF 198, at 6, ¶ 54 & 8, ¶ 65. True, a waiver of summons form was issued, inviting Virden to waive service of process. However, after September 29, 2017, plaintiffs possessed the right to solicit issuance of summons for service on Virden, if the invitation was not accepted, and to effect service within 90 or 120 days.[6]

---

[5] The tolling claimed here concerns the deadline to serve Virden and thereby commence his state wiretap claims. The timeliness of the filing of the lawsuits is not at issue. *See Sellers v. Cline*, No. CIV.A. 13-3076-MLB, 2015 WL 1262895, at *4 (D. Kan. Mar. 19, 2015) (found unique circumstances doctrine "would not extend the limitations period," but excused delay in service of the original complaint on certain defendants who were served within 90 days after screening was completed).

[6] Virden had 30 days to respond that he waived service, if he received the waiver of summon forms. Fed. R. Civ. P. 4, waiver form. After that and if no response from Virden, plaintiffs were required to know that they had to pursue service of process. Ignorance of the rules is not a basis for tolling. *Caballero v. Wyandotte Cty. Sheriff's Dep't*, 789 F. App'x 684, 687 (10th Cir. 2019) (unpublished) (*citing*

December 27, 2017 (a Wednesday) was 90 days after September 29, 2017. January 26, 2018 (a Friday) was 120 days after September 29, 2017. Therefore, service on Virden (March 9, 2018 for Banks and March 13, 2018 for Thompson, UF ¶¶ 4 & 5) did not relate back to the filing of the complaint for commencement of the state wiretap claims against.

In short, the commencement of the state wiretap claims was at the time of service of process, 3 to 4 months too late even if tolling applies.

## 2.     *There was no violation of the federal wiretap law as a matter of law.*

Lack the judicial authority under Kansas statutes to order wiretap of "extraterritorial" communications by a state judge is not a violation of Title I of the Electronic Communications Privacy Act so long as the judge qualifies as a "judge of competent jurisdiction" as defined in 18 U.S.C. § 2510(9)(b). Judge Platt satisfied that qualification.

The plaintiffs' argument is essentially that violation of state wiretap statutes is a violation of the federal wiretap statutes. *See* ECF 198, at 18 ("The federal statute incorporates the restriction of state law"). They cite to no case law to support their argument. And the argument should be rejected.

---

*Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *McClain v. Roberts*, 2013 WL 3970215, *3 (Kan. App., *unpub.*, Aug. 2, 2013).

*First*, federal and state wiretap laws are separate. Congress "'preempted the field of electronic surveillance regulation under its power to regulate interstate communications,' allowing concurrent state regulation only if 'subject, at the minimum, to the requirements of the federal regulation.' State statutes that are more permissive than federal law are preempted." *State v. Bruce*, 295 Kan. 1036, 1043-44, 287 P.3d 919 (2012) (citations omitted). However, states are free to adopt more restrictive legislation, or no legislation at all.

In juxtaposition to whatever more restrictive rule a state may adopt, culpability under the federal wiretap statutes, for "unlawfully intercepted communications," requires failure to satisfy the statutory requirements that directly and substantially implement congressional intent. *United States v. Giordano*, 416 U.S. 505, 527 (1974). In other words, those that violate a statutory provision reflecting Congress' core concerns. *Cf. Dahda v. United States*, – U.S. – , 138 S. Ct. 1491, 1499 (2018) (recognizing the "core concern" analysis but declining to apply it to 18 U.S.C. § 2518(10)(a)(ii), *i.e.*, suppression of communication intercepted by an order "insufficient on its face").

As a result, communications are not unlawfully intercepted under federal law if by an order entered by the quality of the public official the federal statutes require even if the official does not satisfy the state wiretap law's territorial limitations. *See discussion* ECF 174 at 24-25. Plaintiffs say nothing to dispute this.

17

*Second*, the plaintiffs rely on 18 U.S.C.A. § 2516(2) which concerns "[a]uthorization for interception of wire, oral, or electronic communications." However, Judge Platt's orders satisfied the qualification issue. They conformed with 18 U.S.C. § 2518 and "with the applicable State statute." *See id.* at § 2516(2). Approximately 7,000 communications were properly intercepted, under the orders, from phones inside Judge Platt's jurisdiction. UF ¶ 47. The orders were not facially invalid. *See United States v. Wilson*, No. 20-3030, 2020 WL 3969261 (10th Cir. July 14, 2020) (unpublished) (concerning the facial validity of wiretap order issued by state court, language in the order permitting extra-territorial wiretap sentence was only surplus *Dahda v. United States*, – U.S. –, 138 S. Ct. 1491, 1499 (2018)). *See also, United States v. Arevalo*, 112 F. Supp. 3d 1185, 1195, n. 1 (D. Kan. 2015) (noting *State v. Adams*, 2 Kan.App.2d 135, 576 P.2d 242 (1978), "simply held that a district court cannot authorize a wiretap where *all* of the relevant devices or events existed outside the court's territory," emphasis original).

In short, the plaintiffs leave Judge Crow's analysis unassailed. "Judge Platt's order, even if it was issued outside his territorial jurisdiction as defined by state law, is not shown to have amounted to a federal statutory or constitutional violation." *Ivory v. Platt*, No. 15-3051, 2016 WL 5916647, * 12 (D. Kan. Oct. 11, 2016).

### *3.     Virden's good faith reliance on court orders is a complete defense to both the state and federal wiretap claims.*

Both the federal and state wiretap statutes provide "a complete defense" for "good faith reliance" on "a court warrant or order." 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). Resolving the application of these defenses, concerning Virden's reliance on Judge Platt's orders, begins with a couple of procedure-like questions that were alluded to in Virden's opening brief.

The rules from *United States v. Leon* apply to both the federal and state wiretap defenses. The *Banks* and *Thompson* Tenth Circuit's decisions instruct that *United States v. Leon*, 468 U.S. 897, 922, n. 23 (1984), provides the applicable analysis for application of the federal defense when the defense is premised on reliance on a court order. *Banks v. Opat*, 814 F. App'x 325, 2020 WL 2394008, *4 (10th Cir. May 12, 2020) (unpublished); *Thompson v. Platt*, No. 19-3072, 2020 WL 2394007, at *4 (10th Cir. May 12, 2020) (unpublished). No Kansas decision on the point has been located. However, there are good reasons Kansas would use the *Leon* analysis. Kansas courts often turn for guidance to

federal decisions that interpret similar federal statutes.[7] *Johnson v. State*, 200 Kan. 708, 710, 438 P.2d 96 (1968) (*citing State v. Richardson*, 194 Kan. 471, 472, 399 P.2d 799 (1965)). Moreover, the Kansas Supreme Court ruled that *Leon* applies in Kansas without modification in *State v. Hoeck*, 284 Kan. 441, 463-64, 163 P.3d 252 (2007).

Both federal and Kansas courts hold objective reasonableness of reliance on court order is not a question of fact for the jury, but is a legal one for the Court to decide. *E.g.*, *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005); *State v. Zwickl*, 306 Kan. 286, 293, 393 P.3d 621 (2017).[8] It follows that the same rule should apply to the federal and Kansas statutory wiretap defenses. *See Fox v. Coxcom Incorp.*, No. CV-11-594, 2012 WL 6019016, *5 (D. Ariz. Dec. 3, 2012).

With the answers to these questions in mind, the opening brief sets out the

---

[7] The wiretap defense was first adopted in Title III of The Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"). In 1974, Kansas adopted its statutes concerning wiretaps. *See* 1974 Kan. Sess. Laws Ch. 150, § 5. These statues addressed interception of conversations using "hard" telephone lines, but did not apply to interception of computer and other digital and electronic communications. Title I of the Electronic Communications Privacy Act ("ECPA") updated Title III to add interception of digital and electronic communication. The ECPA became law in 1986. Then, in 1988, the Kansas statutes were amended to follow suit. *See* 1988 Kan. Sess. Laws Ch. 117, § 4.

[8] The reasons for this likely parallel the United States Supreme Court's reasoning in *Ornelas v. United States*, 517 U.S. 690, 697-99 (1996) (from the historical facts, determination of reasonable suspicion and probable cause are issues of law, reviewed *de novo* on appeal, to better provide officials with a defined set of rules enhancing the prospect of a correct determination before they act, and for courts to maintain control of, and to clarify, the legal principles).

case law that Virden reasonably and in good faith relied on Judge Platt's wiretap orders. *See* ECF 174, at 27-32. The plaintiffs did not attempt to distinguish these authorities.

Rather, the plaintiffs' opposition attempts to mischaracterize good faith reliance on a facially valid order as the absence of a mistake of law. ECF 198, at 23-26.[9] Yet, under *Leon*, courts presume good-faith when an officer acts pursuant to a warrant or court order unless one of "four contexts" apply. *United States v. Barajas*, 710 F.3d 1102, 1110 (10th Cir. 2013); *State v. Hoeck*, 284 Kan. at 463-64. *See e.g., State v. Zwickl*, 306 Kan. 286, Syl. ¶ 3, 393 P.3d 621 (2017) ("The exclusionary rule should not be used to bar evidence obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate unless: (1) the magistrate issuing the warrant was deliberately misled; (2) the magistrate wholly abandoned the detached or neutral role of a judge; (3) there was so little indicia of probable cause contained in the supporting affidavit that it was unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be

---

[9] The mistake of law doctrine has changed in recent years, calling into question the vitality of cases cited by plaintiff about the doctrine. *See United States v. Brock*, No. 5:18-CR-40110, 2019 WL 2287738, at *3 (D. Kan. May 29, 2019). However, here—more to the point—the doctrine is not applied in the *Leon* analysis.

seized."). A mistake of law is all but presumed under this test. For example, in *United States v. Workman*, 863 F.3d 1313, 1318 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1546 (2018), the court held "the *Leon* [good faith] exception applies even if the magistrate judge had exceeded geographic constraints in issuing the warrant." *Id.* at 1318.[10]

The plaintiffs also imply that Judge Crabtree refused to find that a good-faith exception to the Fourth Amendment's exclusionary rule applied to the communications intercepted beyond Judge Platt's jurisdiction. ECF 198, at 25. Not so. The judge found the good-faith exception could not be read into the wiretap statutes, which he found required suppression of the communications regardless of government's good-faith. *United States v. Banks*, No. 13-CR-

---

[10] The supposed analogous cases that the plaintiffs cite are inapposite. *Heggy v. Heggy*, 944 F.2d 1537, 1542 (10th Cir. 1991) (holding Good faith reliance on mistake of law is not listed among these defenses in 18 U.S.C.A. § 2520(d), while noting good faith reliance on a court order is a statutory defense). *See also State v. Pettay*, 299 Kan. 763, 326 P.3d 1039 (2014) (warrantless search); *State v. Oram*, 46 Kan. App. 2d 899, 915, 266 P.3d 1227 (2011) (warrantless search); *State v. Homolka*, 2020 WL 3885698 (Kan. App., *unpub.*, July 10, 2020) (warrantless blood draw);. *See also, State v. Powell*, 299 Kan. 690, 700, 325 P.3d 1162, 1170 (2014) (applying Leon's exception that "there was so little indicia of probable cause in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid"); *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005) (same); *United States v. Barajas*, 710 F.3d 1102, 1111 (10th Cir. 2013) (rejecting claim that the affidavit was devoid of facts). *See also United States v. Gant*, 587 F. Supp. 128 (S.D. Tex. 1984) (holding good-faith exception to exclusionary rule did not apply where the search warrant and affidavit were insufficient to support finding of probable cause), *rev'd*, 759 F.2d 484 (5th Cir. 1985) (holding the affidavit contained sufficient facts).

40060-DDC, 2015 WL 2401048, at *3 (D. Kan. May 15, 2015).[11] *Contra, United States v. Arevalo*, 112 F. Supp. 3d 1185, 1197 (D. Kan. 2015) (applying the good-faith exception).[12] But, on the other hand, Judge Crabtree stated: "The [*Leon* good-faith] exception almost certainly applies because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *Id*. at *3.

Therefore, Defendant Virden is entitled to summary judgment because of his good faith reliance on a court order even if the plaintiffs' claims had been timely commenced and some evidence supported a violation of the federal wiretap statutes.

---

[11] *aff'd sub nom. United States v. Thompson*, 866 F.3d 1149 (10th Cir. 2017), cert. granted, judgment vacated, 138 S. Ct. 2706, 201 L. Ed. 2d 1093 (2018), and aff'd sub nom. United States v. Ivory, 706 F. App'x 449 (10th Cir. 2017), and aff'd, 706 F. App'x 455 (10th Cir. 2017), cert. granted, judgment vacated, 138 S. Ct. 2707, 201 L. Ed. 2d 1093 (2018), and opinion reinstated in part, 748 F. App'x 855 (10th Cir. 2019).

[12] There is a conflict among the circuits whether the good-faith exception to suppression applies to evidence obtained through an improper wiretap. *United States v. Barajas*, 710 F.3d 1102, 1110, n. 4 (10th Cir. 2013) (not deciding the point).

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Arthur S. Chalmers
Arthur S. Chalmers, KS S. Ct. #11088
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Ph: (785) 368-8426
Fax: (785) 291-3707
Email:  art.chalmers@ag.ks.gov
Attorneys for Defendant Virden

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September 2021, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

s/ Arthur S. Chalmers

24